## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| HYBRID ATHLETICS, LLC, ) | |
| ) | Civil Action No. 3:17-CV-1767 |
| ) | |
| Plaintiff, ) | JURY TRIAL DEMANDED |
| ) | |
| v. ) | COMPLAINT FOR FEDERAL |
| ) | TRADEMARK INFRINGEMENT; FALSE |
| ) | DESIGNATIONS OF ORIGINS AND |
| HYLETE LLC, ) | UNFAIR COMPETITION; UNFAIR |
| ) | COMPETITION UNDER CT UNFAIR |
| Defendant. ) | TRADE PRACTICES ACT; COMMON |
| ) | LAW TRADEMARK INFRINGEMENT; |
| ) | UNJUST ENRICHMENT |
| ) | |

## COMPLAINT

Plaintiff Hybrid Athletics, LLC ("Hybrid" or "Plaintiff") for its Complaint against

Defendant Hylete, LLC, ("Hylete" or "Defendant"), alleges as follows:

### Introduction

1.      This is an action for federal trademark infringement, unfair competition, and false

designation of origin in violation of the Federal Lanham Act, 15 U.S.C. § 1051 *et seq*.; common

law trademark; and state unfair competition in violation of the Connecticut Unfair Trade

Practices Act against Defendant for its improper commercial use and exploitation of trademarks

that are confusingly similar to Plaintiff's Marks on or in connection with the offer and provision

of goods and/or services.

2.      Hybrid brings this action to protect its reputation for selling products and services

of the highest quality, prevent deception of the consuming public by Defendant, retain control

over the substantial goodwill associated with its registered trademarks, and to avoid irretrievably lost sales.

3.      Hybrid hereby seeks (1) injunctive relief against Defendant's continued unauthorized, improper and willful commercial use and exploitation of any trademark confusingly similar to any of Hybrid's trademarks; and (2) all damages arising from Defendant's past and present infringement, including all statutory damages, and Hybrid's attorneys' fees and costs for having to bring this suit to enforce its trademark rights.

**Parties**

4.      Hybrid is a Limited Liability Company having its principal place of business at 7 Hyde Street, Stamford, CT 06907.

5.      Upon information and belief, Hylete is a Limited Liability Company organized under the laws of California with an address at 5135 S. Sierra Ave., Unit 20, Solana Beach, California 92075, United States.

6.      Upon information and belief, Hylete is doing business through the website www.hylete.com.

**Jurisdiction and Venue**

7.      This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) over the federal trademark infringement, false designation of origin and unfair competition claims, which arise under the Federal Lanham Act, 15 U.S.C. § 1051 *et seq*.; and has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(a)-(b) and 1367 over the state and common law claims.  This Court also has diversity jurisdiction under 18 U.S.C. § 1332 because Hybrid and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs

8.     Upon information and belief, this Court has jurisdiction over Defendant by virtue of its systematic and continuous contacts with Connecticut, or because Defendant has (1) transacted and done business in Connecticut, (2) solicited consumers in this District, (3) offered to sell or has sold goods in this District, (4) committed a tortious act within the state, (5) committed a tortious act outside the state causing injury within the state and (a) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (b) expects or reasonably expects its tortious act to have consequences in the state and derives substantial revenue from interstate or international commerce, (6) has websites and social media accounts that are accessible in this District.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the wrongful events giving rise to this action took place in this District and Hybrid has suffered harm in this District.

<u>**Facts Common To All Claims For Relief**</u>

A.     **Hybrid Athletics, LLC's Well-Known Trademarks**

a.     <u>The Hybrid Athletic Trademarks</u>

10.     Hybrid is a company and well-known fitness brand that offers and conducts various fitness and health services such as personal training and fitness classes.  It also sells fitness apparel and fitness training equipment.

11.     Hybrid chose the name HYBRID ATHLETICS because its founder, Robert Orlando, called himself a "hybrid athlete" as he trained and was a trainer in multiple methods of fitness.

12.     Hybrid extensively uses its HYBRID ATHLETICS and  mark in connection

3

with the goods and services it offers and sells.

13. Hybrid is owned and operated by Mr. Orlando. Mr. Orlando is responsible for all aspects of the business, including advertising, sales and finances.

