## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

HYBRID ATHLETICS, LLC,

       Plaintiff,

       vs.

HYLETE LLC,

       Defendant.

Civil Action No. 3:17-CV-01767-VAB

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS HYBRID'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO CHANGE VENUE

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

III.  HYBRID'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF LACHES OR ANY STATUTE OF LIMITATIONS ........................................................................ 5

    a.   Laches does not Bar Hybrid's Lanham Act Claims.......................................... 6

        i.   The Equitable Defense of Laches is Inappropriate for Resolution on a Motion to Dismiss........................................................................................................ 6

        ii.   Laches is Unavailable to Hylete because of Its Unclean Hands as an Intentional Infringer ...................................................................................................... 6

        iii.   Even if Latches is Considered, it Should Not Bar Hybrid's Claims Because Hybrid Did Not Delay in Taking Action Against Hylete's Use of the Hybrid Marks............................. 7

        iv.   Hylete is Not Prejudiced By Any Alleged Delay........................................... 14

    b.   Hybrid's CUTPA Claims Are Not Barred By the Statue of Limitations.......................... 17

    c.   Hybrid's Unjust Enrichment Claims are Not Barred by Laches...................................... 17

IV.   HYBRID SUFFICIENTLY PLED ITS CUTPA CLAIMS ................................................. 18

V.    THE COURT SHOULD NOT TRANSFER VENUE AS HYLETE HAS COMPLETELY FAILED TO MEET ITS BURDEN TO SHOW TRANSFER IS WARRANTED ..................... 19

    a.   Hybrid's Choice of Forum is Given Significant Deference.............................................. 19

    b.   Convenience of Parties and Witnesses Favors Hybrid ................................................... 20

    c.   Availability of Process to Compel Attendance of Unwilling Witnesses Favors Hybrid.. 21

    d.   Location of Relevant Documents Favors Hybrid ........................................................... 21

    e.   Locus of Operative Fact Favors Hybrid....................................................................... 22

    f.   Trial Efficiency, Interests of Justice Favors Hybrid ...................................................... 23

    g.   Relative Means of the Parties ...................................................................................... 24

    h.   Forum's Familiarity with the Governing Law ............................................................... 25

VI.   CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Alfred Dunhill of London, Inc. v. Kasser Distillers Prods. Corp.*
    350 F. Supp. 1341 (ED Pa. 1972), *aff'd* 480 F.2d 917 (3d Cir 1973)...................... 11, 16

*American Eagle Outfitters, Inc. v. Tala Bros. Corp.*
    457 F. Supp. 2d 474 (S.D.N.Y 2006)...................................................................... 20, 22

*American Homecare Federation, Inc. v. Paragon Scientific Corp.*
    27 F. Supp. 2d 109 (D. Conn. 1998)............................................................................. 23

*Argus Research Group, Inc. v. Argus Media, Inc.*
    562 F. Supp. 2d 260 (D. Conn. 2008).......................................................................... 6, 9

*B&B Hardware, Inc. v. Hargis Industries, Inc.*
    135 S. Ct. 1293 (2015)..................................................................................... 7, 10, 14

*Carney v. Lopez*
    933 F. Supp. 2d 365 (D. Conn. 2013)............................................................................. 18

*Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*
    294 F. Supp. 2d 218 (D. Conn. 2003)............................................................................. 23

*Citibank N.A. v. Citytrust*
    644 F. Supp. 1011 (EDNY 1986) ................................................................................ 10

*CompuServe, Inc. v. Patterson*
    89 F.2d 1257 (6th Cir. 1996) ...................................................................................... 23

*Conopco, Inc. v. Campbell Soup Co.*
    95 F.3d 187 (2d Cir. 1996)........................................................................................... 9

*Costello v. Home Depot USA, Inc.*
    888 F. Supp. 2d 258 (D. Conn. 2012).......................................................................... 20

*Covertech Fabricating, Inc. v. TVM Building Products, Inc.*
    855 F.3d 163 (3d Cir. 2017)......................................................................................... 8

*CSL Silicones Inc. v. Midsun Group Inc.*
    170 F. Supp.3d 304 (D. Conn. 2016)............................................................................. 5

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*
    717 F. Supp. 96 (S.D.N.Y 1989) .................................................................................. 8

iii

*D.H. Blair & Co. v. Gottdiener*
    462 F.3d 95 (2d Cir. 2006)..................................................................................... 19

*ESPN, Inc. v. Quicksilver, Inc.*
    581 F. Supp. 2d 542 (S.D.N.Y 2008).......................................................... 22

*Factors Etc. Inc. v. Pro Arts, Inc.*
    579 F.3d 215 (2d Cir 1978)....................................................................... 20

*Fed. Treasury Enterprise Sojuzplodoimport v. Spirits Intern. BV*
    809 F.3d 737 (2d Cir 2016)......................................................................... 9

*Finance Co. v. BankAmerica Corp.*
    502 F. Supp. 593 (D.Md. 1980) ................................................................ 11

*Fitzpatrick v. Sony-BMG Music Entertainment, Inc.*
    86 USPQ2d 1216 (S.D.N.Y 2008) ............................................................ 10

*Ford Motor Co. v. Ryan*
    182 F.2d 239 (2d Cir. 1950)..................................................................... 19

*Fourth Toro Family Ltd. Partnership v. PV Bakery, Inc.*
    88 F. Supp. 2d 188 (S.D.N.Y 2000)........................................................... 15

*French Transit, Ltd. v. Modern Coupon Sys., Inc.*
    858 F. Supp. 22 (S.D.N.Y 1994) ............................................................. 22

*Gregory v. Daly*
    246 F.3d 687 (2d Cir. 2001)....................................................................... 2

*Gucci America, Inc. v. Guess? Inc.*
    868 F. Supp. 2d 207 (S.D.N.Y 2012)......................................................... 15

*Hawley v. Accor North America, Inc.*
    552 F. Supp. 2d 256 (D. Conn. 2008)....................................................... 20

*Hermes Inc. v. Lederer de Paris Fifth Ave, Inc.*
    219 F.3d 104 (2d Cir. 2000)....................................................................... 6

*In re Trilegiant Corp. Inc.*
    11 F. Supp.3d 82 (D. Conn. 2014).............................................................. 18

*It's a 10, Inc. v. PH Beauty Labs, Inc.*
    718 F. Supp. 2d 332 (S.D.N.Y 2010)......................................................... 29

iv

*Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*
   411 F.2d 1097 (2d Cir. 1969), cert denied 396 US 1054 (1970) .............................. 7, 16

*Kiss My Face Corp. v. Bunting*
   2003 WL 22244587 (S.D.N.Y 2003) ............................................................................ 22

*Lang v. Retirement Living Pub. Co., Inc.*
   949 F.2d 576 (2d Cir. 1991) ......................................................................................... 7

*On-Line Techs v. Perkin Elmer Corp.*
   141 F. Supp. 2d 246 (D. Conn. 2001) ......................................................................... 23

