UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HYBRID ATHLETICS, LLC,
    *Plaintiff*,

v.

HYLETE, LLC,
    *Defendant*.

No. 3:17-cv-1767 (VAB)

**RULING AND ORDER ON MOTION FOR LEAVE TO AMEND**

Currently pending is a motion for leave to amend filed by Hybrid Athletics, LLC ("Hybrid" or "Plaintiff"). Mot. to Amend, ECF No. 76. Hylete, LLC ("Hylete" or "Defendant"), has opposed the motion. Opp. to Mot. to Amend, ECF No. 82.

For the following reasons, Hybrid's motion to amend is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

In the original Complaint, Hybrid, a fitness brand that sells products and offers fitness and health services, alleged that it extensively uses the following symbol as its logo:



Compl. ¶¶ 10–12. Hybrid also alleged that it is owned by Robert Orlando, who "called himself a 'hybrid athlete' as he trained and was a trainer in multiple methods of fitness," and is "responsible for all aspects of the business, including advertising, sales and finances." *Id.* ¶¶ 11, 13. Hybrid alleges that it owns three federally registered trademarks identifying the logo and the title of the company, "Hybrid Athletics." *Id.* ¶ 14.

1

Hybrid alleges that the "current owners of Hylete were well aware of Hybrid Athletics and the Hybrid Marks since 2010[.]" *Id.* ¶ 38. Hybrid alleges that for several years before Hylete was formed, Hybrid "worked with a company called JACO which, for at least two years, produced shorts for Hybrid with the Hybrid Marks" on them. *Id.* ¶ 39. Hybrid alleges that "JACO, a small company of five to eight employees, was created and owned by the same person who created and now owns Hylete, Ron Wilson." *Id.* ¶ 40. Hyrbid also alleges that "when Mr. Wilson left JACO to start his own company (later named Hylete), at least two JACO employees went with him: Matt Paulson (now the co-owner of Hylete) and Jennifer Null," who allegedly were the "two particular people that managed Hybrid's account." *Id.* ¶¶ 41–42.

Hybrid alleges that "JACO kept the Hybrid Marks saved on its computer system," in order to screen print them on the shorts that were purchased by and designed for Hybrid." *Id.* ¶¶ 43–44. Hybrid alleges that "when Ron Wilson, Matt Paulson, and Jennifer Null left JACO to form Hylete, they contacted Mr. Orlando, due to his notoriety, requesting that he sign a co-branding deal." *Id.* ¶ 45.

Hylete allegedly manufactures, distributes, and sells athletic clothing, and its "target consumers are the same as Hybrid's." *Id.* ¶ 48. Hybrid alleges that Hylete uses the following logo mark:



*Id.* ¶ 51. Hybrid also alleges that Hylete is the owner of three United States trademark registrations for its logos and the Hylete name. *Id.* ¶ 51–52.

Hybrid alleges that "Hylete" is a "contraction of the term "Hybrid Athlete." *Id.* ¶ 53. Hybrid also alleges that the goods that Hylete sells with its logo are "identical to the goods sold

by Hybrid." *Id.* ¶ 54. Hybrid alleges that Hylete's marks "are visually and linguistically similar to the Hybrid Marks" and that Hylete has used the mark since at least April 2012. *Id.* ¶¶ 55–59.

Hybrid claims that, in April 2012, it "discovered Hylete's plans to promote, advertise, distribute, offer for sale, and sell clothing and apparel bearing a mark substnatially and confusingly similar to" Hybrid's marks, and "immediately contacted Hylete objecting to the use of the marks as confusingly similar to the Hybrid Marks." *Id.* ¶¶ 61–62. Hylete allegedly continued to use the marks, and on October 16, 2013, Hybrid filed a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB"). *Id.* ¶¶ 63–64. The TTAB allegedly sustained the objection, concluding that "Hybrid has priority over Hylete and that Hybrid demonstrated its first use of the Hybrid Marks in connection with fitness services and on clothing as early as 2008," and that Hylete's mark was likely to cause confusion with Hybrid's mark. *Id.* ¶¶ 65–67. Hylete requested reconsideration, and the TTAB denied the request. *Id.* ¶¶ 68–69.

