# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| HYBRID ATHLETICS, LLC, | |
| Plaintiff, | Civil Action No. 3:17-CV-01767-VAB |
| vs. | |
| HYLETE LLC, HYLETE, INC., RONALD L. WILSON, II, and MATTHEW PAULSON, | JURY TRIAL DEMANDED |
| Defendants. | |

## HYLETE INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO HYBRID ATHLETICS LLC'S FIRST AMENDED COMPLAINT

Defendant Hylete, Inc. ("Hylete" or "Defendant")[1] hereby submits its Answer, Affirmative Defenses, and Counterclaims in response to the First Amended Complaint filed by Plaintiff Hybrid Athletics, LLC ("HA" or "Plaintiff") as follows:

## Introduction

1.    In response to Paragraph 1 of the Amended Complaint, Hylete admits that HA's Amended Complaint purports to be an action for federal trademark infringement, unfair competition, and false designation of origin in violation of the

---

[1] Defendant Hylete LLC converted into Defendant Hylete, Inc. in or around January 2015.  To the extent Hylete LLC, a non-existent entity, is a properly named party and an Answer is required from Hylete LLC, Hylete Inc.'s Answer, Affirmative Defenses, and Counterclaims are also being filed on Hylete LLC's behalf.

Federal Lanham Act, 15 U.S.C. § 1051 *et seq.*; common law trademark infringement; and state unfair competition in violation of the Connecticut Unfair Trade Practices Act, but denies that those claims have merit and denies each and every remaining allegation in Paragraph 1.

2.      Hylete denies the allegations in Paragraph 2.

3.      In response to Paragraph 3 of the Amended Complaint, Hylete admits that HA purportedly seeks injunctive relief and damages, but denies that HA is entitled to injunctive relief or damages and denies each and every remaining allegation in Paragraph 3.

## Parties

4.      Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 4, and therefore denies the allegations contained in Paragraph 4.

5.      Hylete denies the allegations in Paragraph 5.

6.      Hylete admits the allegations in Paragraph 6.

7.      Hylete admits the allegations in Paragraph 7.

8.      Hylete admits the allegations in Paragraph 8.

9.      Hylete admits that Ronald L. Wilson, II is an owner and officer of Hylete, but denies each and every remaining allegation in Paragraph 9.

10.     Hylete admits that Ronald L. Wilson, II is an owner and officer of Hylete, but denies each and every remaining allegation in Paragraph 10.

11.     Hylete admits the allegations in Paragraph 11.

12.     Hylete admits that Matthew Paulson is an owner and officer of Hylete, but denies each and every remaining allegation in Paragraph 12.

13.     Hylete admits that Matthew Paulson is an owner and officer of Hylete, but denies each and every remaining allegation in Paragraph 13.

14.     Hylete admits the allegations in Paragraph 14.

**Jurisdiction and Venue Allegations**

15.    Hylete does not contest subject matter jurisdiction.  Hylete denies the remaining allegations of Paragraph 15.

16.    Hylete admits that it operates an interactive website, www.hylete.com, which is accessible in this District, but denies each and every remaining allegation in Paragraph 16.

17.    Hylete admits that it operates an interactive website, www.hylete.com, which is accessible in this District, but denies each and every remaining allegation in Paragraph 17.

18.    Hylete denies the allegations in Paragraph 18.

19.    Hylete denies the allegations in Paragraph 19.

**Facts Allegedly Common to All Claims for Relief**

**A.    Hybrid Athletics, LLC's Allegedly Well-Known Trademarks**

  a.    The Hybrid Athletic Trademarks

20.    Hylete denies that HA is a well-known fitness brand.  Hylete lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 20, and therefore denies them.

21.    Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 21, and therefore denies them.

22.    Hylete denies the allegations in Paragraph 22.

23.    Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 23, and therefore denies them.

24.    Hylete admits that United States Patent and Trademark Office (the "USPTO") records state that HA is the owner of Trademark Reg. Nos. 4480850, 4609469, and 4722185.  Hylete also admits also admits that Exhibit A to the Amended Complaint appears to be copies of the registrations for Trademark Reg.

Nos. 4480850, 4609469, and 4722185.  Hylete denies the remaining allegations in Paragraph 24.

25.     Hylete denies the allegations in Paragraph 25.

b.     <u>Alleged Background of Mr. Orlando's Career in Fitness and His Fame</u>

26.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 26, and therefore denies them.

27.      Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 27, and therefore denies them.

28.     Hylete denies the allegations in Paragraph 28.

29.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 29, and therefore denies them.

30.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 30, and therefore denies them.

31.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 31, and therefore denies them.

32.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 32, and therefore denies them.

33.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 33, and therefore denies them.

34.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 34, and therefore denies them.

35.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 35, and therefore denies them.

36.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 36, and therefore denies them.

       c.     <u>Hybrid Athletics' Alleged Extensive and Continuous Use of the Hybrid Athletics' Marks</u>

37.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 37, and therefore denies them.

38.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 38, and therefore denies them.

39.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 39, and therefore denies them.

40.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 40, and therefore denies them.

41.     Hylete denies the allegations in Paragraph 41.

42.     Hylete denies the allegations in Paragraph 42.

43.     Hylete denies the allegations in Paragraph 43.

44.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 44, and therefore denies them.

45.     Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 45, and therefore denies them.

46.     Hylete denies the allegations in Paragraph 46.

47.     Hylete denies the allegations in Paragraph 47.

48.     Hylete denies the allegations in Paragraph 48.

**B.     Defendants' Allegedly Infringing Activities**.

49.     Hylete admits the allegations in Paragraph 49.

50.     Hylete admits that it markets, distributes, offers to sale, and sells its premium performance apparel, footwear, and gear.   Hylete denies the remaining allegations in Paragraph 50.

51.     Hylete admits that the image shown in paragraph 51 is an image of Hylete's former mark.  Hylete also admits that Exhibit B appears to be screenshots of Hylete's website.  Hylete denies the remaining allegations in Paragraph 51.

