# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| HYBRID ATHLETICS, LLC, | ) |
| | ) |
| Plaintiff, | ) Case Action No. 3:17-CV-1767 (VAB) |
| | ) |
| v. | ) DEFENDANTS' RONALD L. |
| | ) WILSON, II AND MATTHEW |
| HYLETE LLC, HYLETE, INC., | ) PAULSON MEMORANDUM OF |
| RONALD L. WILSON, II, and | ) POINTS AND AUTHORITIES IN |
| MATTHEW PAULSON, | ) SUPPORT OF THEIR MOTION TO |
| | ) DISMISS HYBRID ATHLETICS, |
| Defendants. | ) LLC'S FIRST AMENDED |
| | ) COMPLAINT, OR, IN THE |
| | ) ALTERNATIVE, MOTION TO |
| | ) CHANGE VENUE, OR, IN THE |
| | ) FURTHER ALTERNATIVE, |
| | ) MOTION TO STRIKE PORTIONS |
| | ) OF HYBRID ATHLETICS, LLC'S |
| | ) FIRST AMENDED COMPLAINT |
| | ) |
| | ) |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................... 1

II.   RELEVANT FACTS ALLEGED IN THE FAC ........................................ 4

III.  ARGUMENT.............................................................................. 6

     A.    All Of Plaintiff's Claims Against Defendants Are Barred Because This Court Lacks Personal Jurisdiction Over Defendants.................. 6

     B.    All Of Plaintiff's Claims Against Defendants Are Barred By The Statute Of Limitations And / Or Other Defects ................................. 8

          1.    Count I For Federal Trademark Infringement, Count II For False Designation Of Origin And Unfair Competition, And Count IV For Common Law Trademark Infringement Are Barred By The Statute Of Limitations...................................... 9

          2.    Count III For Statutory Unfair Competition Is Barred By The Statute Of Limitations, Is Not Pleaded With Particularity, And Is Preempted By The Copyright Act ..........14

          3.    Count V For Unjust Enrichment Is Barred By The Statute Of Limitations................................................................19

     C.    All Of Plaintiff's Claims Against Defendants Are Barred By The Doctrine Of Laches..........................................................................19

     D.    In The Alternative, This Court Should Transfer Venue To The Southern District Of California ........................................................22

          1.    This Action Could Have Been Brought In The Southern District Of California. .............................................................23

          2.    Transfer Is Appropriate Because Plaintiff's Choice Of Forum Is Of Little Weight ......................................................23

          3.    Transfer Is Appropriate Because The Locus Of Operative Facts Is In The Southern District Of California......................24

          4.    The Convenience Of Witnesses Who Will Be Required To

Offer Testimony Favors Transfer............................................25

5.    The Location Of Documents And Ease Of Access To Proof
Favors Transfer.......................................................................26

6.    The Transferee Court's Familiarity With The Governing
Law Favors Transfer..............................................................27

7.    The Relative Means Of The Parties Favors Transfer..............27

8.    The Availability Of Process To Compel Unwilling Non-
Party Witnesses Favors Transfer ...........................................28

E.    In The Further Alternative, This Court Should Strike Portions Of
The FAC That Are Redundant, Immaterial, Impertinent And/Or
Scandalous...................................................................................29

IV.    CONCLUSION .........................................................................33

# TABLE OF AUTHORITIES

## Cases

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
    860 F. Supp. 128 (S.D.N.Y. 1994) ..............................................................24

*A Slice of Pie Productions v. Wayans Bros. Entertainment*,
    392 F. Supp. 2d 297 (D. Conn. 2005) ......................................................18

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) ................................................................20

*Adam v. Jacobs*,
    950 F.2d 89 (2d Cir. 1991) ......................................................................22

*Argus Research Grp., Inc. v. Argus Media, Inc.*,
    562 F. Supp. 2d 260 (D. Conn. 2008) ..................................................9, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 9

*Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*,
    3:08-cv-1958(CFD), 2010 WL 1882316, at *9 (D. Conn. May 10,
    2010) ......................................................................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................8, 12, 17

*Bross Utilities Serv. Corp. v. Aboubshait*,
    489 F. Supp. 1366 (D. Conn. 1980) ......................................................... 7

*Cartier v. Aaron Faber, Inc.*,
    512, F. Supp.2d 165 (S.D.N.Y. 2007) ....................................................12

*Certain Underwriters at Lloyd's, London v. Cooperman*,
    957 A.2d 836 (Conn. 2008) ....................................................................19

*Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*,
    294 F. Supp. 2d 218 (D. Conn. 2003) ....................................................24

*Coach, Inc. v. Kmart Corps.*,
    756 F. Supp.2d 421 (S.D.N.Y. 2010) ......................................................31

*Cogswell v. American Transit Ins. Co.*,
   282 Conn. 505 (2007) ................................................................................ 7

*Conopco, Inc. v. Campbell Soup Co.*,
   95 F.3d 187 (2d Cir.1996) ...................................................................... 9, 20

*Crawford v. Cuomo*,
   796 F.3d 252 (2d Cir. 2015) ...................................................................... 8

*CSL Silicones Inc. v. Midsun Grp. Inc.*,
   170 F. Supp. 3d 304 (D. Conn. 2016), reconsideration denied, No.
   3:14-CV-01897 (CSH), 2016 WL 3566188 (D. Conn. June 27, 2016) .... 9, 15

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006) ........................................................................23

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ........................................................................3, 17, 18

*Fichera v. Mine Hill Corp.*,
   207 Conn. 204, 541 A.2d 472 (1988) .......................................................15

*Frontier Grp., Inc. v. Nw. Drafting & Design, Inc.*,
   493 F. Supp. 2d 291 (D. Conn. 2007) .......................................................17

*GEOMC Co. v. Calmare Therapeutics, Inc.*,
   No. 3:14-CV-01222 (VAB), 2016 WL 6122930, at *6 (D. Conn. Oct.
   19, 2016) ...................................................................................................31

*Ghartey v. St. John's Queens Hosp.*,
   869 F.2d 160 (2d Cir. 1989) ...................................................................... 8

*G-I Holdings, Inc. v. Baron & Budd*,
   238 F. Supp.2d 521 (S.D.N.Y. 2002) .......................................................29

*Golodner v. Women's Center of Southeastern Connecticut, Inc.*,
   281 Conn. 819 (2007) ................................................................................ 7

*Harley-Davidson, Inc. v. Grottanelli*,
   164 F.3d 806 (2d Cir. 1999) ......................................................................21

*In re Trilegiant Corp., Inc.*,
   11 F. Supp. 3d 82 (D. Conn. Mar. 28, 2014) ............................................16

*Jones v. Bock*,
    549 U.S. 199 (2007)..............................................................................8

*Lees v. Middlesex Ins. Co.*,
    229 Conn. 842 (1994) ........................................................................14