14. Hybrid is the owner of the following U.S. federally registered trademarks:

| Mark | Reg. No. | Reg. Date | Date of First Use | Goods |
|---|---|---|---|---|
|  | 4480850 | 2/11/2014 | 8/1/2008 | Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction. |
|  | 4609469 | 9/23/2014 | 12/31/2008 | Bottoms; headwear; tops |
| **HYBRID ATHLETICS** | 4722185 | 4/21/2015 | 8/1/2008 | Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction. |

 (collectively the "Hybrid Federal Marks"). These registrations are valid and subsisting. True and correct copies of the Hybrid Federal Marks' trademark registrations are attached as **Exhibit A**, and are incorporated herein by reference

15. Hybrid, and its predecessor in interest, Mr. Orlando, have used the Hybrid Federal Marks beyond the goods and services listed in the registrations. Hybrid has and continues to use the HYBRID ATHLETICS mark on clothing, accessories, and gym equipment and the design on gym equipment long before Hylete was created (collectively the "Hybrid Common Law Marks") (the Hybrid Federal Marks and the Hybrid Common Law Marks are collectively

the "Hybrid Marks").

<blockquote>b. <u>Background of Mr. Orlando's Career in Fitness and His Fame</u></blockquote>

16.     From approximately 2005-2010, Mr. Orlando was competing as a Strongman athlete in various events every three to four months. In his last Strongman event, Viking Fest in 2010, Mr. Orlando took first place.

17.     In 2006, Mr. Orlando was introduced to CrossFit and between 2009 and 2011, Mr. Orlando was a competitive CrossFit athlete.

18.     CrossFit is one of the fastest growing sports and exercise programs not only in the U.S., but worldwide with millions of followers, participants and teams across the globe.

19.     In 2009, 2010 and 2011, Mr. Orlando competed and placed in the CrossFit Games.  He placed top three in the CrossFit Northeast Regional Qualifier in 2009, 2010 and 2011, including winning the Northeast Regional in 2010. More impressive, Mr. Orlando placed 22nd and 15th in the CrossFit Games in 2009 and 2010, in which thousands of athletes participated.

20.     Between 2008 and 2012, Mr. Orlando promoted Hybrid Athletics and wore Hybrid Athletic clothing during his competitions, thereby exposing the brand to millions of consumers and athletes and in the 2010 and 2011 season alone, Hybrid Athletics sold approximately 7,000 t-shirts at the CrossFit competitions.

21.     Mr. Orlando swiftly became famous in CrossFit.  As such, CrossFit featured Mr. Orlando as a top ten athlete for which he was promoted in numerous videos posted online leading up the CrossFit Games (which included the Hybrid Marks).  Mr. Orlando was also featured in a Hi-Temp Weight Equipment commercial that aired at the 2010 CrossFit Games, again featuring him in apparel bearing the Hybrid Marks.  These videos and commercials are still

featured on the CrossFit YouTube Channel.

22.     Mr. Orlando has also published numerous workout videos between 2008 and the present featuring the Hybrid Marks on his YouTube channel, workouts which have been viewed millions of times.

23.     Due to Mr. Orlando's huge popularity and success in CrossFit early in his career, his reputation allowed him from break into fields beyond that of CrossFit.  For instance, Mr. Orlando was featured in Muscle & Fitness magazine[1], in the July 2011, September 2011, and March 2012 issues (all featuring the Hybrid Marks).  Mr. Orlando then became a regular column writer for Muscle & Fitness (again featuring the Hybrid Marks) and still contributes articles.

24.     Throughout Mr. Orlando's career, he has not only trained athletes in his gyms, but he was for many years a CrossFit Subject Matter Expert and personally ran CrossFit's Strongman Trainer Courses.  He held these courses in the U.S. and all around the world (all while promoting and selling apparel featuring the Hybrid Marks). Between September 2011 and January 2014, Mr. Orlando taught 72 seminars, with over 2,800 attendees, with 45 of the 72 seminars being taught throughout the U.S.

25.     Mr. Orlando continues to travel worldwide visiting gyms and conducting demonstrations at on behalf of CrossFit.

26.     Due to Mr. Orlando's fame and constant efforts to promote Hybrid Athletics and the Hybrid Marks, the Hybrid Athletics gyms has become destination spots to many CrossFitters around the world, who visit and take a picture in front of the wall featuring the iconic Hybrid Marks (as shown below in para. 27).