*Panterra Engineering Plastics, Inc. v. Transportation SYS. Solutions, LLC*
   455 F. Supp. 2d 104 (D.Conn 2006) ............................................................................ 19

*Piper Aircraft Co. v. Reyno*
   454 US 235 (1981) ....................................................................................................... 19

*Pitney Bowes, Inc. v. National Presort, Inc.*
   33 F. Supp. 2d 130 (D. Conn. 1998) ........................................................................... 20

*Pollux Holding Ltd. v. Chase Manhattan Bank*
   329 F.3d 64 (2d Cir. 2003) .......................................................................................... 19

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*
   314 F.3d 62 (2d Cir. 2002) ............................................................................................ 9

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*
   401 F.3d 123 (3d Cir. 2005), *cert denied* 126 S.Ct. 734 (2005) .................................... 10

*Saratoga Vichy Spring Co., Inc. v. Lehman*
    625 F.2d 1037 (2d Cir. 1980) ..................................................................................... 14

*Shields v. Citytrust Bankcorp., Inc.*
   25 F.3d 1124 (2d Cir. 1994) ........................................................................................ 18

*Societe des Bains de Mer et du Cercle des Estrangers a Monaco v. MGM Mirage*
   No. 08-cv-03157 (HB), 2008 WL 4974800 (S.D.N.Y. Nov. 24, 2008) .......................... 6

*Tandy Corp v. Malone & Hyde, Inc.*
   769 F.3d 362 (6th Cir. 1985), *cert. denied* 476 US 1158 (1986)...................................... 8

*Tri-Star Pictures, Inc. v. Leisure Time Prods. BV*
   17 F.3d 38 (2d Cir. 1994)............................................................................................. 10

*United States ex rel. Ladas v. Exelis, Inc.*
    824 F.3d 16 (2d Cir. 2016)........................................................................................ 18


*Warner-Lambert Co. v. Schick USA Inc*.
    935 F. Supp. 130 (D. Conn. 1996) ............................................................................. 15


*Zinky Electronics LLC v. Victoria Amplifier Co.*
    2007 WL 2151178 (D. Conn. 2009) ........................................................................... 22


**STATE CASES**

*Rossman v. Morasco*

    974 A.2d 1 (Conn.App. 2009), *cert. denied* 980 A.2d 912 (2009)…………………… 18


**FEDERAL STATUTES, REGULATIONS, AND RULES**

Federal Rules of Civil Procedure

    §9(b)…………………………………………………………………...18

    §12(b)(6)……………………………………………………………….2

28 USC

    §1404(a)………………………………………………………………….20


**STATE STATUTES, REGULATIONS, AND RULES**

Conn. Gen. Stat. §52-577……………………………………………………17-18


**OTHER AUTHORITIES**

6 McCarthy on Trademarks and Unfair Comp. §31:16……………………………...10

6 McCarthy on Trademarks and Unfair Comp. §31:19………………………………...8-9

Plaintiff Hybrid Athletics, LLC ("Hybrid"), submits this Memorandum in Opposition to Defendant Hylete LLC's ("Hylete") Motion to Dismiss or, In the Alternative, Motion to Change Venue ("Hylete's Motion"). Dkt. 19. As set forth below, Hybrid respectfully requests that Hylete's Motion be denied.

## I.      INTRODUCTION

The motion to dismiss filed by Hylete should be denied.  As to each of the challenged claims, Hylete's arguments are wrong on the law, premature in view of the requirement that all factual allegations be construed in favor of Hybrid on a motion to dismiss, or both. Hylete's motion to transfer should also be denied.

Hybrid has been litigating against Hylete before the Trademark Trial and Appeal Board ("TTAB") since October 2013.  Hybrid brought the present action to obtain an injunction against Hylete's continued willful infringement of Hybrid's trademark rights and to recover the monetary relief Hybrid deserves.  Hylete is a willful infringer that has been on notice of Hybrid's rights in its HYBRID ATHLETICS and  marks (the "Hybrid Marks") since at least 2010. *See* Declaration of Michael J. Kosma, Ex. 1 p. 22.[1] Hybrid has diligently enforced its rights in the Hybrid Marks while Hylete has willfully continued to infringe those rights. Dkt. 1 ¶¶ 70, 95-96; Ex. 1 p. 49; Ex. 14.

As a willful and intentional infringer, Hylete's attempt to invoke the equitable defense of laches to bar Hybrid's claims must fail.  Hylete's unclean hands prevent it from using an equitable defense such as laches. Even if Hylete's laches defense were not barred, laches is a highly fact intensive inquiry that is rarely appropriate for decision on the pleadings.  Hylete has

---

[1] Exhibits 1-19 referenced herein are attached to the Declaration of Michael J. Kosma.

not established that the undisputed facts support a finding of prejudice or undue delay. In particular, Hybrid has never wavered in its objection to Hylete's use of the Hylete Marks.

Furthermore, due to Hylete's bad faith before the TTAB, which resulted in sanctions against Hylete, Hybrid did not know the extent of Hylete's use of the marks until December 31, 2014, which is within the 3 year statute of limitations. Exs. 4; 5; 18. In evaluating the Complaint under Rule 12(b)(6), this Court must accept as true the factual allegations made by Hybrid, draw all reasonable inferences in Hybrid's favor, and construe the Complaint liberally. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

Finally, although highly fact intensive, even assuming Hylete is not a willful infringer laches is inappropriate in the present case because Hybrid has been diligent in bringing its claims against Hylete. Hybrid filed its claims well within the applicable statute of limitations based on its knowledge of Hylete's actions. Yet, even if the Court finds that Hybrid brought this action after the statute of limitations ended, the facts show that this was only due to Hylete's bad faith before the TTAB, which severely delayed the proceedings. Thus, Hybrid is entitled to the damages and equitable injunctive relief. Therefore, this case should move forward on the merits and to trial.

Additionally, Hylete provides no legitimate reasons why the case should be moved to the Southern District of California. In fact, the weighted factors favor Hybrid to stay in the District of Connecticut.

For these reasons, Hylete's motion should be denied.

## II.    BACKGROUND

In 2010, Robert Orlando, owner and manager of Hybrid and famous CrossFit and Strongman competitor, worked closely with Matt Paulson and other employees at a clothing company called JACO. Dkt. 1 ¶¶ 38-39; Ex. 1 p. 22. JACO sponsored Mr. Orlando and the

Hybrid brand, and produced co-branded shorts with Hybrid. Ex. 1 pp. 22-23. For two years, these were JACO's top selling athletic short, with Hybrid selling the shorts so quickly that JACO could not keep up with production. Ex. 1 p. 23.

Following the sale of JACO in 2012, Mr. Paulson and JACO's former owner, Ron Wilson, started a new athletic clothing company aimed at CrossFit consumers. *Id*. Knowing the impact and recognition the Hybrid name would have on consumers, Mr. Paulson immediately pursued Mr. Orlando and the Hybrid brand for a sponsorship deal. *Id*. However, after learning about the new company, Mr. Orlando and Hybrid were greatly concerned by the name, HYLETE, and the company logo, , because of their similarities to the Hybrid Marks. Dkt. 1, Ex. D; Ex. 1 pp. 23-24. Mr. Orlando immediately objected to the use of the Hylete Marks and declined to have any relationship with the company. *Id*.