### B. Procedural History

On October 23, 2017, Hybrid filed its Complaint, claiming trademark infringement under 15 U.S.C. § 1114 (Count One), False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125 (Count Two), Unfair Competition under Conn. Gen. Stat. § 42-110 (Count Three), Common Law Trademark Infringement (Count Four), and Unjust Enrichment (Count Five). Compl., ECF No. 1. On December 29, 2017, Hylete moved to dismiss. Mot. Dismiss, ECF No. 19. Hybrid opposed that motion, ECF No. 28, and moved for leave to file an Amended Complaint, ECF No. 76.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading as of right

within twenty-one days after serving it or "if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion" to dismiss, a motion for a more definite statement, or a motion to strike, whichever is earlier. Fed. R. Civ. P. 15(a)(1).

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

### III. DISCUSSION

Hybrid moves to amend, claiming that it "has uncovered direct evidence of Hylete's willful infringement that contradicts previous sworn testimony of Hylete's co-founders, Mr. Wilson and Mr. Paulson." Mot. to Amend at 1. Hybrid argues that Hylete will not be prejudiced by the amendments, "as it has not even answered the Complaint," and the scheduling order and the parties 26(f) Report provides no deadline to amend. *Id.* at 6–7. Moreover, Hybrid argues that its amendments will render moot the motion to dismiss because "Hylete argued for dismissal based on an (unsupported) defense of laches," and the amendments would include allegations related to "newly-discovered evidence that Mr. Wilson knew of Hybrid's brand before Hylete was created," providing more "evidence to support its already-sufficient allegations of willful infringement." *Id.* at 7–8.

Hylete responds that Hybrid has filed its motion to amend seven months after the deadline to amend the pleadings, and that it has failed to demonstrate good cause under Federal

4

Rule 16 for seeking leave to amend. Opp. to Mot. to Amend at 1. Hylete argues that Hybrid has not demonstrated that it was diligent in seeking leave to amend, that its purportedly newly discovered evidence "was not produced by Hylete, and was presumably produced in response to a third party subpoena to Power in Honor Holdings LLC (the owner or former owner of JACO), which was served over five months ago on March 14, 2018." *Id.* at 10. Hylete argues that any new information discovered in the e-mail "does not show anything new, and certainly does not justify any of the proposed amendments." *Id.* at 11. Finally, Hylete argues that amendment would be futile because it would not overcome Hylete's motion to dismiss based on the statute of limitations. *Id.* at 17.

First, the Court finds that, while Hylete rightly notes that Hybrid has moved to amend seven months after the Court's initial deadline, *see* ECF No. 4, the Court has discretion to grant leave to amend under Federal Rules of Civil Procedure 15 and 16. When a plaintiff moves to amend the complaint after the deadline for filing such a motion has passed, that party must establish "good cause" for the delay under Rule 16(b)(4), which depends primarily on the "diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). A court may also consider "other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Ultimately, the decision whether to allow a late motion to amend the complaint lies within the Court's discretion. *See id.*

Here, Hybrid asserts that it uncovered information during fact discovery that will support its allegations that Hylete knew of the similarities between Hybrid's and Hylete's logos since at

5

least 2012. *See* Mot. to Amend at 2–5 (citing testimony and documentary disclosures). The Court accepts Hyrbid's assertion and will not deny the motion to amend based on undue delay, as the Court does not find evidence that Hyrbid delayed out of bad faith. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."); *see also State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis or a district court to deny the right to amend."); *see also, e.g.*, *United States v. Cohan*, No. 11-cv-412 (CSH), 2012 WL 4758142, at *1 (D. Conn. Oct. 5, 2012) ("[G]ood cause may be found where the movant learns of the facts supporting amendment after expiration of the relevant filing deadline (*e.g.*, during discovery).").

Moreover, the Court does not find that the amendment will cause prejudice to Hylete, as the proposed amendments to the Complaint will reflect information that Hylete had in its possession and was revealed to Hybrid during fact discovery. "In gauging prejudice," a court considers factors including "whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (internal citations omitted). "Undue prejudice arises," for example, "when an amendment comes on the eve of trial and would result in new problems of proof." *Id.* (quoting *Fluor Corp.*, 654 F.2d at 856) (internal quotation marks and alteration omitted). Still, "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304

F.R.D. 170, 174–75 (S.D.N.Y. 2014) (internal citations omitted). "[T]he fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Id.* (quoting *U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989)). Hylete has not demonstrated that, at this stage of the litigation, before dispositive motions have been addressed, amendment would cause it prejudice.