52.     Hylete admits that it operates an interactive website, www.hylete.com, through which it markets and sells its products and admits that its website is accessible in this District, but denies each and every remaining allegation in Paragraph 52.

53.     Hylete admits the allegations in Paragraph 53.

54.     Hylete admits the allegations in Paragraph 54.

55.     Hylete admits that the goods identified in its trademark applications and registrations identified in Paragraphs 53 and 54 of the Amended Complaint are in International Class 25, but denies each and every remaining allegation in Paragraph 55.

56.     Hylete denies the allegations in Paragraph 56.

57.    Hylete denies the allegations in Paragraph 57.

58.    Hylete denies the allegations in Paragraph 58.

59.    Hylete admits that it uses its HYLETE mark.  Hylete denies the remaining allegations in Paragraph 59.

60.    Hylete admits that it has used its ▼ mark.  Hylete also admits that Exhibit B appears to be screenshots of Hylete's website.  Hylete denies the remaining allegations in Paragraph 60.

61.    Hylete admits that it has used its ▼ mark in combination with its HYLETE mark.  Hylete also admits that Exhibit B appears to be screenshots of Hylete's website.  Hylete denies the remaining allegations in Paragraph 61.

62.    Hylete admits that Mr. Wilson has traveled to China to meet with manufacturers in 2012.  Hylete denies the remaining allegations in Paragraph 62.

63.    Hylete admits that it sold goods bearing its marks at the CrossFit games in 2012, which were held on July 11-15, 2012.  Hylete denies the remaining allegations in Paragraph 63.

64.    Hylete admits the allegations in Paragraph 64.

65.    Hylete admits that Mr. Wilson only left the booth approximately twice per day, but denies each and every remaining allegation in Paragraph 65.

66.    Hylete admits that Mr. Wilson is an owner and officer of Hylete, and that he attended the 2012 CrossFit Games, but denies each and every remaining allegation in Paragraph 66.

67.    Hylete admits that Mr. Wilson is an owner and officer of Hylete, but denies each and every remaining allegation in Paragraph 67.

68.    Hylete admits that Mr. Wilson is an owner and officer of Hylete, but denies each and every remaining allegation in Paragraph 68.

69.    Hylete admits the allegations in Paragraph 69.

70.    Hylete admits that Mr. Wilson and Mr. Paulson are owners and officers of Hylete, but denies each and every remaining allegation in Paragraph 70.

71.     Hylete admits that Mr. Wilson and Mr. Paulson are owners and officers of Hylete, but denies each and every remaining allegation in Paragraph 71.

72.     Hylete denies the allegations in Paragraph 72.

73.     Hylete denies the allegations in Paragraph 73.

74.     Hylete denies the allegations in Paragraph 74.

75.     Hylete denies the allegations in Paragraph 75.

76.     Hylete denies the allegations in Paragraph 76.

77.     Hylete denies the allegations in Paragraph 77.

78.     Hylete denies the allegations in Paragraph 78.

79.     Hylete admits that Mr. Paulson invested $50,000 in Hylete, but denies each and every remaining allegation in Paragraph 79.

80.     Hylete denies the allegations in Paragraph 80.

81.     Hylete denies the allegations in Paragraph 81.

**C.     The Founders of Hylete's Familiarity with Hybrid Athletics and the Hybrid Athletics Marks Prior to Hylete's Formation**

82.     Hylete denies the allegations in Paragraph 82.

83.     Hylete admits the allegations in Paragraph 83.

84.     Hylete admits the allegations in Paragraph 84.

85.     Hylete admits the allegations in Paragraph 85.

86.     Hylete admits that the shorts JACO manufactured were so popular. Hylete denies each and every remaining allegation in Paragraph.

87.     Hylete denies the allegations in Paragraph 87.

88.     Hylete denies the allegations in Paragraph 88.

89.     Hylete admits the allegations in Paragraph 89.

90.     Hylete admits the allegations in Paragraph 90.

91.     Hylete admits the allegations in Paragraph 91.

92.     Hylete admits the allegations in Paragraph 92.

93.     Hylete admits the allegations in Paragraph 93.

94.     Hylete admits the allegations in Paragraph 94.

95.     In response to paragraph 95 of the Complaint, Hylete admits that it is aware of an e-mail sent by Mr. Paulson to Mr. Wilson in January 2012 which contained a link to a video on youtube.com with Mr. Rob Orlando, and Exhibit E appears to be a copy of that email, but Hylete denies each and every remaining allegation in Paragraph 95.

96.     Hylete admits that, in or around 2011-2012, Mr. Paulson considered having Mr. Orlando as a strategic partner of JACO, but Hylete denies each and every remaining allegation in Paragraph 96.

97.     Hylete admits the allegations in Paragraph 97.

98.     Hylete admits that Mr. Paulson spoke to Mr. Orlando for the first time at some point.  Hylete admits that Mr. Paulson spoke to Mr. Wilson about starting a new company at some point. Hylete lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 98, and therefore denies them.

99.     Hylete admits the allegations in Paragraph 99.

100.    Hylete admits that it filed a trademark application for the mark "HYLETE" on March 22, 2012.   Hylete denies each and every remaining allegation in Paragraph 100.

101.    Hylete denies the allegations in Paragraph 101.

102.    Hylete denies the allegations in Paragraph 102.

103.    Hylete admits the allegations in Paragraph 103.

104.    Hylete admits that Mr. Paulson and Ms. Null sent a "brand book" to Mr. Orlando.  Hylete denies each and every remaining allegation in Paragraph 104.

105.    Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 105, and therefore denies them.

106.    Hylete admits that Exhibit D appears to be a copy of correspondence between HA and Hylete.  Hylete denies each and every remaining allegation in Paragraph 106.

107.    Hylete admits that it started using its marks after April 2012, but Hylete denies each and every remaining allegation in Paragraph 107.

108.    Hylete denies the allegations in Paragraph 108.

109.    Hylete admits the allegations in Paragraph 109.

110.    Hylete admits the allegations in Paragraph 110.

111.    Hylete admits the allegations in Paragraph 111.

112.    Hylete admits the allegations in Paragraph 112.

113.    Hylete admits the allegations in Paragraph 113.

114.    Hylete admits the allegations in Paragraph 114.

115.    Hylete admits that Mr. Wilson participated in the maintenance of JACO's Facebook page.  Hylete denies the remaining allegations in Paragraph 115.

116.    Hylete denies the allegations in Paragraph 116.

117.    Hylete admits that various links were posted on JACO's Facebook page at the time when Mr. Wilson was working at JACO.  Hylete lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 117, and therefore denies them.

118.    Hylete admits the allegations in Paragraph 118.

119.    Hylete admits the allegations in Paragraph 119.

120.    Hylete admits the allegations in Paragraph 120.

121.    Hylete admits the allegations in Paragraph 121.

122.    Hylete admits the allegations in Paragraph 122.

123.    Hylete admits the allegations in Paragraph 123.

124.    Hylete denies the allegations in Paragraph 124.

125.    Hylete denies the allegations in Paragraph 125.

126.    Hylete denies the allegations in Paragraph 126.

127.    Hylete denies the allegations in Paragraph 127.

128.    Hylete denies the allegations in Paragraph 128.

129.    Paragraph 129 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 129.

**D.    The Status of Trademark Trial and Appeal Board Trial**

130.    Hylete admits the allegations in Paragraph 130.

131.    Hylete admits the allegations in Paragraph 131.

132.    The TTAB Order speaks for itself as a duly issued order of an administrative tribunal of the United States Patent and Trademark Office.   Hylete denies each and every remaining allegation in Paragraph 132.

133.    The TTAB Order speaks for itself as a duly issued order of an administrative tribunal of the United States Patent and Trademark Office.   Hylete denies each and every remaining allegation in Paragraph 133.

134.    Hylete admits the allegations in Paragraph 134.

135.    Hylete admits the allegations in Paragraph 135.

136.    Hylete denies the allegations in Paragraph 136.

137.    Hylete admits the allegations in Paragraph 137.

138.    Hylete lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 138, and therefore denies them.

139.    Hylete denies the allegations in Paragraph 139.

140.     Paragraph 140 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 140.

141.    Paragraph 141 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 141.

142.   Paragraph 142 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 142.

143.   Paragraph 143 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 143.

144.   Paragraph 144 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 144.

145.   Paragraph 145 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 145.

146.   Paragraph 146 states a legal conclusion to which an admission or denial is not required. To the extent one is required, Hylete denies the allegations of Paragraph 146.

147.   Hylete denies the allegations in Paragraph 147.

148.   Hylete denies the allegations in Paragraph 148.

149.   Hylete denies the allegations in Paragraph 149.

**E.    Hylete's Alleged Financial Status**

150.   Hylete admits the allegations in Paragraph 150.

151.   Hylete admits the allegations in Paragraph 151.

152.   Hylete admits that its Hylete's cash reserves were $1,175,019 in 2016 and $616,262 in 2017.  Hylete denies each and every remaining allegation in Paragraph 152.

153.   Hylete admits that Hylete's inventory was approximately $1.5 million in 2016 and $2.2 million in 2017.  Hylete denies each and every remaining allegation in Paragraph 153.

154.   Hylete admits that Hylete's accounts payable were $477,359 in 2016 and $915,733 in 2017.   Hylete denies each and every remaining allegation in Paragraph 154.

155.   Hylete admits that Hylete's accrued expenses were $387,765 in 2016 and $810,934 in 2017).   Hylete denies each and every remaining allegation in Paragraph 155.

156.   Hylete admits that Hylete paid annual salaries in 2017 to three executives: Mr. Wilson ($216,426); Mr. Paulson ($136,729); and Garrett Potter ($211,716). Hylete denies each and every remaining allegation in Paragraph 156.

157.   Hylete denies the allegations in Paragraph 157.

158.   Hylete denies the allegations in Paragraph 158.

## COUNT 1

### Alleged Trademark Infringement Under 15 U.S.C. § 1114

159.   Hylete repeats and realleges each and every response in the foregoing paragraphs as if fully set forth herein.

160.   Hylete denies the allegations in Paragraph 160.

161.   Hylete denies the allegations in Paragraph 161.

162.   Hylete denies the allegations in Paragraph 162.

163.   Hylete denies the allegations in Paragraph 163.

## COUNT II
### False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125

164.   Hylete repeats and realleges each and every response in the foregoing paragraphs as if fully set forth herein.

165.   Hylete admits that HA purports this claim to be based upon Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), but otherwise denies the allegations of Paragraph 165.

166.   Hylete denies the allegations in Paragraph 166.

167.   Hylete denies the allegations in Paragraph 167.

168.   Hylete denies the allegations in Paragraph 168.

169.   Hylete denies the allegations in Paragraph 169.

170.   Hylete denies the allegations in Paragraph 170.

171.   Hylete denies the allegations in Paragraph 171.

172.   Hylete denies the allegations in Paragraph 172.

173.   Hylete denies the allegations in Paragraph 173.

174.   Hylete denies the allegations in Paragraph 174.

175.   Hylete denies the allegations in Paragraph 175.

## COUNT III
## Unfair Competition Under Conn. Gen. Stat. § 42-110

176.   Hylete repeats and realleges each and every response in the foregoing paragraphs as if fully set forth herein.

177.   Hylete denies the allegations in Paragraph 177.

178.   Hylete denies the allegations in Paragraph 178.

179.   Hylete denies the allegations in Paragraph 179.

180.   Hylete denies the allegations in Paragraph 180.

181.   Hylete denies the allegations in Paragraph 181.

## COUNT IV
## Common Law Trademark Infringement

182.   Hylete repeats and realleges each and every response in the foregoing paragraphs as if fully set forth herein.

183.   Hylete admits that HA purports this claim to be based upon common law trademark infringement, but otherwise denies the allegations of Paragraph 183.

184.   Hylete denies the allegations in Paragraph 184.

185.   Hylete denies the allegations in Paragraph 185.

186.   Hylete denies the allegations in Paragraph 186.

187.   Hylete denies the allegations in Paragraph 187.

## COUNT V
## Unjust Enrichment

188.   Hylete repeats and realleges each and every response in the foregoing paragraphs as if fully set forth herein.

189.   Hylete denies the allegations in Paragraph 189.

190.   Hylete denies the allegations in Paragraph 190.

191.   Hylete denies the allegations in Paragraph 191.

## PRAYER FOR RELIEF

Hylete denies the allegations contained in the "Wherefore" clause at the end of the Complaint (including items A-J of the Prayer for Relief) and Hylete denies that Plaintiff is entitled to any of the relief sought in the Prayer for Relief in the Complaint.

Any and all allegations not expressly admitted herein are hereby expressly denied.

Hylete respectfully requests that Plaintiff's Claims be dismissed with prejudice.

## JURY DEMAND

Hylete acknowledges that HA demands a trial by jury, but Hylete does not concede that HA is entitled to a jury trial. Hylete reserves its rights to challenge HA's jury trial demand.

## **AFFIRMATIVE DEFENSES**

Hylete sets forth below its affirmative defenses.  Each defense is asserted as to all causes of action unless otherwise noted. B y setting forth these affirmative defenses, Hylete does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Moreover, except as expressly admitted in the Answer, nothing stated herein is intended to be, or shall be construed as an admission of fact as to any claims asserted in Plaintiff's Complaint, or as an acknowledgement that any particular issue or subject matter is relevant to Plaintiff's allegations.

## **FIRST AFFIRMATIVE DEFENSE**
### **(Statute of Limitations)**

Plaintiff's claims are barred, in whole or in part, because they are brought outside the applicable statutes of limitation for each of the claims in the Complaint. Plaintiff had knowledge of Hylete's use of the Hylete marks since at least 2012 but Plaintiff did not file suit against any party until October 23, 2017- long after the applicable statutes of limitation had expired.

## **SECOND AFFIRMATIVE DEFENSE**
### **(Laches)**

Hylete incorporates by reference each of the allegations relevant to its "Statute of Limitations" defense above, as if fully set forth herein. Since its inception, Hylete has not tried to hide or conceal its use of any of the Hylete marks, and has relied on Plaintiff's conduct of delay, and thereby invested heavily into its marks to its detriment, yet Plaintiff did not file suit until October 23, 2017. This was an unreasonably long time after the applicable statutes of limitation had expired, and a long time over which Hylete had relied on Plaintiff's inaction to its detriment.

## THIRD AFFIRMATIVE DEFENSE

### (Acquiescence)

Hylete incorporates by reference each of the allegations relevant to its "Statute of Limitations" and "Laches" defenses above, as if fully set forth herein. Plaintiff's claims are barred, in whole or in part, because Plaintiff, through its conduct, unduly delayed, neglected, and acquiesced to Hylete's use of the Hylete marks to Hylete's detriment.

## FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

Hylete incorporates by reference each of the allegations relevant to its "Statute of Limitations" and "Laches" defenses above, as if fully set forth herein. Plaintiff's claims are precluded under the doctrine of estoppel.  Plaintiff is estopped from claiming that Hylete's use of the Hylete marks infringes upon Plaintiff's trademarks because Plaintiff failed to exercise reasonable care and diligence in enforcing its purported rights in its Hybrid Athletics' marks by asserting trademark infringement claims, and thereby led Hylete to rely to its detriment upon the belief that Plaintiff will not enforce its marks.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Hylete incorporates by reference each of the allegations relevant to its "Statute of Limitations" and "Laches" defenses above, as if fully set forth herein. Plaintiff's claims are barred and recovery should be limited, in whole or in part, because Plaintiff, through its conduct of not filing a trademark infringement suit against Hylete at an earlier time, led Hylete to continue promoting, advertising, offering for sale, and selling its goods and services bearing the Hylete marks, which conduct Plaintiff now alleges harmed Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

On information and belief, Plaintiff's claims are barred under the doctrine of unclean hands because Plaintiff's trademark registrations, on which Plaintiff anchors its claims for trademark infringement and related claims, were acquired through misstatements and omissions of fact before the United States Patent and Trademark Office, on issues such as Plaintiff's actual use of the marks for which it sought and subsequently obtained registrations.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff's claims are barred because Plaintiff fails to state a claim upon which relief can be granted for among other reasons, bringing its trademark infringement and other claims outside the applicable statutes of limitation.

## EIGHTH AFFIRMATIVE DEFENSE

### (Third Party Acts or Omissions)

On information and belief, any injury or harm to Plaintiff or to the public in general, as alleged by Plaintiff in the Complaint, was caused by the acts or omissions of third parties over which Hylete had no authority or control.

## NINTH AFFIRMATIVE DEFENSE

### (Good Faith)

Hylete acted in good faith, without any willfulness or intent to infringe upon Plaintiff's rights, in its promotion, advertising, offering for sale, selling, and otherwise using in commerce any of its marks.

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Distinctiveness)

Plaintiff's alleged marks have not acquired distinctiveness and/or are not inherently distinctive.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Genericness)

Plaintiff is barred from recovery on its trademark infringement and related or dependent claims because Plaintiff's purported marks are generic.

## TWELFTH AFFIRMATIVE DEFENSE

### (Fraud)

The allegations in Hylete's Counterclaim is hereby incorporated by reference.  Plaintiff's marks are invalid due to fraud.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Failure to Function as a Mark / Ornamental Use)

Plaintiff's use of the phrase "Hybrid Athletics" on clothing items is merely a decorative or ornamental feature used by many third parties, which phrase does not identify and distinguish HA's goods and therefore does not function as a trademark.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Merely Descriptive)

Plaintiff's use of "Hybrid Athletics" is merely descriptive of the goods and services offered by Plaintiff under the mark.

## FIFTEENTH AFFIRMATIVE DEFENSE

**(No Valid Trademark)**

Plaintiff does not have a valid trademark for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for registration in the U.S. Trademark Office.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (No Secondary Meaning)

Plaintiff cannot meet its burden to establish secondary meaning in any of the marks in claims to hold any rights.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Abandonment)

Plaintiff cannot claim first use or continuous use in the Hybrid Athletics marks as registered and as claimed on the grounds that it failed to adequately monitor, maintain, police or enforce any trademark or other proprietary rights it may have once had in its alleged marks. Plaintiff abandoned each of the Hybrid Athletics marks, let the marks lapse and/or failed to use the marks for a number of years, with respect to some or all of the goods identified in the respective trademark registrations, with the express or implied intent not to continue to use or by acts that caused the marks to lose their significance as an indication of origin of some or all of the goods and services listed in the respective trademark registrations.

## ADDITIONAL AFFIRMATIVE DEFENSES

Hylete hereby gives notice that it intends to rely on any additional affirmative defenses that become available or apparent during discovery and thus reserves the right to amend its answer to assert such additional affirmative defenses.

## COUNTERCLAIM

Defendant/Counterclaim-Plaintiff    Hylete,    Inc.    ("Hylete")    for    its Counterclaim    against    Plaintiff/Counterclaim-Defendant    Hybrid    Athletics    LLC ("HA") states and alleges the following:

## NATURE OF THE CLAIM

1.    This Counterclaim seeks: (a) a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. to resolve an actual case or controversy between the parties as to the validity of HA's asserted trademark rights, and (b) cancellation of U.S. Trademark Registration No. 4,480,850; U.S. Trademark Registration No.4,609,469; and U.S. Trademark Registration No.4,722,185 pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119.

## THE PARTIES

2.    Hylete is a corporation organized under the laws of California with a principal place of business at 564 Stevens Avenue, Solana Beach, CA 92075.

3.    Upon information and belief, HA is a Limited Liability Company having its principal place of business at 76 Progress Drive, Stamford, CT 06902.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

5.    This Court has personal jurisdiction over HA because HA is domiciled in this District and regularly does business in this District, or otherwise has made or established contacts with this District sufficient to permit the exercise of personal jurisdiction.

6.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because HA resides in this District and is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

7.    Hylete is a performance apparel company specializing in sales of apparel, footwear, gear, and accessories for individuals who are involved in active or "fitness" lifestyles.  Hylete manufactures and sells premium products that can withstand different strenuous activities.  Hylete promotes, advertises, offers for sale and sells products to its consumers in the United States under its HYLETE brand, and its registered trademarks including U.S. Registration No.4318646; U.S. Registration No.  5542764; and U.S. Registration No. 4582589, as well as other marks which Hylete owns and uses.

8.    Based on the Amended Complaint, HA purports to own U.S. Trademark Registration No. 4,480,850, U.S. Trademark Registration No.4,609,469, and U.S. Trademark Registration No.4,722,185.

**U.S. Trademark Application Serial No. 85095039 in International Class 41**

9.    On July 28, 2010, Robert Orlando filed a trademark application (Serial No. 85095039) for a mark that is (but for the color) identical to or similar to the  mark. Mr. Orlando filed this application for the mark in International Class 41 for use on the following goods and services: "Shirts, athletic equipment, athletic training, and [athletic] programming."

10.    In the trademark application, Robert Orlando claimed to have first used the mark in commerce on March 30, 2010 and generally on August 1, 2008.

11.    As evidence of use of the applied-for mark, Robert Orlando submitted a specimen to the USPTO of its purported use of the mark.  On November 6, 2010, the USPTO issued an Office Action rejecting Robert Orlando's application because if found: (1) the applied-for mark was likely to be confused with the mark in U.S. Registration No. 3656042; and (2) the applied-for mark, as used on the specimen provided, was merely an decorative or ornamental feature of the goods, among other reasons.

12.     On April 27, 2011, Robert Orlando submitted an additional specimen and an amended drawing of the mark in support of its application to register the mark and responded to the USPTO's Office Action.

13.     On May 26, 2011, the USPTO issued another Office Action maintaining its denial of Robert Orlando's application for among other reasons: (1) likelihood of confusion with U.S. Registration No. 3656042; and (2) the evidence of usage submitted was for ornamental usage and did not constitute use of the mark as a trademark.  Without any further action from Robert Orlando, the USPTO issued its Notice of Abandonment of the application on December 19, 2011.

14.     In the trademark application and the subsequently issued registration, Robert Orlando claimed to have first used the mark in commerce and generally on December 31, 2008.

15.     On information and belief, Robert Orlando did not continue prosecuting the July 28, 2010 application after the Notice of Abandonment.

16.     On information and belief, Robert Orlando did not seek to register its mark anywhere until Hylete had commenced business and had begun achieving some success in its apparel business.

**Hylete Files Its Application To Register Its Marks**

17.     On January 30, 2013, Hylete filed its application to register its mark in International Class 25 for use on the following goods and services: "Athletic apparel, namely, shirts, pants, shorts, jackets, footwear, hats and caps." On October 16, 2013, HA filed a Notice of Opposition to Hylete's application.

**U.S. Trademark Registration No. 4480850 for the mark in International Class 41**

18.     On July 2, 2013 – more than six months after Hylete filed its applications to register its mark in International Class 25, Robert Orlando filed a trademark application (Serial No. 86000809) for the mark in International Class 41 for use on the following goods and services: "Conducting fitness classes; Health

club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction." In the trademark application and the subsequently issued registration, Robert Orlando claimed to have first used the mark in commerce and generally on August 1, 2008.

19.     The USPTO granted the application to register the mark (Reg. No. 4480850) on February 11, 2014.

**U.S. Trademark Registration No. 4480850 for the HYBRID ATHLETICS mark in International Class 41**

20.     On July 2, 2013, Robert Orlando filed its trademark application (Serial No. 86000800) for the mark HYBRID ATHLETICS in International Class 41 for use on the following goods and services: "Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction."

21.     In the trademark application and the subsequently issued registration, Robert Orlando claimed to have first used the mark in commerce and generally on August 1, 2008.

22.     On October 25, 2013, the USPTO issued an Office Action rejecting the application for being merely descriptive of the goods and services offered. Applicant responded to the Office Action on April 24, 2014 explaining that it had used the mark since August 2008 and that the mark has therefore acquired distinctiveness.

23.     On May 9, 2014, the USPTO again issued an Office Action rejecting Applicant's claims that the HYBRID ATHLETICS mark had acquired distinctiveness.

24.     On November 10, 2014, Applicant responded to the second Office Action and attested and provided evidence that purportedly showed that the

HYBRID ATHLETICS mark was used in commerce and had acquired distinctiveness as a result of Applicant's use in promoting its CrossFit gym, and for its CrossFit Strongman Trainer courses over the preceding five year.

25.    After the additional declaration and representations, and in reliance on the accuracy of the statements made therein, the USPTO finally granted the application to register the mark (Reg. No. 4722185) on April 21, 2015.

**U.S. Trademark Registration No. 4609469 for the ⬣ mark in International Class 25**

26.    On February 21, 2014, more than a year after Hylete's application to register its ⬣ mark, a few months after HA filing its Notice of Opposition to Hylete's application to register its ⬥ mark, and about 10 days after his application to register the ⬣ mark in International Class 41 was granted, Robert Orlando filed the trademark application (Serial No. 86199948) for the ⬣ mark in International Class 25 for use on the following goods and services: "Bottoms; Headwear; Tops."

27.    As part of his application to register the ⬣ mark, Robert Orlando swore a declaration attesting to the truth of the statements in the application for registration under penalty of perjury, and at the risk of loss of any registration subsequently issued.

28.    In the trademark application and the subsequently issued registration, Robert Orlando claimed to have first used the ⬣ mark in commerce and generally as of December 31, 2008. In its application, Robert Orlando also claimed that on the filing date, the Mark was "now in such use in commerce."

29.    To support its application for registration, Robert Orlando also provided specimens of shorts co-branded with JACO which included the ⬣ as actually used in commerce; hats on which the ⬣ mark was affixed, and a jacket on which the ⬣ mark was affixed. Plaintiff also included a black and white drawing of the mark it sought to register.

30.     The USPTO published the mark for opposition on June 18, 2014.

31.     Because of Robert Orlando's representations, the USPTO granted Robert Orlando's application for registration for the 👑 mark (Reg. No. 4609469) on September 23, 2014.

32.     On information and belief, the mark applied-for, and shown in the registration which was subsequently issued, was not in use in commerce on the goods covered under the application as of the claimed "date of first use in commerce" of December 31, 2008.

33.      On information and belief, the mark applied-for, and shown in the registration which was subsequently issued, was not in use in commerce on the goods covered under the application as of the date of the application on February 21, 2104.

34.     On information and belief, in attesting to the date of first use in commerce, and as to current and ongoing use in commerce, and in providing misleading specimens, Robert Orlando willfully made false statements of fact, or omissions, with intent to deceive the United States Patent and Trademark Office and induce reliance thereon.

35.     On information and belief, but for Robert Orlando's misstatements of fact, the USPTO would not have granted the application for registration for the 👑 mark (Reg. No. 4609469) for the specific goods and services identified in the application, and with a priority date of December 31, 2008.

36.     On October 23, 2017, HA brought suit against Hylete alleging, among other things, infringement of U.S. Trademark Registration No. 4,480,850, U.S. Trademark Registration No.4,609,469, and U.S. Trademark Registration No.4,722,185, based on Hylete's marketing and sales of apparel bearing the Hylete Marks.

37.     There is an actual, substantial and continuing justiciable controversy between Hylete and HA as to HA's right to bring and maintain a suit for

infringement of U.S. Trademark Registration No. 4,480,850, U.S. Trademark
Registration No.4,609,469, and U.S. Trademark Registration No.4,722,185, and as
to the validity of those trademark registrations.

## COUNT 1

### (Declaratory Judgment, 28 U.S.C. §§ 2201-2202)

38.    Hylete repeats and incorporates by reference the allegations contained
in the preceding paragraphs of this Counterclaim as if fully restated herein.

39.    HA has alleged in this action that it owns protectable rights in its
putative Hybrid Marks.

40.    Hylete denies that it has infringed or that its use of the Hylete Marks
in connection with its apparel products will ever infringe or in any way violate
HA's purported rights in its putative Hybrid Marks.

41.    Further, HA's putative Hybrid Marks are not protectable because HA
has failed to use the putative Hybrid Marks as trademarks.

42.    In addition, the putative HYBRID ATHLETICS mark is generic,
merely descriptive, is not inherently distinctive, and HA has failed to establish
acquired distinctiveness or any secondary meaning in the putative mark.

43.    HA has abandoned any rights it may have had in the putative Hybrid
Marks.

44.    An actual, immediate, and justiciable controversy between the parties
exists over whether HA has any protectable rights in the putative Hybrid Marks
and, if so, whether Hylete is infringing or otherwise violating HA's rights.

45.    Hylete has been and will continue to be damaged by the persistent
uncertainty created by HA's unsubstantiated claims with respect to Hylete's
legitimate use of the Hylete Marks.

46.    Accordingly, Hylete is entitled to a declaration by this Court that (a)
Hylete's Hylete Marks do not infringe or otherwise violate HA's purported rights

and (b) that HA cannot and does not have any protectable trademark rights in the putative mark Hybrid Marks.

## COUNT 2

### (Cancellation of U.S. Trademark Registration No.4,722,185 - Generic)

47.     Hylete repeats and incorporates by reference the allegations contained in the preceding paragraphs of this Counterclaim as if fully restated herein.

48.     The Court has authority to cancel U.S. Trademark Registration No. 4,722,185 under Section 37 of the Lanham Act, 15 U.S.C. § 1119.

49.     The phrase "hybrid athletics" is not a valid, protectable trademark as the claimed mark "hybrid athletics" is not sufficiently distinctive to warrant trademark protection.

50.     The phrase "hybrid athletics" is generic in that its primary significance to the relevant public is the class or category of services on or in connection with which it is registered and purported to be used, namely conducting fitness classes, providing instruction and equipment in the field of physical exercise, personal fitness training services and consultancy, and physical fitness instruction. The phrase "hybrid athletics" is commonly used to identify a type of concurrent training that focuses on both strength and endurance activities. Furthermore, the public perceives the phrase "hybrid athletics" as a generic term to identify a type of concurrent training that focuses on both strength and endurance activities.

51.     Further, the examining attorney found that the term "HYBRID" is defined as a mixture of different styles and things and the term "ATHLETICS" is defined as system of training and practice for sports, exercises, and games, that require physical skill and stamina, and is generic in the context of applicant's services.

52.     HA's training services feature a mix (i.e. hybrid) of implementing various strongman equipment pieces with cross training techniques.

53.     The phrase "hybrid athletics" does not and cannot constitute a valid federal or common law trademark, is not afforded protection under any trademark law, and does not provide any trademark rights to HA. The phrase "hybrid athletics" cannot function as a trademark for HA's services.

54.     The registration for the mark "hybrid athletics" "was improperly obtained and improperly maintained and should be cancelled under the appropriate statutory provisions.

55.     Hylete is being damaged by the erroneous issuance of the registration.

56.     Hylete is entitled to a declaratory judgment that the term "hybrid athletics" is a generic term and that U.S. Trademark Registration No. 4,722,185 be canceled on that basis.

## COUNT 3

### (Cancellation of U.S. Trademark Registration No.4,722,185 – Merely Descriptive)

57.      Hylete repeats and incorporates by reference the allegations contained in the preceding paragraphs of this Counterclaim as if fully restated herein.

58.     The Court has authority to cancel U.S. Trademark Registration No. 4,722,185 under Section 37 of the Lanham Act, 15 U.S.C. § 1119.

59.     The phrase "hybrid athletics" is not a valid, protectable trademark as the claimed mark "hybrid athletics" is not sufficiently distinctive to warrant trademark protection.

60.     The phrase "hybrid athletics" is commonly used to identify a type of concurrent training that focuses on both strength and endurance activities. Furthermore, the public perceives the phrase "hybrid athletics" as a generic term to

identify a type of concurrent training that focuses on both strength and endurance activities.

61.    Further, the examining attorney found that the term "HYBRID" is defined as a mixture of different styles and things and the term "ATHLETICS" is defined as system of training and practice for sports, exercises, and games, that require physical skill and stamina, and is generic in the context of applicant's services.

62.    HA alleged that it uses the phrase "hybrid athletics" with Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction.

63.    The phrase "hybrid athletics" is merely descriptive with respect to the services with which it is used namely, Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction.

64.    The Registration is invalid under Section 2(e)(1) of the U.S. Trademark Act, 15 U.S.C. § 1052(e)(1), because the alleged trademark HYBRID ATHLETICS is merely descriptive.

65.    Hylete is being damaged by the erroneous issuance of the registration.

66.    Hylete is entitled to a declaratory judgment that the term "hybrid athletics" is merely descriptive and that U.S. Trademark Registration No. 4,722,185 be canceled on that basis.

## COUNT 4

### (Cancellation of U.S. Trademark Registration No.4,722,185 – Non-Use)

67.    Hylete repeats and incorporates by reference the allegations contained in the preceding paragraphs of this Counterclaim as if fully restated herein.

68.     At the time of the filing of its statement of use with its application for U.S. Trademark Registration No. 4,722,185, HA apparently made no bona fide commercial use of the mark HYBRID ATHLETICS on or in connection with Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction.

69.     Pursuant to Section 1 of the Lanham Act, HA is not entitled to a Federal registration for the purported trademark HYBRID ATHLETICS on or in connection with any services with which it had made no bona fide commercial use at the time of the filing of the application.

70.     Regardless of the subjective intent of Rob Orlando at the time he filed the application, the HYBRID ATHLETICS Registration is void *ab initio* with respect to Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction.

71.     Hylete is being damaged by the erroneous issuance of the registration.

72.     Pursuant to this Court's power to rectify the register under Section 37 of the Lanham Act, 15 U.S.C. §1119, U.S. Trademark Registration No. 4,722,185 should be canceled.

## COUNT 5

**(Cancellation of U.S. Trademark Registration No.4,722,185 – Fraud)**

73.     Hylete repeats and incorporates by reference the allegations contained in the preceding paragraphs of this Counterclaim as if fully restated herein.

74.     U.S. Trademark Registration No. 4,722,185 covers Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction.

75.     During prosecution of the application that led to U.S. Trademark Registration No. 4,722,185, the examining attorney refused registration under Section 2(e)(1) of the Lanham Act, 15 U.S.C. § 1052(e)(1), which precludes registration of a mark on the Principal Register that is merely descriptive.

76.      To overcome this rejection, applicant alleged that the mark had acquired distinctiveness through over six (6) years of "substantially exclusive and continuous" use of the mark in commerce.

77.     Applicant submitted a declaration of Rob Orlando (owner of HA), dated November 10, 2014, in which Rob Orlando declared that the mark was first used in commerce in 2008 and that there has been "substantially exclusive and continuous use" of the mark in commerce since that time. And in its response to the Office Action, applicant stated: "Applicant began using the Mark at least as early as August of 2008 in connection with conducting fitness classes and health club services, namely, providing instruction and equipment in the field of physical exercise; personal fitness training services and consultancy; and physical fitness instruction."

78.     On information and belief, HA obtained Registration No. 4,722,185 fraudulently, by knowingly representing to the USPTO that applicant began using the Mark in bona fide commercial use in commerce in 2008 in connection with conducting fitness classes and health club services, namely, providing instruction and equipment in the field of physical exercise; personal fitness training services and consultancy; and physical fitness instruction, when in fact it did not.

79.     On information and belief, HA obtained Registration No. 4,722,185 fraudulently, by knowingly representing to the USPTO that, since 2008, there was "substantially exclusive and continuous use" of the mark in commerce in connection with conducting fitness classes and health club services, namely, providing instruction and equipment in the field of physical exercise; personal

fitness training services and consultancy; and physical fitness instruction, when in fact there was not.

80.     HA's representations to the USPTO described above and Mr. Orlando's November 10, 2014 Declaration were material to the USPTO's decision to issue Registration No. 4,722,185 in that the USPTO would not have issued a registration for a merely descriptive mark in the absence of HA's representations regarding acquired distinctiveness.

81.     On information and belief, HA falsely represented that "Hybrid Athletics" had acquired distinctiveness based on "substantially exclusive and continuous use" of the mark in commerce, since 2008, in connection with conducting fitness classes and health club services, namely, providing instruction and equipment in the field of physical exercise; personal fitness training services and consultancy; and physical fitness instruction, with knowledge that that representation was false and with the intention of deceiving the USPTO to issue a registration that it would not have issued otherwise.

82.     By reason of the foregoing, Mr. Orlando and HA improperly and fraudulently obtained the Registration, which should be cancelled.


## COUNT 6

## (Cancellation of U.S. Trademark Registration No. 4,609,469 – Failure to Use as a Trademark)

83.     Hylete repeats and incorporates by reference the allegations contained in the preceding paragraphs of this Counterclaim as if fully restated herein.

84.     HA asserts trademark rights in its ⬚ mark for Bottoms; headwear; tops in International Class 25.

85.     The registered ⬚ design fails to function as an indicator of source. HA's use of the ⬚ design for bottoms, headwear and tops does not constitute valid and protectable trademark use because the ⬚ design is an aesthetic,

ornamental, or decorative design element that lacks distinctiveness and does not serve as a source identifier for HA.

86.     HA's 👑 design has not acquired distinctiveness through substantially exclusive and continuous use because numerous companies have use and continue to use similar designs for apparel.

87.     Hylete is being damaged by the erroneous issuance of the registration.

88.     The Court should declare HA's alleged 👑 mark invalid and cancel U.S. Trademark Registration No. 4,609,469 pursuant to 15 U.S.C. §§ 1119.

## COUNT 7

### (Cancellation of U.S. Trademark Registration No. 4,480,850 – Non-Use)

89.     Hylete repeats and incorporates by reference the allegations contained in the preceding paragraphs of this Counterclaim as if fully restated herein.

90.     At the time of the filing of its statement of use with its application for U.S. Trademark Registration No. 4,480,850, HA apparently made no bona fide commercial use of the mark on or in connection with Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction.

91.     Pursuant to Section 1 of the Lanham Act, HA is not entitled to a Federal registration for the purported trademark on or in connection with any services with which it had made no bona fide commercial use at the time of the filing of the application.

92.     Regardless of the subjective intent of Rob Orlando at the time he filed the application, the Registration is void *ab initio* with respect to Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; Physical fitness instruction.

93.    Hylete is being damaged by the erroneous issuance of the registration.

94.    Pursuant to this Court's power to rectify the register under Section 37 of the Lanham Act, 15 U.S.C. §1119, U.S. Trademark Registration No. 4,480,850 should be canceled.

## **DEFENDANT'S PRAYER FOR RELIEF**

WHEREFORE, Hylete prays that the Court: (1) declare that Hylete has not infringed upon HA's trademarks; (2) issue an Order cancelling each of United States Trademark Registration Nos. 4480850, 4609469, 4722185; (3) grant Hylete recovery for the reasonable damages it has incurred arising out of HA's conduct in an amount to be determined according to proof; (4) award Hylete its reasonable attorneys' fees and costs; (5) find that HA has engaged in willful, malicious, and wanton conduct warranting the award of punitive damages; (6) award punitive damages to Hylete and against HA for its conduct; and (7) order such other and further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Hylete hereby demands a trial by jury of all issues so triable in this action.

Respectfully Submitted,

DATED:  September 26, 2018

/s/ *Dave Deonarine*

Dave Deonarine, *phv09386*
Pattric J. Rawlins, *phv09482*
Nicholas S. Kawuka, *phv09387*
Attorneys for Defendant Hylete LLC
Procopio, Cory, Hargreaves
   & Savitch LLP
12544 High Bluff Drive, Suite 300
San Diego, CA  92130
Tel:       (858) 720-6300
Fax:      (619) 398-0167
Email:   dave.deonarine@procopio.com
             pattric.rawlins@procopio.com
             nicholas.kawuka@procopio.com

Thomas J. Mango, ct28149
Michael J. Rye, ct18354
Cantor Colburn LLP
20 Church Street, 22nd Floor
Hartford, CT 06103-3207
Tel:       (860) 286-2929
Fax:      (860) 286-0115
Email:   tmango@cantorcolburn.com
             mrye@cantorcolburn.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

## CERTIFICATE OF SERVICE

| | | |
|---|---|---|
| HYBRID ATHLETICS, LLC, | ) | Case Action No. 3:17-CV-1767 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HYLETE LLC, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

I hereby certify that on September 26, 2018, a copy of the foregoing document, was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electornic filing system.  Parties may access this filing through the Court's CM/ECF System.

/s/ *Dave Deonarine*
Dave Deonarine, *phv09386*
Attorneys for Defendant Hylete LLC
Procopio, Cory, Hargreaves
  & Savitch LLP
12544 High Bluff Drive, Suite 300
San Diego, CA  92130
Tel:      (858) 720-6300
Fax:      (619) 398-0167
Email:   dave.deonarine@procopio.com