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)...............................................................29

*MAK Marketing, Inc. v. Kalapos*,
    620 F. Supp. 2d 295 (D. Conn. 2009)................................................24

*Milne v. Catuogno Court Reporting Servs., Inc.*,
    239 F. Supp.2d 195 (D. Conn. 2002)....................................................7

*Open Solutions Inc. v. Granite Credit Union*,
    No. 3:12-CV-1353 RNC, 2013 WL 5435105, at *4 (D. Conn. Sept.
    29, 2013)............................................................................................24

*Peck v. Pub. Serv. Mut. Ins. Co.*,
    114 F. Supp. 2d 51, (D. Conn. 2000)................................................14

*Pitney Bowes, Inc. v. Nat'l Presort, Inc.*,
    33 F. Supp.2d 130 (D. Conn. 1998) ...................................................27

*Prout v. Vladeck*,
    2018 WL 3853990, at *2 (S.D.N.Y. Aug. 14, 2018) ..................................30

*RBC Nice Bearings, Inc. v. Peer Bearing Co.*,
    410 Fed. Appx. 362, 367 (2d Cir. 2010).........................................10, 14, 20

*RBC Nice Bearings, Inc.*,
    676 F. Supp. 2d 35 (D. Conn. 2009) ...................................................16

*Rest. Supply, LLC v. Pride Mktg. & Procurement, Inc.*,
    No. 3-16-CV-1270 (MPS), 2017 WL 3444677, at *3 (D. Conn. Aug.
    10, 2017)........................................................................................23, 26

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988).................................................................32

*Saratoga Vichy Spring Co., Inc. v. Lehman*,
    625 F.2d 1037 (2d Cir. 1980).............................................................20

*Smith v. Local 819 I.B.T. Pension Plan,*
  291 F.3d 236 (2d Cir.2002)........................................................................21

*Sutton v. Rehtmeyer Design Co.,*
  114 F. Supp.2d 46 (D. Conn. 2000) ...........................................................25

*United States v. Montreal Trust Co.,*
  358 F.2d 239 (2d Cir. 1966) ....................................................................... 7

**Statutes**

17 U.S.C. § 301 .....................................................................................3, 17

28 U.S.C. § 1404.......................................................................................... 1

28 U.S.C. § 1404(a) .....................................................................................22

Conn. Gen. Stat. § 42-110...........................................................................14

Conn. Gen. Stat. § 42-110g(f).....................................................................14

Conn. Gen. Stat. § 52-577...........................................................................19

Conn. Gen. Stat. § 52-59b(a).......................................................................7

**Other Authorities**

1 Nimmer on Copyright § 1.01(B)(1)(e) .....................................................18

**Rules**

FRCP Rule 12(b)(2)...................................................................................1, 7

FRCP Rule 12(b)(6)...................................................................................1, 8

FRCP Rule 12(f)(2) .................................................................................1, 29

FRCP Rule 45(c)...........................................................................................28

Defendants Ronald L. Wilson, II, an individual ("Mr. Wilson") and Matthew Paulson, an individual ("Mr. Paulson") (collectively, "Defendants"), respectfully move the Court for an order dismissing Plaintiff Hybrid Athletics, LLC's ("HA" or "Plaintiff") claims against them pursuant to Rule 12(b)(2), and Rule 12(b)(6), of the Federal Rules of Civil Procedure ("FRCP").  In the alternative, Defendants move to transfer this case to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1404.  In the further alternative, Defendants move to strike portions of HA's First Amended Complaint ("FAC") pursuant to FRCP Rule 12(f)(2).  Defendants submit the following memorandum in support of their motion to dismiss, or, in the alternative, motion to change venue, or, in the further alternative, motion to strike portions of the FAC (collectively, the "Motion").

## I.      INTRODUCTION

On its face, the FAC discloses incurable legal defects that support prompt dismissal of all of Plaintiff's claims against Mr. Wilson and Mr. Paulson, acting solely as executives of Defendant Hylete, Inc. ("HYLETE").  To begin with, this Court lacks personal jurisdiction over Mr. Wilson and Mr. Paulson as non-resident defendants.  The well-established "fiduciary shield" theory adopted by Connecticut courts prevents an individual transacting business within the state solely as an officer of a corporation from being subject to personal jurisdiction.  Nowhere does the FAC allege that Mr. Wilson or Mr. Paulson transacted any amount of business in

Connecticut unrelated to their duties and obligations as executives of HYLETE, and thus the Court lacks personal jurisdiction over them.

Further, Plaintiff's own allegations establish that its claims for trademark infringement and false designation of origin and unfair competition under federal law, its statutory claim for unfair competition, and its common law claims for trademark infringement and unjust enrichment, are all barred by the applicable statute of limitations.

Plaintiff unequivocally alleges and reiterates throughout the FAC that HYLETE's use of the allegedly infringing marks, which Plaintiff now also contends Defendants approved, ratified and directed, commenced openly and publicly more than five (5) years ago in April 2012, and Plaintiff was aware of such use at that time. (Doc. No. 92, ¶¶ 60, 61, 66, 80, 105, 172.) Because the longest applicable statute of limitations for each of Plaintiff's claims against Mr. Wilson and Mr. Paulson is three years, this allegation alone establishes that each of Plaintiff's claims against Defendants is time-barred and must be dismissed without leave to amend.

Plaintiff's unfair competition claim against Defendants, by way of their alleged direction, approval and ratification of HYLETE's activities, also fails because it does not allege "fraudulent conduct" by Mr. Wilson and Mr. Paulson with specificity, as that term has been interpreted by the United States Supreme Court in *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S. Ct. 2041,

156 L. Ed. 2d 18 (2003).  To the extent the FAC alleges "reverse passing off" against Defendants, the claim still cannot stand because it is preempted by the Copyright Act, 17 U.S.C. § 301, which exclusively governs "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright… and come within the subject matter of copyright."  (17 U.S.C. § 301).

Laches further bars Plaintiff's claims against Mr. Wilson and Mr. Paulson. Plaintiff has set forth that HA competes directly with HYLETE in the marketing and distribution of goods to the "CrossFit community, and to those interested in fitness in general," and "[HYLETE]'s target consumers are the same as [HA]'s."  (Doc. No. 92, ¶ 50.)  Yet, Plaintiff did nothing to prevent injury to it from such allegedly infringing activities between April 2012 (when it claims it discovered HYLETE's use of its marks) and Plaintiff's filing of the FAC against Mr. Wilson and Mr. Paulson on September 12, 2018.

In the event the Court is inclined to entertain any of Plaintiff's claims against Mr. Wilson or Mr. Paulson, despite the Court's lack of personal jurisdiction over Defendants, and the stringent statutory bar over Plaintiff's claims, the Court should transfer this matter to the United States District Court for the Southern District of California.  The Southern District is simply the more appropriate forum for the action against these individual Defendants.  Not only do the operative facts regarding Mr. Wilson and Mr. Paulson's conduct merely as officers of Defendant HYLETE arise

there, the numerous witnesses who plan to testify as to Mr. Wilson and Mr. Paulson's honesty and good character all reside in that district.

Lastly, and in the event the Court is not inclined to have the matter transferred to the Southern District of California, the Court should strike portions of Plaintiff's FAC brought against Mr. Wilson and Mr. Paulson that are redundant, immaterial, and scandalous. HA has set forth Mr. Wilson and Mr. Paulson's purported annual salary, and attempted to imply that such Defendants have damaged the "financial outlook" of HYLETE by doing so. Yet, neither Defendants' respective salaries, nor HYLETE's "financial outlook," are relevant to any of the claims brought against Mr. Wilson and Mr. Paulson, and are clearly being weaponized by HA to damage Defendants' good name and credibility as successful executives capable of raising capital for HYLETE. (Doc. No. 92, ¶¶ 150-158.)

## II.   RELEVANT FACTS ALLEGED IN THE FAC

Plaintiff's FAC, which the Court must accept as true for purposes of testing its sufficiency, alleges the following relevant facts.

Plaintiff HA is a company owned by Robert Orlando. (Doc. No. 92, at ¶ 23.) HA offers and conducts various fitness and health services. (*Id*. at ¶ 20.) HA also sells fitness apparel and fitness training equipment. (*Id*.) The company's fitness apparel bears HA's marks. (*Id*. at ¶ 39.) Since 2008, HA has sold, promoted, and continues to sell and promote its apparel bearing its marks. (*Id.* at ¶41.)

Defendants Mr. Wilson and Mr. Paulson own and operate Defendant HYLETE, a manufacturer, distributor, and seller of athletic apparel. (*Id.* at ¶¶ 47, 70.) The FAC alleges that Mr. Wilson is the "front person" for HYLETE, and Mr. Paulson is in charge of business development. (*Id.* at ¶¶ 67-69.) Accordingly, the FAC contends that Mr. Wilson and Mr. Paulson exercise control over the whole company, supervise all business aspects of HYLETE, direct all HYLETE employee activity, and otherwise approve, ratify and direct all of HYLETE's actions alleged herein. (Doc. No. 92, ¶¶ 70, 74-75, 80.)

HYLETE competes with HA, targeting the same consumers as HA because HYLETE markets and distributes its goods to the CrossFit community and to those interested in fitness in general. (*Id.* at ¶ 48.) HYLETE sells the infringing products at physical locations and through its website www.hylete.com. (*Id.* at ¶ 50.) HYLETE has two pending federal trademark applications: Application Serial No. 85,837,045; and 87,339,360. (*Id.* at ¶ 51.) HYLETE is also the owner of a federal trademark registration – Registration No. 4,318,646. (*Id.* at ¶ 52.) HYLETE's mark as represented in Application Serial No. 85,837045 and HYLETE's registered mark as represented in Registration No. 4,318.6464 are collectively referred to as the "HYLETE Marks." (*Id.*, at ¶ 52.)

The FAC alleges that HYLETE has extensively used the HYLETE Marks, and other marks since at least April 2012. (Doc. No. 92, ¶ 60.) In April 2012,

Plaintiff alleges it discovered HYLETE's plans to promote, advertise, distribute, offer for sale, and sell clothing and apparel bearing the HYLETE Marks. (Doc. No. 92, at ¶ 61.) Plaintiff further alleges that it "immediately" contacted HYLETE and objected to HYLETE's use of the marks because those marks were confusingly similar to the HA marks. (*Id*. at ¶ 62.) In spite of the objections, HYLETE continued to use the HYLETE marks. (*Id*. at ¶ 63.)

To date, HYLETE continues to use the HYLETE Marks. (*Id*. at ¶70.) Since HYLETE's formation in 2012, there have been "multiple instances of actual confusion" between HYLETE's marks and HA' marks. (*Id*. at ¶73.) The FAC alleges that Mr. Wilson and Mr. Paulson are the "principal architects" of HYLETE's infringement, and, therefore, are personally liable for HYLETE's infringing activity. (*Id*. at ¶78, 80.)

Notwithstanding HYLETE's general denial of all such allegations pertinent to it, Mr. Wilson and Mr. Paulson explicitly dispute all of the allegations made against them in the FAC. Mr. Wilson and Mr. Paulson merely recite such allegations here to demonstrate the invalidity of Plaintiff's claims.

## III.   ARGUMENT

### A.   All Of Plaintiff's Claims Against Defendants Are Barred Because This Court Lacks Personal Jurisdiction Over Defendants

Plaintiff's claims against Mr. Wilson and Mr. Paulson are barred because this Court lacks personal jurisdiction over such Defendants.

6

A court must dismiss an action brought against a defendant if such court lacks personal jurisdiction over such defendant.  (FRCP Rule 12(b)(2); *see also Golodner v. Women's Center of Southeastern Connecticut, Inc.*, 281 Conn. 819, 825 (2007) ("Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss.").)  If the defendant challenging the court's jurisdiction is a nonresident individual defendant, the plaintiff ultimately bears the burden of establishing personal jurisdiction over the defendant via Conn. Gen. Stat. § 52-59b(a).  (*Cogswell v. American Transit Ins. Co.*, 282 Conn. 505, 515 (2007).  However, Connecticut courts regularly apply a "fiduciary shield" theory, which prevents this Court from asserting personal jurisdiction over non-resident individual defendants who transact business solely as an officer of a corporation.  (*United States v. Montreal Trust Co.*, 358 F.2d 239, 243 (2d Cir. 1966); *Milne v. Catuogno Court Reporting Servs., Inc.*, 239 F. Supp.2d 195, 2013 (D. Conn. 2002); *Bross Utilities Serv. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1373-74 (D. Conn. 1980).

Here, this Court lacks personal jurisdiction over Mr. Wilson and Mr. Paulson individual because Plaintiff has failed to allege any facts to establish that either has engaged in any independent, individual conduct within the state or otherwise.  The only applicable allegations in the FAC that purport to establish personal jurisdiction over Defendants are that Defendants, ***through HYLETE***, sold goods to consumers

in Connecticut via the HYLETE website, and "committed acts of…infringement in Connecticut" by delivering goods to consumers in Connecticut.  (Doc. No. 92, ¶¶ 17-18.)  Neither allegation, nor the remaining duplicative allegations in the FAC regarding the amount of control Defendants purportedly exercised over HYLETE, establish any business transactions in the State of Connecticut that Mr. Wilson or Mr. Paulson engaged in personally, and independent of HYLETE.

Accordingly, this Court does not have personal jurisdiction over Mr. Wilson or Mr. Paulson individually, and each of the causes of action against them should therefore be dismissed.

### B.   All Of Plaintiff's Claims Against Defendants Are Barred By The Statute Of Limitations And / Or Other Defects

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show that the plaintiff is not entitled to the relief sought.  (*See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6) to require allegations that show the pleader is entitled to relief).)  If, for example, the allegations show that the statute of limitations has run, the complaint may be dismissed under Rule 12(b)(6).  (*Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920, 166 L. Ed. 2d 798 (2007); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).)  In adjudicating a Rule 12(b)(6) motion, a district court must accept all facts alleged in the complaint.  (*Crawford v. Cuomo,* 796 F.3d 252, 256 (2d Cir. 2015).)  However, the court need not accept conclusory statements or

threadbare recitals of the elements of a cause of action.  (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)

>    1.    <u>Count I For Federal Trademark Infringement, Count II For False Designation Of Origin And Unfair Competition, And Count IV For Common Law Trademark Infringement Are Barred By The Statute Of Limitations</u>

***First***, all of Plaintiff's Lanham Act and common law trademark infringement claims should be dismissed because the statute of limitations relevant to such claims has long passed.

The Second Circuit and other federal courts of appeal have recognized that the Lanham Act does not have a statute of limitations, but rather borrows the statute of limitations for the most closely analogous state law.  (*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir.1996).)   In Connecticut, the most closely analogous law is Connecticut's three-year statute of limitations for fraud.   *Argus Research Grp., Inc. v. Argus Media, Inc*., 562 F. Supp. 2d 260, 273 (D. Conn. 2008).)  Like the Lanham Act, the statute of limitations for common law trademark infringement claims, whether based on state or federal common law, is three years.  (*See CSL Silicones Inc. v. Midsun Grp. Inc.,* 170 F. Supp. 3d 304, 316 (D. Conn. 2016), reconsideration denied, No. 3:14-CV-01897 (CSH), 2016 WL 3566188 (D. Conn. June 27, 2016) (noting that Connecticut courts apply the three-year statute of limitations for fraud in trademark infringement disputes).)

Additionally, in Connecticut, a trademark infringement claim accrues when a plaintiff first knows or has reason to know of the injury from which the claim arises. (*RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 410 F. App'x 362, 366–67 (2d Cir. 2010).)  A plaintiff may not successfully claim that each additional instance of infringement, after the first known infringement, renews the limitations period.  (*See id.*).

By its own admission, Plaintiff's Lanham Act and common law trademark infringement claims accrued at least as early as April 2012, which is well outside the applicable three-year limitations period.  Plaintiff unequivocally alleges that over five years ago – in April 2012 – it was on notice of HYLETE's alleged use of the mark, and it immediately contacted HYLETE objecting to the use of the mark because it was "confusingly similar to the [HA] Marks."  (Doc. No. 92, at ¶¶ 59-62.)

According to Plaintiff, HYLETE's use of the mark has also been extensive, and resulted in multiple instances of actual confusion since HYLETE's formation on March 26, 2012.  (*Id.*, at ¶¶ 59, 60, 73, 110.)  Further, HA competes with HYLETE, selling products that are in proximity with HYLETE's products in the market place.  (*Id.* at ¶48 ("…[HYLETE]'s target consumers are the same as [HA]'s."); *id.*, at ¶73-79 (describing [HYLETE]'s use of the marks in the marketplace which has led to confusion and has harmed Plaintiff).)

It is therefore undisputable that Plaintiff had actual, or – at a minimum –

constructive knowledge, of the facts giving rise to its claims by at least as early as March 26, 2012, but in no event later than April 30, 2012.   Plaintiff's allegations are unequivocal: (1) Plaintiff was aware of HYLETE's alleged extensive and open use of the HYLETE Marks at least as early as April 2012; (2) Plaintiff was aware of ongoing instances of alleged actual confusion since around March 26, 2012; and (3) Plaintiff sells similar products that compete with HA's products and are sold in the same proximity as HA's products.   New allegations regarding the extent of Mr. Wilson and Mr. Paulson's respective roles at HYLETE do not change the fact that Plaintiff should have, but did not, file its complaint against Defendants on or before April 30, 2015.

Mr. Wilson and Mr. Paulson anticipate that Plaintiff will also argue that its filing of the TTAB Action tolled the statute of limitations.   We challenge Plaintiff to find any authority supporting such a position, as we have found none.

***Second***, all of Plaintiff's Lanham Act and common law trademark infringement claims should be dismissed because they fail to state a claim against Mr. Wilson and Mr. Paulson upon which relief can be granted.   Under federal trademark law, a corporate officer may be held personally liable for the infringing activities of a corporate defendant ***only*** if there is a showing that the corporate officer was the "moving, active conscious force" behind the corporate defendant's acts of infringement.   (*Cartier v. Aaron Faber, Inc.*, 512, F. Supp.2d 165, 169 (S.D.N.Y.

2007) (internal citations omitted).)   However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 678 (2007) (internal citations omitted).)

Here, all of Plaintiff's Lanham Act and common law trademark infringement claims should be dismissed as to Mr. Wilson and Mr. Paulson because the FAC does little more than parrot the legal standard for imputing HYLETE's liability onto each of them.   Plaintiff has simply not established – *by pleading facts* – that such Defendants were a "moving, active [and] conscious force" behind HYLETE's alleged infringement.

*As to Mr. Wilson*, the only facts Plaintiff has alleged are: (a) that Mr. Wilson flew to China to set up manufacturing arrangements for Defendant HYLETE, and (b) that Mr. Wilson talked to "every person" who walked by the HYLETE booth at the CrossFit Games in 2012.  (Doc. No. 92, at ¶¶ 62, 65.)  Such facts do little to establish that Mr. Wilson was a "conscious force" behind infringing actions allegedly taken by HYLETE for over five years.

*As to Mr. Paulson*, Plaintiff has alleged even fewer facts, contending simply that Mr. Paulson made the first "substantial monetary investment" of $50,000 into Defendant HYLETE.  (*Id.* at ¶ 79.)  This alone cannot establish that Mr. Paulson was a "conscious force" behind HYLETE's allegedly infringing activity.

*The remaining allegations* in the FAC intended to impute corporate liability onto Mr. Wilson and Mr. Paulson simply re-state, upon information and belief, legal conclusions.  Such insufficient allegations include:

- That Mr. Wilson was and is the "front person" for Defendant HYLETE.

- That Mr. Wilson "oversees the whole [HYLETE] Company…"

- That Defendants "own, operate, and exercise control over [HYLETE]."

- That Defendants are "moving, conscious, dominant and active forces behind [HYLETE]'s unlawful conduct…"

- That Defendants "direct, ratify, authorize, and approve [HYLETE]'s unlawful conduct…"

- That Defendants "have been the driving force" behind Defendant HYLETE's allegedly infringing activities.

- That Defendants "supervise all business aspects of [HYLETE]…"

- That Defendants "intentionally direct [HYLETE] employees to sell" allegedly infringing goods.

- That Defendants "authorize and approve" of HYLETE's allegedly infringing activities.

- And that Defendants are the "principal architects" of HYLETE's allegedly infringing activities.  (*Id*. at ¶¶ 66-75, 78.)

Such formulaic recitations of the law, without more, do not meet requisite

pleading standards, and Plaintiff's Lanham Act and common law trademark infringement claims should therefore be dismissed as to Mr. Wilson and Mr. Paulson.

> 2.   <u>Count III For Statutory Unfair Competition Is Barred By The Statute Of Limitations, Is Not Pleaded With Particularity, And Is Preempted By The Copyright Act</u>

***First***, Plaintiff's claim for unfair competition under Conn. Gen. Stat. § 42-110 ("CUTPA") should be dismissed because it relies *exclusively* on the Lanham Act claims, which all fail to survive the statute of limitations defense and laches. (*Peck v. Pub. Serv. Mut. Ins. Co.*, 114 F. Supp. 2d 51, 57 (D. Conn. 2000) (citing *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 851, 643 A.2d 1282, 1286 (1994) for the proposition that CUTPA claims cannot survive if the underlying claim fails.) *See e.g., RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 410 F. App'x 362, 366–67 (2d Cir. 2010) (affirming dismissal of the plaintiff's state law claims which relied on the limitations-barred trademark infringement claims).) Defendants also anticipate that Plaintiff will argue that its filing of the TTAB Action tolled the statute of limitations, but we have found no case law supporting such a position.

Even assuming *arguendo* that Plaintiff's trademark infringement claims could survive the limitations and laches defenses, the CUTPA claim at issue cannot survive under prevailing law in this district. CUTPA has a statute of limitations of three years. (Conn. Gen. Stat. § 42-110g(f); *Fichera v. Mine Hill Corp.,* 207 Conn. 204,

216–17, 541 A.2d 472, 477–78 (1988).) Further, CUTPA is an "occurrence" statute meaning that the claim is ripe for adjudication at the time of the first occurrence of an actionable wrong, not at the time the Plaintiff discovers such wrong. (*Argus Research Group v. Argus Media*, 562 F. Supp. 2d 260, 280 (D. Conn. 2008).) CUTPA claims also do not accrue at each instance of a defendant's continuing conduct in trademark cases. (*CSL Silicones*, 170 F. Supp. 3d at 314) ("CUTPA claims sounding in trademark do not accrue as to each use of a plaintiff's mark, especially where the plaintiff had previous knowledge of the earlier infringement.").)

Here, Plaintiff's CUTPA claim sounds in trademark. (*See* Doc. No. 92, ¶¶ 176-177 (referring to the Lanham Act claims as the basis of the CUTPA claims); *id.*, at ¶¶ 178 (alleging "palming off"); *id.* at ¶ 179 (alleging that HYLETE's acts of palming off its goods "permit and accomplish confusion, [and] mislead and deceive the public as to the source of [HYLETE]'s goods…").) And as set forth above, Plaintiff was on notice of such alleged use of the HYLETE Marks by April 2012, going as far as to "immediately" notify HYLETE of its dissatisfaction with HYLETE's use of the HYLETE Marks. (Doc. No. 92, at ¶¶61-62.) Yet, Plaintiff did not bring this action until more than five years later.

While Plaintiff might argue that each instance of Defendants' conduct occurring in the three years preceding suit was a separate actionable violation, such a "separate accrual" rule does not apply to either trademark infringement claims or

CUTPA claims based on trademark infringement. (*RBC Nice Bearings, Inc.*, 676 F. Supp. 2d 35 (D. Conn. 2009).)  Thus, Plaintiffs CUTPA claim must be dismissed, and no new allegations about the extent of Mr. Wilson and Mr. Paulson's involvement in, or control over, HYLETE changes such a determination.

**Second**, Plaintiff's CUTPA claim should be dismissed because it is not pleaded against Mr. Wilson and Mr. Paulson with particularity.  When a plaintiff bases a CUTPA claim on fraud or fraudulent conduct, a plaintiff must satisfy the particularity requirements of Rule 9(b) of the FRCP.  (*In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82,120 (D. Conn. Mar. 28, 2014); *See also Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, 3:08-cv-1958(CFD), 2010 WL 1882316, at *9 (D. Conn. May 10, 2010) ("When a plaintiff in federal court bases a CUTPA claim on fraud allegations, the plaintiff must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b).").)

Here, the entirety of Plaintiff's CUTPA claim derives from the same "fraudulent misrepresentation" language ambiguously pleaded without supporting facts throughout the FAC.  (*See e.g.*, Doc. No. 92, at ¶¶178-179 (alleging "palming off" by HYLETE); *id.,* at ¶¶47-61 (describing Defendants' purported infringing activities); *id.,* at ¶¶72-78 (describing how HYLETE's activities have led to confusion in the marketplace).  Further, as set forth above, none of such allegations can impute liability on Mr. Wilson or Mr. Paulson individually because Plaintiff has

pled zero facts to establish that such Defendants were a "moving, active conscious force" in HYLETE's allegedly infringing activity.  Accordingly, the FAC fails to meet both the heightened pleading standards required by FRCP Rule 9(b), and the general pleading standards required by *Twombly*.

The Court should also not consider this a case of "passing off" or "palming off."  Passing off or palming off occurs where "A" purports to sell A's products as "B's" products.  (*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27, 123 S. Ct. 2041, 2044–45, 156 L. Ed. 2d 18 (2003).)  Plaintiff does not allege this, failing to set forth a single concrete, non-conclusory allegation to even suggest that HYLETE, at the direction of Defendants, made any actual misrepresentation about the source of its goods.  Because Plaintiff only alleges here that HYLETE sold HYLETE's own products under HYLETE's own brand in the hope of trading off of any similarity between its marks and HA's marks, HA has failed to state a claim for "passing off" or "palming off" with particularity.

***Third***, Plaintiff's CUTPA claim should be dismissed even if it is based on "reverse passing off" under section 43(a) of the Lanham Act because such claims are preempted by the Copyright Act.  (*See Frontier Grp., Inc. v. Nw. Drafting & Design, Inc.*, 493 F. Supp. 2d 291, 299 (D. Conn. 2007) (noting that the Copyright Act, 17 U.S.C. § 301 preempts unfair competition and misappropriation claims grounded in a plaintiff's original works or expressions); *A Slice of Pie Productions*

*v. Wayans Bros. Entertainment*, 392 F. Supp. 2d 297, 313 (D. Conn. 2005) (same); *Dastar,* 539 U.S. at 37 (noting that the phrase "origin of goods" under section 43(a) in the Lanham Act "refers to the producer of the *tangible* goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.") (emphasis added).; *see also,* 1 Nimmer on Copyright § 1.01(B)(1)(e) ("[If] B is selling B's products and representing to the public that they are A's, that is passing off.  If by contrast, B is selling B's products and representing to the public that they are B's, that is not passing off.  ***A claim that the latter activity is actionable [as a deceptive trade practice cause of action] because B's product replicates A's, even if denominated 'passing off,' is in fact a disguised copyright infringement claim***, and hence preempted.") (emphasis added).)

Assuming that Plaintiff's CUTPA claim is based on the theory of "reverse passing off," such a claim is merely a disguised copyright claim preempted by the Copyright Act.  Plaintiff does not allege any facts to establish that HYLETE sold HYLETE's products and claimed that they originated from Plaintiff – Plaintiff merely labels HYLETE's actions as palming off or passing off.  Nor, again, does Plaintiff allege any facts to establish how Defendants were a "moving, active conscious force" in such purported palming off or passing off by HYLETE.  Plaintiff only alleges that HYLETE's marks led to confusion in the market place and are likely to cause further confusion as to the source of the goods sold.  Accordingly,

Plaintiff's CUTPA claim, to the extent it is based on "reverse passing off," comes "within the subject matter" of the Copyright Act and is preempted.

        3.      <u>Count V For Unjust Enrichment Is Barred By The Statute Of Limitations</u>

Plaintiff's unjust enrichment claim must fail because of the inescapable defects illuminated by the statute of limitations defense. The statute of limitations for unjust enrichment is three years for any actions sounding in tort. (Conn. Gen. Stat. § 52-577. *See Certain Underwriters at Lloyd's, London v. Cooperman*, 957 A.2d 836, 850 (Conn. 2008) (unjust enrichment claims based on the same allegations as other tort claims are subject to the same three-year statute of limitations).) Because Plaintiff simply reiterates the same substance of its earlier allegations, Plaintiff's common law unjust enrichment claim flows from the same conduct alleged in its trademark infringement and related claims, and Plaintiff's common law unjust enrichment claim is therefore statutorily time barred.

**C.    <u>All Of Plaintiff's Claims Against Defendants Are Barred By The Doctrine Of Laches</u>**

Each and every one of Plaintiffs claims in the FAC should be barred by the doctrine of laches because Plaintiff has not promptly sought legal redress of its alleged wrongs.

To prove laches in the trademark infringement context, a defendant must prove that the plaintiff had knowledge of defendant's use of its marks, the plaintiff

delayed in bringing an action for infringement, and that permitting the plaintiff to assert its rights so late in time would cause unfair prejudice.  (*Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980).)  When the applicable statute of limitations has passed, the presumption of laches applies and a plaintiff seeking legal redress must rebut that presumption.  (*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996).)  While not a complete bar to recovery for a properly instituted claim in all instances, a successful laches defense bars recovery of damages accrued prior to filing suit.  (*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).)

Here, Plaintiff's own allegations show that it had knowledge of HYLETE's alleged use of the purportedly infringing marks, as early as April 2012.  Because Connecticut's three-year statute for fraud actions applies, the presumption of laches applies.  Plaintiff waited five years to bring this case against Mr. Wilson and Mr. Paulson as executives of HYLETE – lying in wait as HYLETE devoted more and more resources to developing its branded products, and earning consumer goodwill.  (*RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 410 Fed. Appx. 362, 367 (2d Cir. 2010).)

Plaintiff cannot reasonably offer any evidence rebutting the presumption of its unreasonable delay of more than five years before filing suit.  Defendants anticipate that Plaintiff will argue that Mr. Wilson and Mr. Paulson's respective

actions as alleged in the FAC amount to "intentional infringement," preventing Defendants from asserting the laches defense on the basis of their "unclean hands." The "intentional infringement" required for an unclean hands finding, though, is an "intention to confuse" and a lack of "good faith." (*Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999).)  And bare legal conclusions of such an intent to confuse, or lack of good faith, will not suffice. (*See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir.2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted).)

None of the allegations contained in the FAC demonstrate that Defendants had an intention to confuse or lacked good faith.  The handful of allegations that Defendants "intentionally directed" HYLETE employees to sell confusingly similar goods, "intentionally designed" the HYLETE Marks, and "intentionally sought to trade off of [HA]'s Marks" amount to bare legal conclusions that cannot survive a Motion to Strike.  (Doc. No. 92, ¶¶ 75, 125, 147.)

In fact to the contrary, Exhibit "4" to the FAC demonstrates Defendants' good faith belief that they were not infringing Plaintiff's mark.  (Doc. No. 92-4, pg. 3-8 (Matt Paulson explaining to Rob Orlando why he believed the HYLETE logo mark was not confusingly similar to the HA logo mark, and later providing Mr. Orlando with a "tech pack" displaying how products bearing both the HYLETE and HA

marks could be co-branded and sold).)  If Mr. Wilson "intentionally sought to trade off of [HA]'s Marks" *then why would he direct Mr. Paulson to send Mr. Orlando a proposal showing how both marks could be co-branded and sold on clothing together*?  Plaintiff has no answer because there are no facts to demonstrate unclean hands here.

Accordingly, Counts I though V are barred by the doctrine of laches and should be dismissed as to Mr. Wilson and Mr. Paulson.  If the Court is not inclined to dismiss such claims in their entirety based on the doctrine of laches, Plaintiff's damages should at least be limited to those damages that have accrued *after the date* Plaintiff filed the FAC

### D. <u>In The Alternative, This Court Should Transfer Venue To The Southern District Of California</u>

The propriety of a forum is a threshold matter that federal courts must consider before addressing the merits of an action.  (*Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991).)  28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  (28 U.S.C. § 1404(a).)

The district court has broad discretion to transfer an action, and may consider factors such as: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof,

(4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties. (*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006).) Courts also consider: (8) the forum's familiarity with the governing law; and (9) whether trial efficiency and the interests of justice would be best served in light of the totality of the circumstances. Because none of these factors is dispositive, this Court has broad discretion on whether to permit transfer.

1.    This Action Could Have Been Brought In The Southern District Of California.

In the absence of a forum selection clause, such as here, a district court must address the threshold issue of whether a case could have been brought in the transferee forum. (*Rest. Supply, LLC v. Pride Mktg. & Procurement, Inc.*, No. 3-16-CV-1270 (MPS), 2017 WL 3444677, at *3 (D. Conn. Aug. 10, 2017).) Here, this predominantly federal trademark infringement case could have been brought in the Southern District of California – where Mr. Wilson and Mr. Paulson both worked and direct the operations of Defendant HYLETE.

Accordingly, this threshold inquiry has been met, and as addressed below, the other factors favor transferring this action to the Southern District of California.

2.    Transfer Is Appropriate Because Plaintiff's Choice Of Forum Is Of Little Weight

While given great weight ordinarily, "[a] plaintiff's choice of forum receives less deference … when the locus of operative facts is elsewhere." *Open Solutions Inc. v. Granite Credit Union*, No. 3:12-CV-1353 RNC, 2013 WL 5435105, at *4 (D. Conn. Sept. 29, 2013). Here, Plaintiff chose to bring suit in its home court, the District Court of Connecticut – miles away from where Mr. Wilson and Mr. Paulson live and work. But as the facts alleged in the FAC demonstrate, the locus of operative facts occurred squarely within the Southern District of California, and this factor, therefore, holds little weight.

3.    Transfer Is Appropriate Because The Locus Of Operative Facts Is In The Southern District Of California

Where the locus of operative facts occurred is a very important factor in a transfer analysis. (*Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003).) To determine such locus, the court must look to the site of the events from which the claim arises. (*Id.*) In trademark infringement cases, the locus of operative facts is where the misrepresentations or omissions occurred, not where they were received. (*MAK Marketing, Inc. v. Kalapos*, 620 F. Supp. 2d 295 (D. Conn. 2009). *See e.g., 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994) (passing off occurred where misrepresentations were made, not where confused customers called from).)

Most importantly, the alleged locus of facts purporting to support Plaintiff's contention that Mr. Wilson and Mr. Paulson exercised enough control and direction over HYLETE's infringing activities to be held personally liable all occurred in the Southern District of California. In fact, Plaintiff does not specifically allege a *single* operative fact that occurred in Connecticut. Additionally, the alleged locus of facts purporting to support HYLETE's allegedly infringing activities occurred in the Southern District of California.

Accordingly, this factor weighs heavily in favor of transfer.

4.     <u>The Convenience Of Witnesses Who Will Be Required To Offer Testimony Favors Transfer</u>

The convenience of the witnesses is "[t]he single most important factor" in a § 1404(a) motion to transfer. (*See Sutton v. Rehtmeyer Design Co*., 114 F. Supp.2d 46, 50 (D. Conn. 2000).) Both Mr. Wilson and Mr. Paulson intend to produce character witnesses from in or near the Southern District of California, who will testify to Defendants' personal honesty and good character in defense of Plaintiff's contention that such Defendants engaged in deceptive and intentionally infringing conduct. Defendants also intend to produce character witnesses from in or near the Southern District of California, who will testify to Defendants' corporate integrity and professionalism in defense of Plaintiff's implication that Defendants took large salaries to the financial detriment of Defendant HYLETE. Further, former

employees of HYLETE who are named in the FAC and are therefore expected witnesses, such as Jenn Null and Garrett Potter, reside in California.

Conversely, Plaintiff's only expected witness at this point is its only principal and employee, Rob Orlando. (*See* Doc. No. 92, at ¶23 ("[HA] is owned and operated by Mr. Orlando.  Mr. Orlando is responsible for all aspects of the business, including advertising, sales, and finances.")

Accordingly, this factor also weighs heavily in favor of transfer.

> 5.   The Location Of Documents And Ease Of Access To Proof Favors Transfer

Similarly, because both Mr. Wilson and Mr. Paulson work for HYLETE, which conducts its business in California, the bulk of the documents and evidence is reasonably expected to be in the Southern District of California.  (*See e.g., Rest. Supply, LLC v. Pride Mktg. & Procurement, Inc*., No. 3-16-CV-1270 (MPS), 2017 WL 3444677, at *5 (D. Conn. Aug. 10, 2017) (business records presumably in defendant's forum state).)   In infringement cases especially, the bulk of evidence comes from the accused infringer – which is HYLETE.  Plaintiff has already sought copious documents pertaining to HYLETE's marketing and sales of allegedly infringing goods, which reside with HYLETE in California.  And Defendants expect that Plaintiff will now seek further documents pertaining to Mr. Wilson and Mr. Paulson's control over HYLETE's operations, which reside with HYLETE in

California.

Accordingly, this factor weighs in favor of transfer.

> 6.   The Transferee Court's Familiarity With The Governing Law
>       Favors Transfer

"Federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State." (*Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp.2d 130, 132 (D. Conn. 1998).)  This case is fundamentally based on a claim for federal trademark infringement.  Like other federal courts, the Southern District of California is as equipped as this Court to adjudicate this matter.

Thus, this factor weighs in favor of transfer.

> 7.   The Relative Means Of The Parties Favors Transfer

Where litigating in a foreign state may adversely affect one party, the court may transfer or retain the matter based on the financial means of the parties.  Here, Mr. Wilson and Mr. Paulson are both individuals without a large "war chest" that businesses, such as Plaintiff, possess.  And while Plaintiff will predictably argue that Mr. Wilson and Mr. Paulson each receive a large salary from HYLETE, what Plaintiff has left out of its pleadings is the fact that both Mr. Wilson and Mr. Paulson have either deferred a substantial portion of that yearly salary, or taken it in the form of stock options.  Plaintiff, on the other hand, is not of limited means and can afford litigating in California.

Accordingly, this factor weighs in favor of transfer.

        8.    <u>The Availability Of Process To Compel Unwilling Non-Party Witnesses Favors Transfer</u>

The FAC identifies at least two individuals, who are no longer employees of either JACO (the company where Mr. Wilson, Mr. Paulson, and other early employees of HYLETE worked prior) or HYLETE but are nevertheless expected to be witnesses – Jenn Null and Garrett Potter. Additionally, and as set forth at length above, both Mr. Wilson and Mr. Paulson intend to put forth numerous character witnesses. None of these potential witnesses, however, are identified as party witnesses, and therefore, the Court may need to compel such witnesses to testify. Because all of such unwilling witnesses reside in or near the Southern District of California, and allegedly engaged in relevant conduct in the Southern District of California, the Court in that venue is the better venue to compel any such witness appearances pursuant to FRCP Rule 45(c).

Accordingly, this factor weighs in favor of transfer.

In light of all such factors, the totality of the circumstances indicate that the United States District Court for the Southern District of California would be an appropriate venue to resolve this matter.

**E.    In The Further Alternative, This Court Should Strike Portions Of The FAC That Are Redundant, Immaterial, Impertinent And/Or Scandalous**

Many of the allegations levied against Mr. Wilson and Mr. Paulson in the FAC should be stricken pursuant to FRCP Rule 12(f)(2).  This Court may, on motion made by a party to the pertinent pleading, strike from such pleading any matter that is redundant, immaterial, impertinent, or scandalous.  (FRCP Rule 12(f)(2).)  Even though the Second Circuit has cautioned that "courts should not tamper with the pleadings unless there is strong reason for doing so," *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), "allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or…have criminal overtones" *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp.2d 521, 555 (S.D.N.Y. 2002).  As set forth below, much of Plaintiff's allegations directed at Mr. Wilson and Mr. Paulson fall under the category of being either immaterial and scandalous, or redundant.

**First**, and most importantly, the Court should strike allegations 150-158 because they are immaterial to Plaintiff's trademark infringement complaint. Plaintiff has dedicated nine paragraphs in the FAC to HYLETE's "financial outlook," as well as Mr. Wilson's and Mr. Paulson's salaries, even though none of those allegations have any bearing on this trademark dispute.  Such allegations also have nothing to do with any of the non-trademark claims that depend on HA's

trademark infringement claims, or any of the damages that HA claims it has incurred.

This is a trademark infringement matter, not a shareholder dispute. Accordingly, whether HYLETE raised capital, experienced losses, decreased cash reserves, or increased inventory is immaterial. The salaries of HYLETE's executives are also immaterial and unimportant, and have been brought by Plaintiff in bad faith for an ulterior purpose.

In reality, Plaintiff brought these allegations solely to gain leverage, and cause scandal upon Mr. Wilson and Mr. Paulson as executives of HYLETE. Plaintiff knows that HYLETE's success largely results from Mr. Wilson's proven ability as CEO to raise substantial capital (as Plaintiff sets forth in paragraphs 150-151 of the FAC). Plaintiff has broadcast Defendants' salaries, along with language intended to create the implication that taking such salaries somehow creates a "worsening financial outlook" for HYLETE, solely to damage Mr. Wilson's reputation and ability to successfully raise capital for HYLETE in the future. Plaintiff hopes that Defendants will be forced to settle this matter when the capital HYLETE has already raised runs out, and the sources of additional capital that Mr. Wilson has access to refuse to further lend on the basis of Mr. Wilson's damaged professional reputation.

The Court should especially strike these allegations because they serve no purpose other than to create resentment against Defendants and HYLETE. (*See e.g.*, *Prout v. Vladeck*, 2018 WL 3853990, at *2 (S.D.N.Y. Aug. 14, 2018) (striking

allegations regarding "lack of integrity" that served no purpose other than to build resentment against the relevant party).)  A reader or juror who encounters allegations concerning the amount of capital HYLETE has raised, and the amount of expenses it incurs, without any context about HYLETE's run-rate or capital expenditure strategies could easily believe that HYLETE is being fiscally irresponsible.  A reader or juror who encounters allegations concerning the level of salary each Defendant takes, without any context about how much of each such salary each Defendant defers or takes in stock options, could easily believe that Defendants are powerful millionaires who could care less about the survival of HYLETE.  None of such conclusions would be true or accurate, but all of such potential conclusions would create resentment against Defendants.

Additionally, such allegations would unfairly increase the scope of discovery regarding issues wholly immaterial to this case – all at the expense of Mr. Wilson and Mr. Paulson individually.  A motion to strike should be granted where allegations "would increase the duration and expense of trial," and the party affected by such allegations "would incur increased discovery costs" to explore the tenuous factual basis for such allegations.  (*Coach, Inc. v. Kmart Corps.*, 756 F. Supp.2d 421, 428 (S.D.N.Y. 2010); *see e.g., GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 3:14-CV-01222 (VAB), 2016 WL 6122930, at *6 (D. Conn. Oct. 19, 2016) (striking additional matter that would expand the scope of discovery and increase the cost of

litigation).)

***Second***, the Court should strike Plaintiff's redundant allegations against Mr. Wilson and Mr. Paulson regarding the level of control each exerts over HYLETE's allegedly infringing activities. "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial." (*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).) As set forth in detail above, at least twelve allegations contained between paragraphs 66 and 80 of the FAC simply re-state, in different terminology, conclusory language in paragraph 71 intended to establish that Mr. Wilson and Mr. Paulson were the "moving, conscious, dominant and active force" behind HYLETE's allegedly infringing activity. Notwithstanding Defendants' prior contention herein that such a "magic word" allegation amounts to a mere formulaic recitation of the required legal standard, paragraphs 66-70, 72-78, and 80-81 simply parrot that allegation, and should be stricken.

Accordingly, the Court should strike the allegations in paragraph 150-158 because they are immaterial to the dispute, and are scandalous and highly prejudicial to Defendants. The Court should also strike the allegations contained in paragraphs 66-68, 70, 72-75, 77-78 and 80 on the basis that they are redundant, highly-formulaic recitations of a legal standard that do not add any substance to HA's claims. If this

32

Court is nevertheless inclined to allow any of such allegations to remain, however, it should compel Plaintiff to substantively justify the need for every such allegation.

## IV.   <u>CONCLUSION</u>

Plaintiff cannot offer a plausible argument to avoid a dismissal on the basis that the Court lacks personal jurisdiction over Defendants, or on the basis that the statute of limitations applies to its trademark infringement, false designation of origin, and unfair competition claims.   And because the remaining claims are predicated on the survivability of those claims, this Court must conclude that dismissal of all causes of action is proper and warranted.   In the event that the statute of limitations is not a complete bar to Plaintiff's claims, however, such claims should be dismissed pursuant to the principal of laches, or, at the very least, limited to seeking damages that have accrued only after Plaintiff filed the FAC.   If the Court is inclined to allow Plaintiff's late filed claims to proceed, the Court should, in the alternative, transfer this matter to the Southern District of California, where the locus of operative facts relevant to Mr. Wilson and Mr. Paulson reside.   If the Court is inclined to keep the matter within its jurisdiction, then the Court should, in the further alternative, strike certain identified allegations contained in the FAC that are redundant, or immaterial and scandalous.

Respectfully Submitted,


Ronald L. Wilson, II and Matthew Paulson


Date: October 10, 2018          By: /s/ Thomas J. Mango
                                Thomas J. Mango, ct28149
                                Michael J. Rye, ct18354
                                Cantor Colburn LLP
                                20 Church Street, 22nd Floor
                                Hartford, Connecticut 06103
                                Telephone:  (860) 286-2929
                                Facsimile:  (860) 286-0115
                                Email: tmango@cantorcolburn.com
                                        mrye@cantorcolburn.com

                                Of Counsel,
                                *Pro Hac Vice* Admission Pending

                                John M. Begakis, Esq., SBN 278681
                                AltView Law Group, LLP
                                12100 Wilshire Blvd., Suite 800
                                Los Angeles, CA 90025
                                Telephone: (310) 230-5580
                                Fax: (310) 943-2540
                                Email: john@altviewlawgroup.com

                                *Attorneys for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2018 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_/s/ Thomas J. Mango_
Thomas J. Mango