---

[1] Muscle & Fitness has been in publication for approximately 75 years and is the preeminent monthly fitness training magazine appealing to exercise enthusiasts and athletes of all ages.  Upon information and belief, there are about 8 million unique viewers of the magazine per month.

c. <u>Hybrid Athletics' Extensive and Continuous Use of the Hybrid Marks</u>

27.     In 2008, Hybrid opened its first fitness gym location in Stamford, Connecticut.  In 2016, Hybrid opened its second fitness gym location in Bridgeport, Connecticut. Both of these gyms are CrossFit associate gyms and both prominently display the HYBRID ATHLETICS and  trademarks throughout the venues.  Examples include:

  

28.     A wide variety of services are offered by Hybrid and Mr. Orlando in connection to the Hybrid Marks, including CrossFit training, Strongman training, personal training, and multiple fitness classes in the U.S. and worldwide.

29.     Hybrid, in association with its services, also sells a variety of apparel bearing the Hybrid Marks, including shirts, hats, shorts and socks, in the U.S. and worldwide. Examples include:

 

30.     In addition to clothing and fitness services, Plaintiff also uses the Hybrid Marks

on a variety of gym equipment, including but not limited to atlas stone molds, axles, farmer's handles, yokes, and logs which are sold in the U.S. and worldwide.  Examples include:

  

31.     Since as early as 2008, Hybrid has sold, promoted, and continues to sell and promote its apparel, fitness equipment, and physical fitness services bearing the HYBRID ATHLETICS and  trademarks through the Hybrid gyms, websites, hybridathletics.net and hybridathleticsapparel.com, social media, at CrossFit Strongman training courses, at CrossFit competitions, including the CrossFit Games, throughout the U.S., charity events, and/or through other online vendors.

32.     Hybrid and its predecessor in interest, Mr. Orlando, has extensively and continuously used, in U.S. commerce, the Hybrid Marks since at least as early as August 2008 and December 2008 in connection to its fitness services and apparel. Due to such extensive and continuous use, Hybrid has developed tremendous consumer recognition of and goodwill in the Hybrid Marks.

33.     Hybrid uses the Hybrid Marks in a segmented and combined fashion.  For example, Hybrid uses the Hybrid Marks whereby only the  is shown.  Hybrid uses the Hybrid Marks whereby only HYBRID ATHLETICS is shown.  Hybrid also uses the Hybrid Marks

whereby the  and HYBRID ATHLETICS are shown together.  An example of such use is displayed below:

34.     Hybrid is responsible for maintaining control over the quality of its goods and services, including the goods and services described in the Hybrid Marks' registrations and the goods and services described in the paragraphs above.

35.     Hybrid sells and markets its goods and services to individuals in the CrossFit community, as well as to individuals interested in fitness in general.

36.      Hybrid has developed a reputation for high quality goods and services in the U.S. Due to Hybrid's extensive and continuous use of the Hybrid Marks since 2008 in connection with its goods and services, the Hybrid Marks have become strong identifiers of Hybrid's clothing, equipment, and fitness services.

37.     By virtue of the long use of the Hybrid Marks, the high quality of Hybrid's goods and services used in connection therewith, and the substantial marketing and publicity of the Hybrid Marks, the Hybrid Marks are very well-known, if not famous in the fitness industry, and have been well-known since long before the activities of the Defendant complained of herein.

**B.     The Founders of Hylete Were Intimately Familiar with Hybrid Athletics and the Hybrid Marks**

38.     Upon information and belief, the current owners of Hylete were well aware of Hybrid Athletics and the Hybrid Marks since 2010, well before Hylete's claim of first use of the

Hylete Marks (defined below in para. 52).

39.  Years prior to the formation of Hylete, Hybrid worked with a company called JACO which, for at least two years, produced shorts for Hybrid with the Hybrid Marks affixed thereto.

40.  Upon information and belief, JACO, a small company of five to eight employees, was created and owned by the same person who created and now owns Hylete, Ron Wilson.

41.  Upon information and belief, when Mr. Wilson left JACO to start his own company (later named Hylete), at least two JACO employees went with him: Matt Paulson (now the co-owner of Hylete) and Jennifer Null.

42.  Upon information and belief, Matt Paulson and Jennifer Null were the two particular people that managed Hybrid's account.

43.  Upon information and belief, JACO kept the Hybrid Marks saved on its computer system.

44.  Upon information and belief, JACO saved the Hybrid Marks on its computer system in order to screen print them on the shorts that were purchased by and designated for Hybrid.  In fact, the shorts designated for Hybrid were so popular, JACO could not produce them fast enough to keep Hybrid in stock.

45.  Upon information and belief, when Ron Wilson, Matt Paulson, and Jennifer Null left JACO to form Hylete, they contacted Mr. Orlando, due to his notoriety, requesting that he sign a co-branding deal.

46.  As such, upon information and belief, JACO and the employees thereof, were intimately familiar with the Hybrid Marks, both HYBRID ATHLETICS and the  .

**C.     Hylete's Infringing Activities.**

47.     Upon information and belief, Hylete is the manufacturer, distributor and seller of athletic clothing apparel.

48.     Upon information and belief, Hylete markets and distributes its goods to the CrossFit community and to those interested in fitness in general and as such, Hylete's target consumers are the same as Hybrid's.

49.     Long after Hybrid's adoption and first use of the Hybrid Marks in connection with athletic apparel, Hylete started to use the Hybrid Marks, or marks substantially similar thereto, without authorization from Hybrid, in connection with athletic apparel, including but not limited to shorts, shirts, hats and socks (the "Infringing Goods.").  An image of Hylete's use and adoption of the Hybrid Marks, or marks substantially similar and confusing thereto:



See **Exhibit B**, sample screenshots from Hylete's website from 2012 through the present promoting and offering for sale the Infringing Goods, which is incorporated herein by reference.

50.     Upon information and belief, Hylete markets and sells the Infringing Goods through its physical sales and its operation of an interactive website, available at www.hylete.com. Hylete's website is publically accessible to consumers in Connecticut and those throughout the U.S.

51.     The records of the United States Patent and Trademark Office indicate that Defendant is the owner of the following U.S. trademark applications:

| Mark | Application Serial No. | Application Filing Date | Date of First Use | Goods |
|---|---|---|---|---|
|  | 85837045 | 1/30/2013 | 4/9/2012 | Athletic apparel, namely, shirts, pants, shorts, jackets, footwear, hats and caps |
|  | 87330360 | 2/9/2017 | Intent-to-use | Athletic apparel, namely, shorts, tees, thermals, henleys, polos, tanks, pants, jackets, hoodies, footwear, headwear, socks, undergarments, tights, crops, joggers, jeans, sports bras, compression, wristbands, and athletic uniforms |

52. The records of the United States Patent and Trademark Office indicate that Defendant is the owner of the following U.S. trademark registration:

| Mark | Reg. No. | Reg. Date | Date of First Use | Goods |
|---|---|---|---|---|
| **HYLETE** | 4318646 | 4/9/2013 | 4/9/2012 | Athletic apparel, namely, shirts, pants, shorts, jackets, footwear, hats and caps. |

(Defendant's  and "HYLETE" applications and registrations are collectively the "Hylete Marks"). True and correct copies of the Hylete Marks' applications and registration are attached as **<u>Exhibit C</u>**, and are incorporated herein by reference.

53. Upon information and belief, the term HYLETE is a contraction of the term "Hybrid Athlete."

54. The goods identified in the Hylete Marks are in International Class 25 and include athletic apparel and other various clothing items, which are identical to the goods sold by Hybrid.

55. Hybrid's rights in the Hybrid Marks are prior in time to Hylete's dates of alleged first use asserted for the Hylete Marks.

56. As shown below, the Hylete Marks are visually and linguistically similar to the

Hybrid Marks:

| Defendant's Mark | Plaintiff's Mark |
|---|---|
|  |  |

| Defendant's Mark | Plaintiff's Mark |
|---|---|
| **HYLETE** | **HYBRID ATHLETICS** |

57.     "HYLETE" is a combination of the words "Hybrid" and "Athlete," which are the same words, or confusingly similar to, as those of Hybrid, i.e. "Hybrid" and "Athletics."

58.     Upon information and belief, Hylete uses the Hylete Marks in a segmented and combined fashion.  For example, Hylete uses the Hylete Marks whereby only the  is shown. Hylete uses the Hylete Marks whereby only HYLETE is shown.  Hylete also uses the Hylete Marks whereby the  and HYLETE are shown together as referenced above in paragraph 56.

59.     Upon information and belief, Hylete used and continues to use the  alone, as shown above in paragraph 56 extensively since at least April 2012.  True and correct printouts from Hylete's website displaying the use of the Hylete Marks are attached hereto in Exhibit B.

60.     Upon information and belief, Hylete used and continues to use the combination of  and HYLETE, as shown above in paragraph 56, as well as the marks adjacent to each other, extensively since at least April 2012. True and correct printouts from Hylete's website displaying the use of the Hylete Marks as one logo are attached hereto as Exhibit B.

61.      In April 2012, Hybrid discovered Hylete's plans to promote, advertise, distribute, offer for sale, and sell clothing and apparel bearing a mark substantially and confusingly similar

to its ⟨image⟩ and it HYBRID ATHLETICS trademarks in connection with the Infringing Goods.

62.     Upon such discovery, Hybrid immediately contacted Hylete objecting to the use of the marks as confusingly similar to the Hybrid Marks. A copy of the correspondence between Hybrid and Hylete regarding Hybrid's objections is attached hereto as **Exhibit D,** and are incorporated herein by reference.

63.     After receiving Hybrid's objections, Hylete continued to use the Hylete Marks to start and build its new company.

64.     On October 16, 2013, Hybrid filed a Notice of Opposition with the Trademark Trial and Appeal Board (TTAB) against Hylete's ⟨image⟩ trademark application, Serial Number 85/837,045. Opposition No. 91213057.

65.     The TTAB sustained Hybrid's Opposition by Order dated December 15, 2016.

66.     In the Order dated December 15, 2016, the TTAB concluded that Hybrid has priority over Hylete and that Hybrid demonstrated its first use of the Hybrid Marks in connection with fitness services and on clothing as early as 2008.

67.     In the Order dated December 15, 2016, the TTAB further concluded that Hylete's use of ⟨image⟩ is likely to cause confusion with Hybrid's ⟨image⟩.

68.     On January 17, 2017, Hylete requested reconsideration of the TTAB's Order dated December 15, 2016.

69.     By Order dated March 16, 2017, the TTAB denied Hylete's request.

70.     Upon information and belief, to date, Hylete continues to use, without authorization from Hybrid, the ⟨image⟩ mark which is substantially and confusingly similar to ⟨image⟩, in connection with the infringing marks.

71.     Hylete is not now, nor has it ever been associated, affiliated, or connected with

or endorsed or sanctioned by Hybrid.

72.     Hybrid is not able to monitor, enforce, or maintain its quality control standards on the Infringing Goods that Hylete is offering for sale and selling.

73.     In view of the similarities between the Hybrid Marks and the Hylete Marks, when used separately and in combination of each other, and the fact that Hylete's identified goods are identical or related to Hybrid's goods, there is a likelihood that Hylete's products are seen as being sponsored or affiliated with Hybrid as further demonstrated by the multiple instances of actual confusion since Hylete's formation in 2012.

74.     The Hylete Marks so resemble the Hybrid Marks, as to be likely to cause confusion, or to cause mistake, or to deceive as to the source of the identified goods within the meaning of Section 2(d) of the Lanham Act.

75.     Hylete's activities have harmed and continue to harm Hybrid and its intellectual property which Hybrid has spent substantial time and investment to develop.

76.     The use of the Hylete Marks has damaged Hybrid in the selling of its goods and services by causing a likelihood of confusion.

77.     Hylete's use of the Hybrid Marks, or marks substantially similar thereto, in the manner described herein creates the wrongful impression that Hylete's goods originate from Hybrid or that such goods are authorized, sponsored or approved by Hybrid even though they are not. This confusion causes irreparable harm to Hybrid and the Hybrid Marks.

78.     Hylete has been and/or will continue to be unjustly enriched by the illegal infringement and misappropriation of the Hybrid Marks, or marks substantially similar thereto, for its own financial gain. Additionally, Hylete has been unfairly benefited and profited from Hybrid's outstanding reputation for high quality goods, as well as its significant advertising and

promotion of its goods and the goodwill that has developed in the Hybrid Marks for almost the last decade.

79. Hylete's use of the Hylete Marks have caused irreparable harm to Hybrid.

80. Hylete's acts are willful and deliberate and therefore this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

81. Upon information and belief, Hylete's acts will continue unless enjoined by this Court.

82. Hybrid has no adequate remedy at law.

## COUNT I
## Trademark Infringement Under 15 U.S.C. § 1114

83. Hybrid repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

84. The Hybrid Marks and the goodwill of the business associated therewith in the United States are of great and significant value, and are highly distinctive of Hybrid's goods and services.

85. Hylete's actions described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of Hylete's goods, and are likely to deceive the public into believing that the goods offered and sold by Hylete originate from, are associated with, or are otherwise authorized by Hybrid, all to the damage and detriment, of Hybrid's reputation, goodwill, and sales.

86. Hylete's actions constitute trademark infringement of Hybrid's federally-registered trademarks, the full extent of which is presently unknown but is substantial. This has

caused damage to Plaintiff and the substantial business and goodwill symbolized by Plaintiff's Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

87.     Hylete's actions described above, including the unauthorized use of marks substantially similar to the Hybrid Marks in interstate commerce, have caused, and unless restrained will continue to cause, great and irreparable injury to Hybrid, to the Hybrid Marks, and to the business and goodwill represented thereby, leaving Hybrid with no adequate remedy at law.

**COUNT II**
**False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125**

88.     Hybrid repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

89.     This claim is against Hylete for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.     Upon information and belief, Hylete has used, is using, and intends to continue using now and in the future in commerce the Hylete Marks for the offer and provision of goods and services in such a way that has and will continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Hylete with Hybrid.

91.     Upon information and belief, Hylete's use of the Hylete Marks for the offer and provision of goods and services has likely caused and will continue to cause confusion of the relevant public and trade.

92.     Hybrid has been and will continue to be damaged by the confusion, mistake, and deception caused by Hylete's use of the Hylete Marks.

93.     Any defect, objection to or fault found with Hylete's goods and/or services sold or provided under the Hylete Marks would necessarily reflect on and seriously injure the reputation

Hybrid has established for its marks and business.

94.     Hybrid does not and has never consented to or authorized Hylete's adoption or commercial use of the Hybrid Marks for the aforementioned goods. Hylete therefore has infringed and is infringing the Hybrid Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

95.     Upon information and belief, at all times relevant to this action, including when Hylete first adopted the Hylete Marks and commenced commercial use of the Hylete Marks on the aforementioned goods, Hylete knew of the prior adoption and widespread commercial use of the Hybrid Marks, and Hylete knew of the valuable goodwill and reputation acquired by Hybrid in connection with the Hybrid Marks.  Hylete's infringement of the Hybrid Marks is therefore willful.

96.     Upon information and belief, Hylete, even after being place on notice of Hybrid's rights in April 2012 and after the filing of an Opposition proceeding in 2013, continues to use the Hybrid Marks, or marks substantially similar thereto, in commerce.  Hylete's infringement of the Hybrid Marks is therefore willful.

97.     Upon information and belief, Hylete's use of the Hylete Marks has caused confusion and mistake and the deception of purchasers as to the source of origin of Hylete's infringing goods.  Because of the confusion as to the source caused by Hylete's unauthorized use of the Hybrid Mark, or marks substantially similar thereto, Hybrid's valuable goodwill developed at great expense and effort by Hybrid over the course of the last nine years is being irreparably harmed and is at risk of further damage.

98.     Hylete's infringement will continue unless enjoined by the Court.

## COUNT III
## Unfair Competition Under Conn. Gen. Stat. § 42-110

99.     Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

100.    Defendant's acts as described above constitute unfair competition in violation of Conn.Gen.Stat. § 42-110 (the Connecticut Unfair Trade Practices Act).

101.    Hylete's use of the Hybrid Marks, or marks substantially similar thereto, is likely to and does permit Hylete to palm off their goods as those of Hybrid, all to the detriment of Hybrid and the unjust enrichment of Hylete.  Hylete has further palmed off its goods as Hybrid's by its misrepresentations to the consuming public, members of whom are likely to and do believe Hylete's goods emanate from or are associated with Hybrid.

102.    Hylete's acts permit and accomplish confusion, mislead and deceive the public as to the source of Hylete's goods, permit and accomplish palming off of Hylete's goods as Hybrid's and falsely suggests a connection with Hybrid, thus constituting unfair competition with Hybrid in violation of Connecticut law.  These acts have caused and will continued to cause Plaintiff irreparable harm unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

## COUNT IV
## Common Law Trademark Infringement

103.    Hybrid repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

104.    This claim is against Hylete for common law trademark infringement.

105.    In addition to the federal registrations owned by Hybrid, as set forth above, the Hybrid Marks enjoys common law rights in Connecticut and throughout the United States.

These rights are senior and superior to any rights which Hylete may claim.

106.    Hylete's use of the Hylete Marks is unauthorized and intentionally designed to mimic the Hybrid Marks so as to cause confusion regarding the source of Hylete's goods in that purchasers thereof will be likely to associate or have associated such products with, as originating with, or as approved by Plaintiff, all to the detriment of Plaintiff.

107.    Hylete's infringement will continue unless enjoined by the Court.

**COUNT V**
**<u>Unjust Enrichment</u>**

108.    Hybrid repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

109.    Hylete has usurped for itself revenue and property rights belonging to Hybrid for the purpose of enhancing the commercial value of its own business.

110.    Through Hylete's extensive use of its "H" mark, , confusingly similar to Hybrid's , as well as combining such mark with a term that is an abbreviation of "Hybrid Athletics," i.e. Hylete, Hylete has been unjustly enriched by using the reputation of Hybrid to grow its business, creating the confusing and mistaken belief that Hylete was and is an update or extension to and therefore affiliated with the Hybrid's brand.

111.    As a direct and proximate result of Hylete's actions, Hybrid has suffered, and will continue to suffer, loss of profits by virtue of Hylete's conduct.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.    That judgment be entered in favor of Hybrid and against Hylete on each and every Count in this Complaint;

B.    For entry of an order and judgment enjoining Hylete, its officers, members,

agents, servants, employees, attorneys, and all persons in active concert or participating with any of them, during the pendency of this action and permanently thereafter from:

i.    advertising, marketing, promoting, selling or otherwise offering for sale any goods or services that are confusingly similar to Hybrid's, bearing the Hybrid Marks or any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

ii.    making or employing any commercial use of the Hylete Marks, any derivation or colorable imitation thereof, or any mark confusingly similar to the Hybrid Marks;

iii.    using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Hylete's goods or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Hybrid;

iv.    doing any other acts or things calculated to confuse or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Hylete come from Hybrid, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Hybrid;

v.    otherwise competing unfairly with Hybrid in any manner; and

vi.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) through (v), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (v);

C.    Direct Hylete to file with the Court and serve on counsel for Hybrid within thirty

(30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Hylete has complied with any injunction which the Court may enter in this action.

D.    Direct Hylete to account to Hybrid for Hylete's profits and order that Hybrid recover its damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b) and other applicable law;

E.    Award Hybrid punitive damages on account of Hylete's gross, wanton, willful, and malicious conduct;

F.    Direct Hylete to deliver up for destruction any and all guarantees, circulars, price lists, labels, brochures, business cards, signs, prints, packages, wrappers, pouches, advertising matter, promotional, and other materials in the possession or control of Hylete bearing the Hylete Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Hybrid Marks, in accordance with 15 U.S.C. § 1118;

G.    Award Hybrid its reasonable attorney's fees along with the costs and disbursements incurred herein as a result of Hylete's intentional and willful infringement, pursuant to 15 U.S.C. § 1117, the CUTPA and other applicable law and restitution and/or disgorgement of all revenue, earnings, profits, compensation, and benefits that may have been obtained by Hylete as a result of its unlawful and/or fraudulent actions and practices;

H.    Award Hybrid such other and further relief as the Court deems just and proper.

## JURY DEMAND

Hybrid demands a trial by jury on all claims and issues so triable.

Respectfully Submitted,

Date:   October 23, 2017

*/s/ Michael J. Kosma*
Michael J. Kosma, ct27906
Whitmyer IP Group LLC
600 Summer Street
Stamford, CT 06901
Tel:  203-703-0800
Fax:  203-703-0801
Email: litigation@whipgroup.com
           mkosma@whipgroup.com

ATTORNEYS FOR PLAINTIFF