At this time, Hylete was still forming, and was not selling any goods. *Id.* It appeared to Hybrid that Hylete was still only trying to find sponsors.

Yet Hylete, and its co-founders, knew that by using the Hylete Marks, they would ride off the back and reputation of Hybrid and the daily toil and grind that Hybrid and Mr. Orlando exerted each day.  Hylete comprised people who were highly familiar with the well-known Hybrid Marks, who Hybrid had trusted, who individually stored the Hybrid Marks on their work computers, and dealt with and promoted Hybrid on a regular basis for over two years. Dkt. 1 ¶¶ 39, 44; Ex. 1 p. 23. Hybrid did not have investors pour millions of dollars into funding the company and its marketing (as Hylete did).  Hybrid was formed from the hard work and literal sweat of Mr. Orlando and his reputation as a fierce competitor in the CrossFit and Strongman areas of fitness. Ex. 1 pp. 3-4. It was, and is, through Mr. Orlando's daily, non-stop dedication to the promotion of the Hybrid Marks, posting his workouts on YouTube since around 2008,

training for competitions, winning competitions, running his gym, working as a columnist for Muscle & Fitness Magazine (promoting the Hybrid brand through the magazine), being labeled as the "King of CrossFit" by Muscle & Fitness Magazine, travelling all over the world to host CrossFit and Strongman training sessions, and designing, manufacturing and selling clothing and specialized workout equipment all bearing the Hybrid Marks (of which the Hybrid atlas stones are found in thousands of CrossFit gyms across the United States), among numerous other self-promotional activities, that formed Hybrid's legendary reputation. Ex. 1 pp. 12, 14, 16-19. Hybrid had already done the hard part, now Hylete was going to cash in on the existing goodwill and reputation.

Hylete did not have any significant sales until well beyond 2013. Ex. 17. Those sales were directed to the exact same consumers and at the same venues and events as Hybrid and as such, Hybrid began becoming aware of actual confusion in mid-2013, with some actual confusion eventually corroborated by Hylete during the TTAB proceeding. Ex. 1 pp. 25-26. Additionally, Hybrid informed Hylete of this confusion by sending it emails and consumer comments expressing confusion. Dkt. 1, Ex. D.

Despite not knowing how widespread Hylete was, upon its early knowledge of the confusion, Hybrid brought an opposition before the United States Trademark Trial and Appeal Board against Hylete's pending registration in October 2013. Dkt. 1 ¶ 64. This opposition resulted in a full trial before the Trademark Trial and Appeal Board in October 2016. Ex. 1 p.1. Despite Hylete's refusal to participate in discovery, which repeatedly delayed the case and required successful motions to compel and for sanctions against Hylete (to which the TTAB told Hylete it should read the discovery rules), the opposition was overwhelmingly decided in Hybrid's favor in the TTAB's finding that there was a likelihood of confusion between

Hybrid's  mark and Hylete's  mark. Exs. 2; 3; 4; 5; 10. The TTAB's decision is currently on appeal before the Federal Circuit following Hylete's failed Request for Reconsideration in front of the TTAB. Exs. 11; 12; 13.

### III.   HYBRID'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF LACHES OR ANY STATUTE OF LIMITATIONS

Hylete has been on notice of Hybrid's intention to take the TTAB's decision to district court and seek to cease all use of the Hylete Marks.  Hybrid's intent has been forthright from the start and is evidenced in Hylete's own settlement offers. Dkt. 1 ¶¶ 95-96; Ex. 16.  Hybrid even elected to transfer Hylete's Federal Circuit Appeal to the district court, but Hylete opposed such transfer (again causing delay). Exs. 14; 15. Hybrid's actions clearly show its intention to bring its actions in district court.

Hylete's constant delays and refusals to participate throughout the TTAB proceeding and the appeal of the TTAB decision led Hybrid to institute this District Court proceeding, even before the final decision of the Federal Circuit has been issued.  Hybrid is tired of Hylete's continued willful infringement.  Thus, Hylete claiming that "Plaintiff did nothing to prevent injury to it from the alleged infringing activities between April 2012…and Plaintiff's filing of the complaint," is deceptive. Dkt. 20 p. 8.

Hybrid brought this litigation without any delay or prejudice to Hylete. Hybrid therefore requests that the Court deny Hylete's Motion to Dismiss.

Claims under the Lanham Act ring in equity, while CUTPA claims sound in law. "[C]ourts assessing complaints that contain causes of action under both CUTPA and the Lanham Act . . . conduct separate and independent analyses as to the statute of limitations (for the CUTPA claims) and laches (for the Lanham Act claims)." *CSL Silicones Inc. v. Midsun Group Inc.*, 170 F. Supp. 3d 304, 316 (D. Conn. 2016).

### a.  Laches does not Bar Hybrid's Lanham Act Claims

#### i.  The Equitable Defense of Laches is Inappropriate for Resolution on a Motion to Dismiss

As an initial matter, dismissal based on laches at this stage of the litigation is not proper because Hybrid's Complaint alleges willful infringement, "a set of facts that, if true, would avoid application of the laches defense altogether." *Societe des Bains de Mer et du Cercle des Estrangers a Monaco v. MGM Mirage*, No. 08-cv-03157 (HB), 2008 WL 4974800, *6 (S.D.N.Y. Nov. 24, 2008) (denying motion to dismiss based on laches because plaintiff detailed willful and intentional infringement in complaint) (citing *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000)); Dkt. 1 ¶ 80. Hybrid should have the opportunity to prove its willful infringement theories, thereby proving that laches is unavailable to Hylete.  Moreover, Hylete has not established that the undisputed facts support a finding of prejudice or undue delay.  For these reasons, Hylete's motion to dismiss should be denied as unsupported and premature.

#### ii.  Laches is Unavailable to Hylete because of Its Unclean Hands as an Intentional Infringer

Hylete cannot evade liability for its infringement of the Hybrid Marks by hiding behind a laches defense because it has willfully infringed the Hybrid Marks. Laches is an equitable defense that is not available to defendants with unclean hands, which can be shown by intentional infringement.  *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) ("[I]ntentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense ...."); *Argus Research Group, Inc. v. Argus Media, Inc.*, 562 F. Supp. 2d 260, 273 (D. Conn. 2008) ("Th[e] good-faith component of the laches doctrine denies the benefits of laches to any defendant that has intentionally infringed on the plaintiff's mark."). Intentional infringement occurs when a junior user, with full knowledge of a prior user

6

of a mark, attempts to capitalize on the prior user's goodwill. *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576, 583 (2d Cir. 1991).

Here, Hylete adopted the Hylete Mark in view of the Hybrid Marks. Hylete continued to use the infringing Hylete Marks despite Hybrid's objections, and even after the TTAB found a likelihood of confusion and denied Hylete's Request for Reconsideration of the Board's decision. Exs. 10; 11; 12. Hylete was fully aware of the potential for confusion for years, admitted to knowledge of instances of actual confusion, and yet continued to infringe. Dkt. 1 ¶¶ 64-70; Dkt. 1 Ex. D; Ex. 1 p. 24. *See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1101 (2d Cir. 1969), *cert denied* 396 US 1054 (1970). Moreover, once the TTAB's decision finding a likelihood of confusion is upheld on appeal, it will have preclusive effects before the district court since Hylete has already had a full opportunity to litigate its position. *See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293 (2015). Therefore, Hybrid's unclean hands bar the availability of laches as a threshold matter.

### iii. Even if Latches is Considered, it Should Not Bar Hybrid's Claims Because Hybrid Did Not Delay in Taking Action Against Hylete's Use of the Hybrid Marks

Hybrid did not delay in filing this action, and in fact, filed this action well within the three year statute of limitations. The earliest time from which to measure for laches was in the beginning of 2015 – after finally receiving knowledge of Hylete's sales information. Ex. 18. Additionally, in light of the proceedings between the parties before both the TTAB and Federal Circuit (Hylete's Federal Circuit Appeal is still ongoing), Hybrid filed this action because it is tired of Hylete's constant delays.

### 1. The Time From Which to Measure Any Supposed Delay is January 2015

Hybrid's first objection to the Hylete Marks in 2012 came before any sales were made by Hylete and when the company was just forming. Dkt. 1, Ex. D; Ex. 1 pp. 23-24.  Hybrid requested that Hylete not use the Hylete Marks, and to Hybrid's knowledge, no merchandise had been manufactured or sold, at that point. *Id*. Hybrid is a small business and does not file such actions without careful consideration. Such careful consideration is in fact encouraged by the courts. *See Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F. Supp. 96, 126-7 (S.D.N.Y 1989) (a mark owner is not required to "fire both barrels of [its] shotgun instantly upon spotting a possible infringer. Lawyers and lawsuits come high and a financial decision must be made in every case" as to whether the cost of litigation is worth the gains); *see also Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 366 (6th Cir. 1985), *cert. denied* 476 US 1158 (1986)("a reasonable businessman should be afforded some latitude to assess both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursuing litigation on the issue.").  Hybrid did not know at that point if Hylete would make it any further and survive as a company.

It was not until later in 2013, when Hybrid discovered that Hylete started to sell clothing under the Hylete Marks and that some customers had experienced confusion between the brands. Dkt. 1 Ex. D; Ex. 1 pps.23-24. This minor activity does not count towards the period of laches. *See Covertech Fabricating, Inc. v. TVM Building Products, Inc.,* 855 F.3d 163, 175-6 (3d Cir. 2017)("an owner's claim does not ripen until the defendant's infringement is sufficiently far-reaching to create likelihood of confusion"); 6 McCarthy on Trademarks and Unfair Comp. § 31:19 (5th ed.)("a period of low profile sales by a fledgling business should not be counted

towards laches"). Hybrid's requests to Hylete to use other marks fell on deaf ears. Ex. 1 pp.32,

49. Thereafter, Hybrid quickly acted and filed its Notice of Opposition. Dkt. 1 ¶¶ 62-64.

Hybrid was not obligated to file any district court action until it was aware of Hylete's

sales and able to foreseeable harm to its company, which at earliest was January 2015. Ex. 18. It

is apparent that Hylete's constant delay tactics during the opposition proceeding were purposeful

to hide Hylete's sales and business records. A trademark owner is not obligated to sue

immediately upon discovering a potentially infringing party. Rather, laches is measured from the

date upon which the infringing use was sufficient enough to impact the trademark owner because

"a plaintiff should not be obligated to sue until its right to protection has ripened such that

plaintiff knew or should have known, not simply that the defendant was using the potentially

offending mark, but that *plaintiff had a provable infringement claim*" (emphasis added).

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.,*

314 F.3d 62, 70 (2d Cir. 2002); *see also* 6 McCarthy on Trademarks and Unfair Comp. § 31:19

(5th ed.) ("Laches is measured from the date when there was an infringing use sufficient to

require legal protest and possible lawsuit. In most cases, this requires legal action only when

defendant's infringing acts significantly impact on plaintiff's good will and business

reputation."). Accordingly, the earliest laches period would have begun in January 2015, with the

present complaint being filed well before any laches take hold. Ex. 18.

## 2. Any Delay in Filing Suit is Excusable

Moreover, even if Hybrid is found to be outside any latches period, any delay in filing

suit is excusable.  The Second Circuit clearly held in *Conopco* that once the applicable statute of

limitations has passed, there exists only a *presumption* of laches that the plaintiff must rebut.

*Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191 (2d Cir. 1996); *see also Argus Research

Grp. Inc. v. Argus Media Inc*., 562 F. Supp. 2d 260, 273 (D. Conn. 2008); *Fed. Treasury Ent.*

*Sojuzplodoimport v. Spirits Intern. BV,* 809 F.3d 737, 745 (2d Cir. 2016). Rather than an outright

bar to relief, "plaintiff must show why the laches defense ought not be applied in this case." *Id.*

A plaintiff can therefore overcome the presumption of laches by demonstrating that its delay was

excusable and there is no prejudice in bringing the action. *See Santana Products, Inc. v. Bobrick

Washroom Equipment, Inc.,* 401 F.3d 123, 138-39 (3d Cir. 2005), *cert denied* 126 S.Ct. 734 (US

2005). Ultimately, a laches determination is within a trial court's discretion and the court is not

bound to a statutory limit—the interests of equity and justice should prevail. *Tri-Star Pictures,

Inv. v. Leisure Time Prods BV*, 17 F.3d 38, 44 (2d Cir. 1994).

Hybrid has diligently enforced the Hybrid Marks since first discovering Hylete's

infringement and realizing that the Hylete Marks could potentially harm its business. Dkt. 1,

Ex. 5; Ex. 1 pp. 23-24. As Hybrid states in its Complaint and Hylete reiterates, Hybrid learned of

the inception of Hylete Marks in April 2012. Dkt. 20 p. 9; Dkt. 1 ¶ 61. However, it was not until

March 2013, when Hybrid was made aware of first sales by Hylete and the first voiced consumer

confusion. Dkt. 1, Ex. D. It was not until December 31, 2014 that, after months of delay by

Hylete during the TTAB proceeding, Hybrid discovered sales information. Ex. 18.

Many courts have found that the filing of an opposition proceeding will toll the running

of laches, both because the defendant is placed on notice of the plaintiff's objections and because

of the large weight given to a favorable USPTO judgment in subsequent infringement

proceedings. *See* 6 McCarthy on Trademarks and Unfair Comp. § 31:16 (5th ed.); *see also

Citibank N.A. v. Citytrust*, 644 F. Supp. 1011 (EDNY 1986); *Fitzpatrick v. Sony-BMG Music

Entertainment, Inc*., 86 USPQ2d 1216 (S.D.N.Y 2008).  This is even more so now in view of the

Supreme Court's recent holding in *B&B Hardware*, which found that issue preclusion attaches to

a TTAB's determination of likelihood of confusion.  *B&B Hardware, Inc. v. Hargis Industries,*

*Inc.,* 135 S.Ct. 1293 (2015). Hybrid's successful opposition is "of enormous weight in any subsequent infringement action" and "puts the defendant on notice that [Hybrid] also protests its use of the confusingly similar mark." *Alfred Dunhill of London, Inc. v. Kasser Distillers Prods. Corp.,* 350 F. Supp. 1341, 1366-67 (ED Pa. 1972), *aff'd* 480 F.2d 917 (3d Cir 1973); *see also Finance Co. v. BankAmerica Corp.,* 502 F. Supp. 593 (D.Md. 1980)(finding no laches defense from a five-year delay in which plaintiff put defendant on notice of its impending suit to be filed upon the resolution of plaintiff's opposition proceeding against defendant's trademark application). Any delay as a result of this opposition proceeding would therefore be excusable.

Hybrid also notes that the present suit would have been brought much sooner if not for Hylete's constant delay tactics—both at the TTAB and the Federal Circuit. Exs. 2; 3; 4; 5; 6; 8; 11; 12; 13; 16. Throughout the TTAB proceeding, Hylete intentionally withheld documents, forcing Hybrid to file a Motion to Compel, which was subsequently granted. Exs. 2; 3. Notwithstanding the Board order to answer Hybrid's discovery responses and produce documents, Hylete failed to respond and continued to engage in delay tactics, requiring Hybrid to file a Motion for Sanctions, which the Board granted and estopped Hylete from bringing certain evidence at trial. Exs. 4; 5. Hylete attempted to further delay proceedings by filing multiple requests for Extension of Time Without Consent from Hybrid (in fact Hybrid was vehemently against each extension request) that the Board ultimately denied. Exs. 6-9. Hylete has been a bad faith actor and bad faith participant in the actions brought against it since 2013. It ignored Hybrid's initial objections, ignored the TTAB's Orders to Compel documents and, even when sanctioned, has continued to delay in every way available to it to avoid going to District Court.

Upon the Board's decision to sustain Hybrid's opposition in December 2016, Hybrid sought to bring the action to federal court seeking damages. However, Hylete delayed and filed a

baseless Request for Reconsideration, which the Board properly denied. Exs. 11; 12.

Frustratingly for Hybrid, this added extensive amounts of time delays and allowed Hylete to

continue its infringing sales. The Board's denial was followed by Hylete's appeal to the Federal

Circuit on May 18, 2017, which Hybrid elected to be transferred to this Court, and which Hylete

then opposed. Exs. 13; 14; 15.  Rather than allow Hylete to delay any longer, Hybrid filed this

action.  Hylete continued to delay the inevitable in order to market and sell the goods bearing the

infringing Hylete Marks as along as it possibly could, all the while Hybrid has tried to push

through the legal system as quickly as possible.

   The facts that Hylete deceptively and egregiously omitted by alleging that "Plaintiff did

nothing" between 2012 and 2017, clearly demonstrates that laches is not appropriate in light of

the circumstances. Hybrid promptly filed an opposition proceeding with the TTAB upon

knowledge of the harmful sales of Hylete, which was subsequently granted. Hylete's delays have

caused almost an extra 20 months to the time frame of the opposition proceedings. The 20

months of delays are explicitly set forth and explained in the chart below:

| Action | Date Action Filed /Decided | Months of Delay Caused by Hylete | Exhibit |
|--------|----------------------------|----------------------------------|---------|
| Hybrid's Motion to Compel Discovery During TTAB Proceeding | Filed: May 21, 2014<br><br>TTAB Granted: July 4, 2014 | **1.5** | Ex. 2<br><br>Ex. 3 |
| 30 day period from Granted Motion to Compel for Hylete to Produce Documents (Hylete did not produce documents) | July 5, 2014-August 4, 2014 | **1** | |
| Hybrid extends time to produce documents upon Hylete's request for Settlement Conference (Hylete ultimately did not provide a date for the conference) | August 5, 2014 –August 12, 2014 | **.4** | Ex. 16 |

| | | | |
|---|---|---|---|
| Hybrid's Motion for Sanctions During TTAB Proceeding | <u>Filed</u>: August 13, 2014<br><br><u>TTAB Granted</u>: November 18, 2014 | **3** | Ex. 4<br><br>Ex. 5 |
| Hylete's Motion to Extend Discovery Period without Consent | <u>Filed</u>: January 2, 2015<br><br><u>Hybrid Filed Opposition</u>: January 22, 2015<br><br><u>Hybrid filed Motion for Summary Judgement</u>: March 2, 2015 and proceedings were suspended | **2** | Ex. 6 |
| Hylete's Motion to Extend Time to File Opposition Brief to Hybrid's Motion for Summary Judgment | <u>Filed</u>: March 25, 2015<br><br><u>Hybrid filed its Opposition</u>: March 27, 2015<br><br><u>TTAB Denied Extension</u>: March 31, 2015 | **.25** | Ex. 8<br><br><br><br>Ex. 9 |
| Hylete's Request to extend time for depositions | <u>December 15, 2015 –January 21, 2016</u> | **1.25** | Ex. 19 |
| TTAB Decision Sustained Opposition/Hylete's Request for Reconsideration/TTAB Denies Request | <u>TTAB Sustains Opposition</u>: December 15, 2016<br><br><u>Hylete Filed Request for Reconsideration</u>: January 17, 2017<br><br><u>TTAB Denies Request</u>: March 16, 2017 | **3** | Ex. 10<br><br><br><br>Ex.11<br><br><br><br>Ex. 12 |
| Time Hybrid had to wait to see if Hylete would bring appeal to Federal Circuit or District Court | March 16, 2107 to May 18, 2017 | **2** | Ex. 13 |
| Hybrid's election to move appeal to District Court Opposed by Hylete | <u>Hybrid Filed Election</u>: June 8, 2017<br><br>Hylete Opposed Election<br><br><u>Federal Circuit Decision</u>: November 3, 2017 | **5** | Ex. 14<br><br><br><br>Ex. 15 |
| | | **TOTAL** | **19.4 Months** |

This is well over a year and a half of delays caused by Hylete.  Hybrid should not be

penalized for Hylete's delays and non-participation in the past proceedings.  It is clear from over

the year and a half of Hylete's delays that Hybrid would have filed this District Court action much earlier.

Hybrid chose to first bring an opposition proceeding in which Hybrid sought to discover Hylete's sales (which Hylete withheld and delayed) and to eventually bring the favorable decision to district court.   Hybrid has not sat on its rights, nor has it been untimely in bringing the suit. It is Hylete that has created the delay. As such, the doctrine of laches does not apply to the present action, as any delay was excusable due to prior pending proceedings and the unwarranted delay instigated by Hylete.

### iv.  Hylete is Not Prejudiced By Any Alleged Delay

Hylete is not prejudiced by any delay in initiating these proceedings. As previously noted, the defense of laches requires that the defendant be unfairly prejudiced by plaintiff's action. *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980). The facts clearly demonstrate that Hylete is not and will not be prejudiced if these proceedings continue.

Furthermore, Hylete is not prejudiced in any manner, as it has been fully aware of Hybrid's objections to the Hylete Marks.  Dkt. 1, Ex. D; Exs. 1 p. 24; 14; 16. Hybrid has done nothing but assert its rights from day one. Nevertheless, Hylete has continuously, knowingly, and willfully infringed the Hybrid Marks. Dkt. 1 ¶¶ 70, 95-96; Ex. 1 p. 49. Hylete was fully aware that Hybrid's favorable TTAB decision would be used to bring an action in District Court.  As held by the United States Supreme Court, "[s]o long as the other ordinary elements of issue preclusion are met, when the issues adjudicated by the TTAB are material the same as those before a district court, issue preclusion should apply." *B&B Hardware*, 135 S. Ct at 1293. Furthermore, Hybrid would have been before the district court sooner, had Hylete not constantly

14

delayed the prior proceedings, as described in detail below.  It has been Hylete's actions that have constantly held-up, interfered, and delayed Hybrid's enforcement for the last four years.

As an initial matter, Hybrid again notes Hylete's false statements in its Motion to Dismiss, which omit undisputed facts in order to manipulate these proceedings, such as any mention of Hybrid's Opposition or that the appeal to such proceeding is still ongoing. In support of Hylete's baseless contention that it would be prejudiced by this action, Hylete misrepresents the record by stating that "Plaintiff waited five years, watching as Hylete devoted more and more resources to developing its branded products, and earning consumer goodwill." Dkt. 20 17.   This statement is unsupported by anything in Hylete's memorandum.  This statement is further a flagrant misrepresentation of the facts, as explained throughout this Opposition to Hylete's Motion.  Hybrid notes that even if these statements were true, continued spending on a business venture in much the same way as before does not necessarily establish prejudice. Prejudice is not an automatic assumption because money was spent or investments were made. *Gucci America, Inc. v. Guess? Inc.,* 868 F. Supp. 2d 207, 244 (S.D.N.Y 2012). Simply put, more is needed than a continuation of the business. *Fourth Toro Family Ltd. Partnership v. PV Bakery, Inc*., 88 F. Supp. 2d 188, 198 (S.D.N.Y 2000); *see also Warner-Lambert Co. v. Schick USA Inc.,* 935 F.Supp 130, 142 (D. Conn. 1996) (finding that continuously spending money to build a business for 8 years is not enough to find prejudice without something more). As case law indicates, even if Hylete somehow did not know that Hybrid objected, it could not claim that investing in the business alone causes prejudice, without something more.

First, the TTAB proceeding in 2013 served to place Hylete on notice of Hybrid's strong objections to the Hylete Marks. As previously explained, an opposition proceeding "puts the defendant on notice that, at the least, the plaintiff is not going to 'sleep on its rights,' and

15

indeed[-] goes even further and puts the defendant on notice that the opposer also protests its use of the confusingly similar mark." *Dunhill*, 350 F. Supp. at 1367. As such, Hylete has been fully aware that Hybrid has objected to Hylete's use of the Hylete Marks since at least the date of Hybrid's Notice of Opposition. Dkt. 1 ¶65. From then on, Hybrid has continued to enforce the Hybrid Marks. Dkt. 1, Ex. D; Ex. 1 p.24; Exs. 14; 16. Contrary to Hylete's claims that Hybrid watched as Hylete invested into its brand, Hybrid actively objected to Hylete's infringement. Dkt. 1 ¶¶ 62-69. It is appalling that Hylete attempts to blame its own willful infringement on Hybrid.  Hybrid did not sit idly by, but did the exact opposite.  Hylete continued to build its business and intentionally chose to ignore Hybrid's complaints or seriously participate in any prior legal proceeding. Dkt 1 ¶¶ 95-96; Ex. 1 p.49. Hylete has built its brand on willful infringement of the Hybrid Marks and is far from blameless. In fact, Hylete has played a game of evasion and has thumbed its nose at any legal authority long enough.

As such, Hylete's intentional infringement of the Hybrid Marks counters any claim of prejudice it might have. By continuing to use the Hylete Marks after the TTAB's decision, Hylete has intentionally infringed upon the Hybrid Marks. Dkt. 1 ¶¶ 70; 91. A defendant that continues to use a trademark which was rejected by the USPTO on the grounds of likelihood of confusion with a senior user's mark may be found to intentionally infringe from the date of rejection. *See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1101 (2d Cir. 1969), *cert denied* 396 US 1054 (1970). Hylete has admitted that customers approached it stating that the Hylete Marks resembled the Hybrid Marks as early as March 2013. Dkt. 1, Ex. D; Ex. 1 p. 24. Since that time, many consumers have told Hybrid that it purchased Hylete's goods bearing the Hylete Marks thinking they were Hybrid's or an affiliate thereof. Ex. 1 pp. 26-32.

Hylete has been well aware of the Hybrid Marks and Hybrid's objections to use but nevertheless continues its course of use without a concern in the world.

Hylete is not at all prejudiced.  Laches does not apply.

### b.  Hybrid's CUTPA Claims Are Not Barred By the Statue of Limitations

Hylete alleges that Hybrid's CUTPA claims should be dismissed for substantially the same reasons as the Lanham Act claims. Dkt. 20 p. 12.  However, as discussed above, Hybrid brought the CUTPA claims within the statue of limitations. *See supra* Section III.a.iii.1. Accordingly, the CUTPA claims were filed within the statue of limitations, and therefore cannot run afoul of the statute of limitations.

Moreover, to the extent that the Court finds that Hybrid's claims could have been brought sooner, Hybrid notes that the statute of limitations would have been tolled during the pendency of the TTAB proceeding.  *See supra* Section III.a.iii.2.  The more-than-timely filed TTAB proceeding therefore precludes any application of the statute of limitations to the CUTPA claims. Accordingly, Hylete's motion to dismiss should be denied.

### c.  Hybrid's Unjust Enrichment Claims are Not Barred by Laches

Hylete further attempts to dismiss Hybrid's claims for unjust enrichment as being barred by the statute of limitations as set forth in Conn. Gen. Stat. § 52-577 and the doctrine of laches. Dkt. 20 p. 16. As explained above, Hybrid has diligently enforced its rights against Hylete and Hylete has been clearly on notice of Hybrid's objections to the Hylete Marks, as they were both party to an opposition proceeding and Federal Circuit Appeal regarding these marks. *See supra* Section III.a.iii.  Moreover, Hylete is not prejudiced by Hybrid's enforcement of its rights.  *See supra* Section II.a.iv.

Additionally, Hybrid notes that claims for unjust enrichment are equitable in nature, and therefore, will not be dismissed if doing so would be detrimental to justice. The equitable power

of the Court permits it to be unbound by Section 52-577, in the interest of justice. *Rossman v. Morasco*, 974 A.2d 1, 17 (Conn. App. 2009), *cert. denied,* 980 A.2d 912 (2009); *see also Carney v. Lopez*, 933 F. Supp. 2d 365, 386 (D. Conn. 2013) ("unjust enrichment claim is equitable in nature and thus, the court need not adhere to definitive statutes of limitation.").

As such, Hybrid requests that the Court deny Hylete's Motion to Dismiss Hybrid's unjust enrichment claim.

## IV.    HYBRID SUFFICIENTLY PLED ITS CUTPA CLAIMS

Hybrid's CUPTA claim is sufficiently pled, contrary to Hylete's allegation. Fed. R. Civ. P. 9(b) requires allegations of fraud or mistake to state the particular circumstances of the harm. The Second Circuit has held that in pleadings which allege fraud or mistake, the pleader must allege (1) the time, place, and contents of the false representations, (2) the identity of the person making the misrepresentations, (3) how the misrepresentations misled, (4) and what the person misrepresenting gained from this fraud. *See United States ex rel. Ladas v. Exelis, Inc.,* 824 F.3d 16, 25 (2d Cir. 2016); *see also Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *In re Trilegiant Corp. Inc.*, 11 F. Supp.3d 82 (D. Conn. 2014).

Hybrid's Complaint alleges all these elements. Hybrid alleges that Hylete (1) began to use the infringing marks in 2012 in a way that was accessible to consumers of Connecticut and the rest of the United States, (2) the identity of Hylete, (3) that the infringing marks created a likelihood of confusion, as well as numerous instances of actual confusion, and (4) that Hylete is unjustly enriched from its infringement.  *See* Dkt. 1 ¶¶ 38-46, 49-50, 73-74, 77-78. Accordingly, Hybrid has sufficiently pled its CUTPA claims.

Hybrid therefore requests that the Court deny Hylete's Motion to Dismiss Hybrid's CUPTA claim or in the alternative allow Hybrid to amend its pleadings.

**V.  THE COURT SHOULD NOT TRANSFER VENUE AS HYLETE HAS COMPLETELY FAILED TO MEET ITS BURDEN TO SHOW TRANSFER IS WARRANTED**

In a motion to transfer venue, it is the defendant who carries the burden of showing that transfer is warranted. *See Panterra Engineering Plastics, Inc. v. Transportation SYS. Solutions, LLC*, 455 F. Supp. 2d 104, 114 (D.Conn 2006), *referencing Ford Motor Co. v. Ryan*, 182 F.2d 239 (2d Cir. 1950).  In the present case, Hylete has failed to establish a convincing basis for transfer to the Southern District of California. As such, Hybrid requests that the Court deny Hylete's change of venue request.

As set forth, while the Court has broad discretion in deciding whether to transfer venue and may consider the following factors, the majority of which favors Hybrid: (1) the plaintiff's choice of forum, (2) convenience of witnesses, (3) the location of relevant documents, (4) the convenience of the parties, (5) locus of operative facts, (6) the location of unwilling witnesses, (7) the relative means of the parties, (8) governing law, and lastly (9) trial efficiency and the interests of justice. *See D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106-07 (2d Cir. 2006).

### a.  Hybrid's Choice of Forum is Given Significant Deference

The Second Circuit gives the plaintiff's choice of forum "significant deference." *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 70 (2d Cir. 2003). In fact, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  This is particularly true in instances where the plaintiff sues in its home forum, as it is presumed to be convenient. *See Piper Aircraft Co. v. Reyno*, 454 US 235 (1981). Hybrid is a Connecticut company, having locations in Bridgeport and Stamford, with many of its witnesses located here or substantially closer to Connecticut than California which makes Hybrid's election to file suit in Connecticut fair.  As such, Hybrid's choice of forum is reasonable and is deserving

of the deference traditionally afforded to the plaintiff. This factor clearly weighs in favor of Hybrid.

### b.  Convenience of Parties and Witnesses Favors Hybrid

The convenience of the parties and witnesses is an important consideration.  In terms of parties to the suit, transfer should not "shift the burden of inconvenience from one party to another." *Hawley v. Accor North America, Inc*., 552 F. Supp. 2d 256, 260 (D. Conn. 2008), *quoting Pitney Bowes, Inc. v. National Presort, Inc.* 33 F. Supp. 2d 130, 132 (D. Conn. 1998). Likewise, the location of witnesses is important but "is generally relevant only with respect to third-party witnesses since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *Hawley*, 552 F. Supp. 2d at 260.

Importantly, a motion to transfer venue under § 1404(a) "must be accompanied by an affidavit containing detailed factual statements identifying the potential principal witnesses expected to be called and a general statement of the substance of their testimony.... Absent such a showing, the motion should be denied." *See American Eagle Outfitters, Inc. v. Tala Bros. Corp*. 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (internal quotations omitted); *see also Factors Etc. Inc v. Pro Arts, Inc*., 579 F.2d 215, 218 (2d. Cir 1978), *cert. denied* 440 US 908 (1979), *abrogated on other grounds by Pirone v. MacMillan*, 894 F.2d 579 (2d Cir. 1990); *Costello v. Home Depot USA, Inc,* 888 F. Supp. 2d 258, 267-8 (D. Conn. 2012) ("a party moving for transfer on the ground of the convenience or availability of witnesses must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits").  Hylete has failed to supply any affidavit, as such its request should be denied.

Regardless, Hylete claims a transfer is warranted due to the location of Hylete and its officers and employees. Dkt. 20 p. 20.  However, Connecticut courts clearly indicate that the location of employees of a party to litigation is not a relevant factor. Rather, the location of third-

party witnesses is a relevant factor.  It is foreseeable that Hybrid will have numerous third-party witnesses to attest to the actual confusion caused by Hylete's infringement, the majority of which will be in Connecticut or other Northeastern states.  Ex. 1 pp. 26-32. As such, a transfer of venue would greatly inconvenience witnesses that are likely to be called in this case.

This factor weighs in favor of remaining in Connecticut.

### c. Availability of Process to Compel Attendance of Unwilling Witnesses Favors Hybrid

Hylete is again trying to twist details so that this factor is weighed in its favor.  But in reality, as both Hybrid and Hylete very well know, the ex-employees of JACO, the individuals at JACO who managed Hybrid's accounts, the individuals who solicited Hybrid, etc., are ALL the same individuals and who are currently working at Hylete. Dkt. 1 ¶¶40-42; Ex. 1 pp. 22-24. As the parties go through discovery, Hybrid may find a couple third party witnesses, but for Hylete to make it sound like the Court will have to compel multiple witnesses is far-fetched.

On the contrary, and as mentioned above, it is foreseeable that Hybrid will have many third-party witnesses to testify about actual confusion who all reside in this District or areas closer to this district than California. Ex. 1 pp. 26-32.

As such this factor therefore warrants the case remain in this venue.

### d. Location of Relevant Documents Favors Hybrid

In the modern age, the location of relevant documents is given little weight. The invention of the internet, photocopying, and electronic storage capabilities "deprive this issue of practical or legal weight." *Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*, 294 F. Supp. 2d 218, 221 (D. Conn. 2003).  Therefore, Hylete's arguments are not compelling considering the records are easily portable.  In light of technological advances, this factor is not dispositive and otherwise neutral.

###### e.  Locus of Operative Fact Favors Hybrid

The locus of operative fact is an important consideration and weighs in favor of Hybrid. In trademark infringement and unfair competition actions, courts have found that "the locus of operative facts [is] the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum." *ESPN, Inc. v. Quicksilver, Inc.*, 581 F. Supp. 2d 542, 549 (S.D.N.Y. 2008).  To put more plainly, courts in the Second Circuit have found that "the locus of operative facts weighs in favor of maintaining the original venue where the defendant sells the allegedly infringing products in that forum." *American Eagle Outfitters,* 457 F. Supp. 2d at 477 (internal quotation omitted).

Hylete alleges that the locus of operative fact is in California, as that is where the infringing goods were created and where Hylete's business address is. Dkt. 20 p. 13. However, that is not the test.  Hylete's goods bearing the infringing marks have been sold and shipped to numerous Connecticut residents. Dkt. 1 ¶50; Ex. 1 pp. 25-26. Courts in this Circuit have found that where goods bearing the infringing marks were developed, designed, or marketed is not dispositive in determining the locus of operative fact. *See It's a 10, Inc. v. PH Beauty Labs, Inc.,* 718 F. Supp. 2d 332, 337 (S.D.N.Y. 2010); *Kiss My Face Corp. v. Bunting,* 2003 WL 22244587 (S.D.N.Y. 2003). Even when the infringing goods are made and sold elsewhere, the defendant may be subject to the forum in which it sells its product, even if the amount of products sold in the district is relatively nominal. *French Transit, Ltd. v. Modern Coupon Sys., Inc.* 858 F. Supp. 22, 26 (S.D.N.Y. 1994). As such, if the defendant is selling the products in the district where the suit was file, the original venue will be maintained. *Zinky Electronics LLC v. Victoria Amplifier Co.,* 2007 WL 2151178 (D. Conn. 2009); *referencing American Eagle Outfitters, Inc. v. Tala Bros. Corp.,* 457 F. Supp. 2d 474 (S.D.N.Y. 2006).

22

Additionally, Hylete's activities in the State of Connecticut include the operation of an interactive website in which customers can purchase Hylete goods, which are then shipped to the state of Connecticut. Dkt. 1 ¶¶49-50. By doing business over the internet through a website that is used by Connecticut residents, Hylete has clearly done business in the state of Connecticut. *See American Homecare Federation, Inc. v. Paragon Scientific Corp.,* 27 F. Supp. 2d 109, 113 (D. Conn. 1998), *referencing CompuServe, Inc. v. Patterson*, 89 F.2d 1257 (6th Cir. 1996). Hylete has created contractual relationships with Connecticut residences through the ordering, payment, and shipment of Hylete's goods to purchasers in that state. *See On-Line Techs v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 265 (D. Conn. 2001) ("At one end of the spectrum are cases where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer. In such cases, the exercise of jurisdiction is appropriate, particularly when combined with evidence of sales from the forum state.").

Hylete targeted Connecticut consumers through its website and sold and shipped its goods to numerous Connecticut consumers, thereby creating a likelihood of confusion in the District of Connecticut. Dkt. 1 ¶50. Still, further there have been instances of actual confusion in Connecticut.  As such, venue is proper in this District and this factor favors Hybrid.

### f.   Trial Efficiency, Interests of Justice Favors Hybrid

The interests of trial efficiency and justice indicate that a transfer of venue should be denied. Hylete does not specifically address this factor, albeit because it does not favor California as the proper venue. This Court is already dealing with Hylete's Motion and is familiar with the alleged claims, and thus, judicial economy is served by keeping the venue in this District.

### g.   Relative Means of the Parties

Hylete finds this factor neutral, however this factor weighs greatly in favor of Hybrid. Though well-known in the fitness community, Hybrid is a small business. While both parties are limited liability companies, the comparison of the businesses ends there especially when it comes to size and monetary means.  Hylete is projected to target millions of dollars in sales in 2018, *see* https://invest.hylete.com/.  Hybrid, through its owner and primary manager Mr. Orlando, works at least 6 days a week maintaining two gyms, selling apparel and gym equipment, teaching and attending events. Dkt. 1 ¶¶21-31. This is just another scenario of Hylete twisting facts for its own benefit.  Hylete would have the Court believe that Hybrid is a large scale multi-million dollar business like itself, but that is simply not the case. Ex. 1 pp. 32, 49. Then to add insult to injury, due to Hylete's infringement of the Hybrid Marks, Hybrid's apparel sales have decreased significantly and Hybrid has had to allocate precious time and resources to stop Hylete, a significantly larger company, from infringing its rights. *Id.*

Hybrid has continuously and tirelessly been attempting to stop Hylete's use of the infringing marks since 2013 through an opposition proceeding, where numerous unnecessary delays occurred due to Hylete's unreasonable actions, a Federal Circuit Appeal (which is ongoing), and now this District Court Action.  Dkt. 1 ¶¶ 95-96; Exs. 2-15. Hybrid has continued to fight for its brand and its business. The interests of justice strongly support remaining in the District of Connecticut, rather than forcing a small business to litigate across the country. Hybrid would be greatly inconvenienced by transfer to the Southern District of California and it would be unjudicial to transfer venue solely for the convenience of Hylete.

As such, Hybrid respectfully requests that the Court deny Hylete's request for a venue transfer.

### h. Forum's Familiarity with the Governing Law

As discussed by Hylete, familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts. And courts in the District of Connecticut are just as well versed in trademark law as those in the Southern District of California. Additionally, Hybrid as asserted claims that arise under the laws of Connecticut, which Hylete fails to take into consideration. Therefore, this factor does not warrant transfer of venue.

Upon analysis of all the factors, they either favor Hybrid or are neutral as to keeping this case in the District of Connecticut. Therefore, venue should not be moved to the Southern District of California.

## VI.   CONCLUSION

For all of the arguments, evidence and information set forth above, Hybrid respectfully requests that the Court deny Hylete's Motion.

Respectfully Submitted,

Date: January 19, 2018

*/s/ Michael J. Kosma*
Michael J. Kosma, ct27906
Whitmyer IP Group LLC
600 Summer Street
Stamford, CT 06901
Tel: 203-703-0800
Fax: 203-703-0801
Email: litigation@whipgroup.com
mkosma@whipgroup.com
ATTORNEYS FOR PLAINTIFF