Hylete also argues that amendment will be futile, because, as Hylete has argued in its motion to dismiss, Hybrid's claims are barred by the statute of limitations. Opp. to Mot. to Amend at 17; *see also* Mot. Dismiss at 4–5. Hylete argues that the Lanham Act does not have a statute of limitations, but borrows from the closest analogous state law statute, which, Hylete argues, is Connecticut's three-year statute of limitations for fraud. *Id.* at 5. Hylete argues that "a trademark infringement claim accrues when a plaintiff first knows or has reason to know of the injury from which the claim arises." *Id.* (citing *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 410 Fed. App'x 362, 366–67 (2d Cir. 2010)). Hylete argues that Hybrid's "Lanham Act and Common Law trademark infringement claims accrued at least as early as April 2012, which is well outside the applicable three-year limitations period." *Id.*

Hylete also argues that Hybrid's unfair competition claim "should be dismissed because it relies *exclusively* on the Lanham Act claims, which must fall because of the limitations defenses and laches." *Id.* at 6. Hylete argues that, even if Hybrid's CUTPA claim survived when its Lanham Act claim did not, "the CUTPA claim cannot survive under prevailing law in this district," because it has a three-year statute of limitations that ripened "at the time of the first occurrence of an actionable wrong, not at the time the Plaintiff discovers such wrong." *Id.* at 7.

7

Hylete also argues that Hybrid's CUTPA claim should be dismissed because Hybrid did not plead that claim with particularity. *Id.* at 8. Third, Hylete argues that Hybrid's "CUTPA claim should be dismissed even if it is based on 'reverse passing off' under section 43(a) of the Lanham Act because such claims are preempted by the Copyright Act." *Id.* at 9.

Hylete also argues that Hybrid's unjust enrichment claim is barred by the three-year statute of limitations that governs tort claims in Connecticut. *Id.* at 10. Finally, Hylete argues that Hybrid's claims are barred by laches, because Hybrid "had knowledge of Hylete's alleged use of the purportedly infringing marks, as early as April 2012." *Id.* at 11. Hylete argues that Hybrid "waited five years, watching as Hylete devoted more and more resources to developing its branded products, and earning consumer goodwill" before filing suit, which has, Hylete argues, caused Hylete prejudice because it prevented Hylete from making "any necessary changes to its formation, marketing, and naming strategies." *Id.*

These arguments over the statute of limitations, especially as they involve the defense of laches or equitable tolling, are better addressed at a later stage of this case. It is true that in general, "[a]n amendment is considered 'futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis[,]" including "if it 'destroyed the Court's subject matter jurisdiction, failed to state a claim, or asserted claims which are time-barred by the relevant statutes of limitation.'" *Fed. Ins. Co. v. Speedboat Racing Ltd.*, No. 3:12-cv-1480 (CSH), 2017 WL 319170, at *4 (D. Conn. Jan. 23, 2017) (quoting *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 249 (D. Conn. 2014)). But a court would only deny a motion to amend if it is clear on the face of the pleadings that the claims would be barred by the statute of limitations, and if the issue would not need to be more fully briefed. *Compare id.* at *5

("An amendment is not futile if the claim it seeks to assert is 'colorable and not frivolous.'") (citation omitted), *with Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010) (rejecting argument that amendment would be futile because claim was outside of statute of limitations because "the statute of limitations is an affirmative defense, the determination of which requires a consideration of the merit of both parties' claims and defenses"). That is not the case here.

The Court therefore finds that Hybrid has demonstrated good cause under Rule 16(b)(4) and Rule 15(a) to file an Amended Complaint, and the Court grants the motion for leave to amend.

**IV.     CONCLUSION**

For the foregoing reasons, Hybrid's motion to amend is **GRANTED**.

SO ORDERED at Bridgeport, Connecticut this 10th day of September, 2018.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge