HYBRID ATHLETICS, LLC,
    *Plaintiff*,

v.

HYLETE, LLC, HYLETE, INC.,
RONALD L. WILSON, II, and
MATTHEW PAULSON,
    *Defendants*.

No. 3:17-cv-1767 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS OR TRANSFER**
**AND MOTION TO AMEND ANSWER & COUNTERCLAIMS**

On October 10, 2018, Ronald L. Wilson, II and Matthew Paulson (collectively, the "Individual Defendants") moved to dismiss all counts of the Amended Complaint filed by Hybrid Athletics, LLC ("Plaintiff" or "Hybrid") as to them. Motion to Dismiss, dated Oct. 10, 2018 ("Indiv. Defs.' Mot."), ECF No. 112; Memorandum of Points and Authorities in Support of Indiv. Defs.' Mot., dated Oct. 10, 2018 ("Indiv. Defs.' Mem."), ECF No. 113.

In the alternative, the Individual Defendants moved to (1) transfer this action to the Southern District of California under 28 U.S.C. § 1404(a); or (2) strike certain allegedly immaterial and repetitive paragraphs from the Amended Complaint. *See id.*

On May 10, 2019, Hylete, LLC and Hylete, Inc. (collectively, "Hylete") moved for leave to amend its answer to the Amended Complaint, including by adding five additional counterclaims. Motion for Leave to Amend Answer and Counterclaims, dated May 10, 2019 ("Hylete Mot."), ECF No. 180; Memorandum in Support of Hylete Mot., dated May 10, 2019 ("Hylete Mem.").

Because both of these motions affect the scope of this action and are fully briefed, the Court considers them together in this opinion.[1]

For the reasons explained below, the Individual Defendants' motion to dismiss is **DENIED**, and Hylete's motion to amend is **GRANTED IN PART AND DENIED IN PART**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the factual allegations and procedural history of this trademark infringement action is assumed. *See Hybrid Athletics v. Hylete, LLC*, No. 3:17-cv-1767 (VAB), 2018 WL 4323816, at *1–2 (D. Conn. Sept. 10, 2018).

On September 10, 2018, the Court granted Hybrid's motion for leave to file an Amended Complaint, rejecting Hylete's arguments that such amendment was futile because either the statute of limitations or laches barred the claims. *See id.* at *4 ("These arguments over the statute of limitations, especially as they involve the defense of laches or equitable tolling, are better addressed at a later stage of this case . . . . [A] court would only deny a motion to amend if it is clear on the face of the pleadings that the claims would be barred by the statute of limitations, and if the issue would not need to be more fully briefed. That is not the case here.") (citations omitted).

In granting this amendment, the Court permitted Hybrid to (1) add as a defendant Hylete, LLC's related corporate entity, Hylete, Inc.; (2) add as defendants Hylete's co-founders, Ronald Wilson and Matthew Paulson; and (3) add newly-discovered facts relating to Defendants' alleged

---

[1] As the Court has previously noted, the expeditious resolution of this case has been complicated by multiple contentious discovery disputes. *See Hybrid Athletics v. Hylete, LLC*, No. 3:17-cv-1767 (VAB), 2019 WL 1745676, at *2 (D. Conn. Apr. 17, 2019). Given the already considerable litigation delays here, the Court exercises its discretion to rule on the pending motions without oral argument. D. Conn. L. Civ. R. 7(a)(3) ("[T]he Court may, in its discretion, rule on any motion without oral argument."); *see generally Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (recognizing a district court's inherent authority to manage its docket "with a view toward the efficient and expedient resolution of cases.") (citations omitted).

willful infringement to its existing cause of action for willful infringement. *See* Plaintiff's Motion for Leave to Amend, dated Jul. 27, 2018, ECF No. 76.

On September 12, 2018, Hybrid filed its Amended Complaint. Amended Complaint, dated Sept. 12, 2018 ("Am. Compl."), ECF No. 92.

On September 26, 2018, Hylete answered the Amended Complaint, asserting, *inter alia*, seventeen affirmative defenses, one counterclaim for a declaratory judgment of non-infringement, and six counterclaims seeking cancellation of three of Hybrid's trademarks (Trademark Reg. Nos. 4,480,850; 4,609,469; and 4,722,185) under 15 U.S.C. § 1119. Hylete's Answer, Affirmative Defenses and Counterclaims to Hybrid's Am. Compl., dated Sept. 26, 2018 ("Ans."), ECF No. 104, at 16–20, 27–28, 28–35.

On October 10, 2018, Mr. Paulson and Mr. Wilson moved to dismiss all counts of the Amended Complaint for lack of personal jurisdiction and for failure to state a claim. Indiv. Defs.' Mot.; Indiv. Defs.' Mem. They argued that this Court lacks personal jurisdiction over them under the "fiduciary shield" rule, Indiv. Defs.' Mem. at 6–8, and that either the statute of limitations has run on all of Hybrid's claims, *id.* at 8–19, or that all of Hybrid's claims are barred by the doctrine of laches, *id.* at 19–22. In the alternative, the Individual Defendants moved to (1) transfer this action to the Southern District of California under 28 U.S.C. § 1404(a), *id.* at 22–28; or (2) strike allegedly immaterial and repetitive paragraphs from the Amended Complaint, *id.* at 29–33.

On October 17, 2018, Hybrid answered Hylete's counterclaims. Hybrid's Answer and Affirmative Defenses to Hylete's Counterclaims, dated Oct. 17, 2018 ("Counterclaim Ans."), ECF No. 115.

On October 31, 2018, Hybrid opposed the Individual Defendants' motion to dismiss. Plaintiff's Opposition to Defendants' Motion to Dismiss, dated Oct. 31, 2018 ("Hybrid Opp. to Indiv. Defs.' Mot."), ECF No. 116.

On November 1, 2018, the parties jointly moved to amend the pre-trial schedule, extending all deadlines by twelve weeks. Joint Motion to Amend the Amended Scheduling Order, dated Nov. 1, 2018, ECF No. 117.

On November 2, 2018, the Court granted the motion to amend the pre-trial schedule, extending the parties' deadline to file amended pleadings to December 1, 2018. Amended Scheduling Order, dated Nov. 2, 2018 ("11/2/2018 Sched. Order"), ECF No. 118.

On November 14, 2018, the Individual Defendants filed a reply in further support of their motion. Reply to Hybrid Opp. to Indiv. Defs.' Mot., dated Nov. 14, 2018 ("Indiv. Defs.' Reply"), ECF No. 122.

In the months that followed, the Court addressed a number of contentious discovery disputes, and granted several amendments to the pre-trial schedule at the parties' request.

On May 10, 2019, Hylete moved for leave to amend its Answer to the Amended Complaint. Hylete sought to add two additional affirmative defenses (good faith and fair use) and to plead five additional counterclaims. *See* Hylete Mot.; Hylete Mem.; Proposed Amended Answer, Affirmative Defenses and Counterclaims to Am. Compl., annexed as Ex. A to Hylete Mot., ECF No. 180-2 ("Proposed Am. Ans."); *see also* Redlined Proposed Amended Answer, annexed as Ex. B to Hylete Mot. ("Redlined Am. Ans."), ECF No. 180-3.

Four of the counterclaims Hylete sought to add to its Answer, Counterclaims 10–13, are alleged both against Hybrid and its "sole owner," Robert Orlando. *See* Proposed Am. Ans. at 50–55. Hylete therefore also seeks leave to add Mr. Orlando as a counterclaim defendant under

Federal Rules of Civil Procedure 13(h) and 20(a), arguing that it "seeks relief jointly and severally from [Hybrid] and [Mr.] Orlando because of [Mr.] Orlando's central role in personally directing and even personally performing the alleged unlawful conduct," and because "questions of law or fact common to all [counterclaim] defendants will arise in the action." Hylete Mem. at 9.

On May 30, 2019, the Court extended the deadline for fact discovery to October 25, 2019, and the deadline for expert discovery to January 10, 2020. Amended Scheduling Order, dated May 30, 2019 ("5/30/2019 Sched. Order"), ECF No. 196.

On June 3, 2019, Hybrid opposed Hylete's motion for leave to amend. Plaintiff's Opposition to Hylete Mot., dated Jun. 3, 2019 ("Hybrid Opp. to Hylete Mot."), ECF No. 199. Hybrid argued, *inter alia*, that "[t]here is simply no basis for Hylete to assert these claims over [six] months after the stipulated December 1, deadline [to file amended pleadings] and after what would have been the close of discovery pursuant to the Court's March 14 schedule." *Id.* at 2. Hybrid also argued that it "should not be punished for its cooperation with Defendants" in agreeing to extend the deadlines to complete previously agreed-upon discovery "by having to defend against new, meritless claims against Mr. Orlando." *Id.* at 3.

On June 14, 2019, Hylete replied to Hybrid's opposition. Reply in Support of Hylete Mot., dated Jun. 14, 2019 ("Hylete Reply"), ECF No. 203.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The

plaintiff therefore must make a prima facie showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

The court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed under Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6).

In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### C. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *accord Gottlieb v. U.S. Sec. & Exch. Comm'n*, 723 F. App'x 17, 19 (2d Cir. 2018).

### D. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike under Rule 12(f) "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *see also Gierlinger v. Town of Brant*, No. 13-CV-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("Because striking a [part] of a pleading is a drastic remedy motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.") (internal quotation marks omitted).

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (citing *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999); *Impulsive Music v. Pomodoro Grill, Inc.*, No. 08-CV-6293, 2008 WL 4998474, at *2 (W.D.N.Y. Nov. 19, 2008)).

### E. Motion to Amend

Federal Rule of Civil Procedure 15(a) provides that parties may either amend pleadings once as a matter of course within 21 days after serving the pleading or, after 21 days, move for leave to amend. FED. R. CIV. P. 15(a). The "court should freely give leave when justice so requires." *Id.* If the underlying facts or circumstances relied upon by a party may be a proper subject of relief, that party should be given the opportunity to test its claims on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the absence of any apparent or declared reason for denying leave, the leave sought should be "freely given." *Id.*

While the decision to grant leave to amend is within the discretion of the court, the court must give some "justifying reason" if it denies leave. *Id.* at 182. Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Id.; see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (internal citations omitted); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.") (internal quotation marks omitted).

But where a party seeks leave to amend after the deadline to amend pleadings has passed, the court has greater discretion to deny leave to amend. A moving party may be required to

demonstrate that there is "good cause" both to amend the scheduling order and to amend their pleading. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party.") (citations collecting cases omitted); *accord Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) ("We held in *Parker* that a district court, despite the standard of the second sentence of Rule 15(a), does not abuse its discretion in denying leave to amend the pleadings where the moving party has failed to establish good cause, as required by Rule 16(b), to amend the pleadings after the deadline set in the scheduling order. We stated with respect to the Rule 16(b) standard, "'good cause' depends on the diligence of the moving party.").

In exercising their discretion under Rule 16(b), courts "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 243.

## III. DISCUSSION

### A. Personal Jurisdiction over Mr. Wilson and Mr. Paulson

Mr. Wilson and Mr. Paulson argue that the Court must dismiss all claims against them for lack of personal jurisdiction because, under Connecticut's "fiduciary shield" rule, they are not subject to personal jurisdiction under the state's long-arm statute because their contacts with the State of Connecticut are solely conducted in their capacity as corporate officers of Hylete. *See* Indiv. Defs.' Mem. at 7 ("Connecticut courts regularly apply a 'fiduciary shield' theory, which prevents this Court from asserting personal jurisdiction over non-resident individual defendants

who transact business solely as an officer of a corporation. Here, this Court lacks personal jurisdiction over Mr. Wilson and Mr. Paulson individual because Plaintiff has failed to allege any facts to establish that either has engaged in any independent, individual conduct within the state or otherwise.") (citations omitted).

The Court disagrees.

As multiple Connecticut courts have recognized, the fiduciary shield rule was a judge-made doctrine that has no basis in the text of the state's long-arm statute. *See, e.g.*, *Under Par Assocs., L.L.C. v. Wash Depot A, Inc.*, 47 Conn. Supp. 319, 326 (Conn. Super. Ct. 2001). As one court recently noted, the fiduciary shield doctrine "remains unsettled law in Connecticut." *Thomas v. Lavallee*, No. HHDCV186101163S, 2019 WL 2005749, at *3 (Conn. Super. Ct. Apr. 5, 2019). "The appellate courts in Connecticut have not yet ruled on the viability of [the fiduciary shield] doctrine, and there is a split of authority in the Superior Court." *Dime Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. X05CV094017091S, 2010 WL 760441, at *6 (Conn. Super Ct. Jan. 15, 2010). "The trend, however, is to the contrary . . . [as the] more recent cases question whether there is a sensible rationale for the doctrine." *Id.* (citation and internal quotation marks omitted).

Because the Individual Defendants' original memorandum in support of their motion makes no other specific arguments as to why this Court lacks personal jurisdiction over them, the Court deems any such arguments waived and therefore need not engage in the exhaustive minimum contacts analysis cursorily suggested by Defendants in their reply.[2] *See* Defs.' Reply at

---

[2] While the Court could consider arguments raised for the first time in a reply brief, it is not required to do so—particularly here, where the fiduciary shield doctrine is not settled law in Connecticut. *See* D. Conn. L. Civ. R. 7(d) ("A reply memorandum must be strictly confined to a discussion of matters raised by, and must contain references to the pages of, the memorandum to which it replies."); *Playboy Enters. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.") (collecting cases); *cf. Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) ("[W]e doubt that district courts lack all discretion to consider arguments raised for the first time in reply briefs—especially when, as here, they order

9–10 ("Even if this Court elects not to . . . apply[ ] the fiduciary shield doctrine, and ultimately determines that such doctrine lacks sufficient authority under established Connecticut law, this Court must examine whether the individual defendant has sufficient minimum contacts with the forum state such that personal jurisdiction complies with federal due process standards. And in so doing, the contacts of the corporate defendant and individual defendants 'must be assessed individually. HA has not plead any facts that allow this court to individually assess Defendants' contacts with the State of Connecticut.") (citations and internal quotation marks omitted).

### B.  Statute of Limitations and Laches

 "A statute of limitations defense is most often pleaded as an affirmative defense and requires a factual inquiry beyond the face of the complaint." *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007).

But "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."); *see, e.g.*, *Velez v. City of New London*, 903 F. Supp. 286, 289 (D. Conn. 1995) ("Defendants properly raise the statute of limitations in their motion to dismiss because the complaint alleges conduct ranging from 1985

---

additional briefing on the argument pressed in the reply brief."). But even if the Court were to consider this merely to be "an extension of the argument[ ] made in the initial papers," *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 338 n.4 (S.D.N.Y. 2008) (citation omitted), or if this argument were made in the Individual Defendants' original motion, the Court would reject it because it appears that Hybrid has, in fact, made the "prima facie showing" required to demonstrate personal jurisdiction. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) ("In order to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that jurisdiction exists. This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.") (alterations, citation, and internal quotation marks omitted).

to the present."); *Collin v. Securi Int'l*, 322 F. Supp. 2d 170, 173 (D. Conn. 2004) ("In this case, the face of the complaint indicates dates such that the court may decide whether the cause of action has been brought within the statute of limitations. This defense is therefore properly raised by defendant's motion to dismiss.").

Here, Mr. Wilson and Mr. Paulson argue that all of the counts as to them must be dismissed because they are time-barred under the relevant statutes of limitations, and because they are barred by the doctrine of laches.

The Court disagrees.

The face of the Amended Complaint does not clearly indicate that the Complaints are time-barred—or that the equitable relief sought is subject to the doctrine of laches.[3] Accordingly, as the Court explained when rejecting Defendants' arguments that the Amended Complaint was futile, "[t]hese arguments over the statute of limitations, especially as they involve the defense of laches or equitable tolling, are better addressed at a later stage of this case," i.e., once discovery has been completed and the issue can be fully taken up at summary judgment, with the benefit of a fully-developed record. *See Hybrid Athletics*, 2018 WL 4323816, at *4.

### C. Transfer to Southern District of California

As noted above, district courts possess broad discretion under 28 U.S.C. § 1404(a). They may, but are not required, to consider factors including "'(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of

---

[3] Laches is an equitable defense to claims seeking equitable relief. *See Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 190 (2d Cir. 2019) ("Laches is an equitable defense available to a defendant who can show 'that the plaintiff has inexcusably slept on [its] rights so as to make a decree against the defendant unfair,' and that the defendant 'has been prejudiced by the plaintiff's unreasonable delay in bringing the action.'") (quoting *Merrill Lynch Inv. Managers v. Optibase Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003); *Ikelionwu v. United States*, 150 F.3d 233, (2d Cir. 1998) ("[Laches] is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'") (quoting *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997)).

access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.'" *D.H. Blair*, 462 F.3d at 105–06.

Mr. Wilson and Mr. Paulson argue that the Court should, as an alternative to dismissing the claims against them, transfer this action to the Southern District of California for all further proceedings, under 28 U.S.C. § 1404(a). Indiv. Defs.' Mem. at 22–28.

The Court disagrees.

Having weighed all the relevant factors, the Court is concerned that the expeditious resolution of this litigation has been complicated by the many discovery disputes here. Transfer to another district therefore will serve only to delay the resolution of this case.

Accordingly, the Court declines to transfer this action to the Southern District of California.

### D.  Motion to Strike

As the Second Circuit has repeatedly affirmed, "motions to strike material *solely* 'on the ground that the matter is impertinent and immaterial' are disfavored" and will generally be denied unless the material in question is also "scandalous." *Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992); *Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 617–18 (1st Cir. 1988)).

Thus, the party moving to strike allegations as immaterial "bears a heavy burden to establish the basis for the motion—*i.e.*, that no evidence in support of the allegation would be admissible." *Tucker*, 936 F. Supp. 2d at 16 (internal quotation marks omitted) (quoting *Impulsive*

*Music*, 2008 WL 4998474, at *2; *Lipsky*, 551 F.2d at 893). "Thus, '[t]o prevail in such a motion, defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" *Id.* (quoting *Impulsive Music*, 2008 WL 4998474, at *2).

Courts generally apply this same standard to motions to strike allegations on the basis that they are redundant. *See, e.g.*, *Laverpool v. N.Y.C. Transit Auth.*, 960 F. Supp. 1046, 1061 (E.D.N.Y. 1991) ("While the defendants are correct insofar as the Amended Complaint repeats and realleges the same things over and over, they have not demonstrated that the allegations sought to be stricken have no relation to the controversy or that prejudice would result to them if the allegations remain in the pleading. Accordingly, the motion of the defendants to strike matter from the pleading is denied.") (citation and internal quotation marks omitted); *In re Edgewell Pers. Care Co. Litig.*, No. 16-cv-3371 (KAM)(RLM), 2018 WL 7858623, at *17 (E.D.N.Y. Sept. 4, 2018) ("Defendants are correct, and plaintiffs do not deny, that plaintiffs' request for declaratory relief is, in part, duplicative of the allegations that serve as the basis for some of plaintiffs' claims. Nonetheless, defendants fail to demonstrate that the request for declaratory judgment has no relation to this action or would prejudice the defendants if it remains in the SACC. Accordingly, the court denies defendants' motion to strike plaintiffs' request for declaratory relief.") (citations omitted).

The Individual Defendants move to strike paragraphs 150–158 of the Amended Complaint as immaterial, Indiv. Defs.' Mem. at 29–31, and paragraphs 66–70, 72–78, and 80–81 as redundant, *id.* at 31–33.

Hybrid argues that the allegations of paragraphs 150–158 are relevant because "[a] prevailing plaintiff in a trademark infring[ement] action is entitled to a defendant's profits including triple, punitive, and/or enhanced damages for willful infringement," and that paragraphs 66–70, 72–78, and 80–81 are relevant because the "sales, assets, and personal gain" of the Individual Defendants are "relevant to Hybrid's damages." Hybrid Opp. to Indiv. Defs.' Mot. at 40.

The Court agrees.

Accordingly, the Court will not strike these allegations from the Amended Complaint.

## E.  Leave to Amend

Even after the deadline to amend pleadings has passed, a court has discretion to grant leave to amend under Federal Rules of Civil Procedure 15 and 16, as this Court recognized when Hybrid sought leave to amend its complaint seven months after the deadline to do so. *Hybrid Athletics*, 2018 WL 4323816, at *2. But a court may deny leave to amend where the moving party has failed to establish good cause, which "depends on the diligence of the moving party." *Parker*, 204 F.3d at 340; *Kassner*, 496 F.3d at 243.

Hylete's proposed amendments appear to fall into several categories: (1) the addition of two affirmative defenses; (2) clarification, deletion, and addition of allegations in the Sixteenth and Seventeenth affirmative defenses in Counterclaims 2, 3, 4, and 7 (proposed Counterclaim 8); (3) significant deletion and addition of allegations in Counterclaim 5; (4) the addition of a new counterclaim seeking cancellation of Trademark Reg. No. 4,609,469 (hereafter, the "#469 Mark") on the basis of fraud, as proposed Counterclaim 6; (6) the addition of a new counterclaim seeking a declaratory judgment of non-infringement concerning Trademark Reg. Nos. 4,480,850 (the "#850 Mark") and 4,722,185 (the "#185 Mark") due to the alleged misidentification of the

actual owner of the marks applied for, as proposed Counterclaim 9; (7) the addition of new counterclaims against both Hybrid and a new counterclaim defendant, Robert Orlando, as proposed Counterclaims 10, 11, 12, and 13.

The Court first will address Hylete's proposed amendment of its affirmative defenses, before examining the proposed amendments to its counterclaims and attempt to bring a new counterclaim defendant into this action.[4]

### 1. Affirmative Defenses

Hybrid has not specifically objected to Hylete's proposed amendment of its sixteenth and seventeenth affirmative defenses. As these changes are primarily stylistic, the Court grants Hylete's motion with respect to the amendment of these affirmative defenses. *See* Redlined Am. Ans. at 20.

Hylete also seeks leave to plead the following new affirmative defenses:

> EIGHTEENTH AFFIRMATIVE DEFENSE
> (Good Faith)
> Plaintiff's claims for intentional infringement are barred because at all relevant times, Hylete acted in good faith in its selection, development, and use of the Hylete marks, and in its efforts to apply for registration of the Hylete marks and reasonably acted in avoiding harm to Hybrid Athletics.
>
> NINETEENTH AFFIRMATIVE DEFENSE
> (Fair Use)
> Plaintiff's claims are barred under the fair use doctrine to the extent Plaintiff's claims are based on allegations that Hylete's use of the mark HYLETE is a contraction or combination of parts of the words "Hybrid Athlete" because at all relevant times, the term "Hybrid

---

[4] Hybrid has organized the basis for its opposition to each type of amendment by (1) objecting to the proposed affirmative defenses and proposed counterclaims 4, 5, 6, 8, and 9, arguing that Hylete failed to exercise diligence or show good cause with respect to these amendments; (2) objecting to proposed counterclaims 10–13, arguing that they are impermissible claims of vexatious litigation; and (3) objecting to new allegations in proposed counterclaims 4 and 8 and to proposed counterclaims 9, 5, 6, 10, 11, 12, and 13 as futile. *See* Hybrid Opp. to Hylete Mot. Because the addition of affirmative defenses appears to involve different considerations than the addition of counterclaims, the Court exercises its discretion to address the arguments with respect to each separately. *See generally GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95–102 (2d Cir. 2019) (discussing pleading standards and different factors courts should consider in assessing sufficiency of affirmative defenses and counterclaims).

Athlete" was a term used to describe certain athletes who participated in both strength and endurance fitness activities.

Proposed Am. Ans. at 20–21; Redlined Am. Ans. at 20–21.

Hybrid argues the Court should not permit Hylete to plead these new affirmative defenses because they are based on "on Hybrid's trademark registrations, their prosecution histories, and/or Hylete's own actions," Hybrid Opp. to Hylete Mot. at 22; as such, "the alleged bases for these . . . defenses were known by Hylete long before it filed its initial answer *and* before the parties' stipulated December 1 deadline to amend pleadings." *Id.*

The Court disagrees.

Hylete argues that it has "good cause" for the amendment at this time because "registrations and prosecution histories reveal nothing about the facts underlying the claims asserted," and that it was diligent because it "moved quickly to amend shortly after the depositions in March 2019 where it acquired information relevant to its amendments" and after investigating the issues raised therein. Hylete Reply at 3. But any proposed good faith and fair use defenses would, as a matter of law, be based entirely on Hylete's own conduct. The Court therefore fails to see how any knowledge of that conduct could plausibly have been gleaned from deposing Hybrid's owner.

While Hybrid argues that it "will be prejudiced by Defendants' late addition of these claims as they require discovery on new factual issues," it is not clear that any new discovery beyond the scope of that already underway would be required. *See* Hylete Reply at 8–9. Hylete contends, moreover, that any "additional" discovery would be "limited" in scope. *See id.* at 9.

Although Hylete may not have good cause to add these affirmative defenses so long after the deadline to amend pleadings passed, Hybrid has not demonstrated undue prejudice from the addition of these new affirmative defenses.

Hylete's motion therefore is granted with respect to its new affirmative defenses. Should Hylete insist that significant new discovery on the affirmative defenses is required, however, Hybrid may move for a discovery conference to ensure that such discovery is, as Hylete has suggested, "limited," and proportional to the role of these affirmative defenses in the litigation. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); *Metcalf v. Yale Univ.*, No. 3:15-cv-1696 (VAB), 2017 WL 6614255, at *2 (D. Conn. Dec. 27, 2017) ("Under this standard, this Court must determine whether the discovery sought is proportional to the needs of the case. Even if relevant to this case, the discovery of medical records concerning Yale employee's treatment for emotional distress is not 'proportional to the needs of the case.'") (citing *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 40 (2d Cir. 2017), and quoting FED. R. CIV. P. 26(b)(1)).

### 2. Changes to Counterclaims 2, 3, 4, and 7

Hybrid has not specifically objected to Hylete's proposed amendment of Counterclaims 2 and 3. As these changes are primarily stylistic or clarifying, the Court grants Hylete's motion with respect to the amendment of these counterclaims. *See* Redlined Am. Ans. at 41–44.

Hylete also seeks leave to amend Counterclaims 4 and 7—the latter of which would be restyled as Counterclaim 8 if the Court permits proposed Counterclaim 6 to proceed. Other than stylistic or clarifying changes, Hylete wishes to amend its counterclaims for cancellation of the #185 Mark and the #850 Mark on grounds of non-use by adding a clause alleging that their

trademark registrations were void *ab initio* "because the application was filed identifying an applicant who was not the proper owner of the mark." Redlined Am. Ans. at 44–45, ¶ 115; 50–51, ¶ 144.

Hybrid argues that Hylete lacks good cause for not diligently amending this allegation sooner as it is based on Hybrid's "trademark registrations" and thus on facts "known by Hylete long before it filed its initial answer."[5] Hybrid Opp. to Hylete Mot. at 22.

The Court agrees.

These two counterclaims are primarily addressed to allegations that the #185 and #850 trademarks should be cancelled because Hybrid made no "bona fide commercial use" of them "on or in connection with Conducting fitness classes; Health club services, namely, providing instruction and equipment in the field of physical exercise; Personal fitness training services and consultancy; [or] Physical fitness instruction." In this context, the proposed amendment appears to be irrelevant, in that it adds no relevant factual support to the counterclaim's allegations of non-use.

To the extent that the allegation that the applicant of the marks was not their proper owner is relevant, it is its own independent, affirmative ground for a declaratory judgment of non-infringement: Proposed Counterclaim 9. The Court's decision to permit that new counterclaim to proceed is discussed below. *See infra* § III.E.5.

Accordingly, permitting leave to amend these counterclaims to add "factual content" that is irrelevant, and which simply repeats a fact that forms the basis for another counterclaim, would be futile. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff

_____

[5] Hybrid also argues that amending these allegations is futile under Rule 15. *Id.* at 24–25. Because proposed Counterclaim 9 more fully fleshes out the allegation regarding whether the applicant of the marks was their proper owner, the Court will address futility in the context of that amendment.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Twombly*, 550 U.S. at 556).

### 3. Counterclaim 5

Hylete seeks leave to amend Counterclaim 5, which alleges that the #185 Mark should be cancelled due to fraud, by deleting several allegations made on information and belief in paragraph 121 with the following more specific allegations:

> In his July 2, 2013 application, Orlando declared that "no other person, firm, corporation, or association has the right to use the [HYBRID ATHLETICS] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive . . . ." In his November 10, 2014 declaration, Orlando declared that HYBRID ATHLETICS "is recognized in the trade and by consumers as [Assignee HA's] trademark, and as exclusively indicating [Assignee HA's] products and services." These were each false representations of fact and Orlando knew that the representations were false at least because Orlando has admitted that he copied the "Hybrid" mark from another entity and Orlando was aware of other entities using the identical or similar marks, at least based on the prior filed applications the USPTO notified him of (including HYBRID KICKBOXING, now Reg. No. 4442736, with a first use date in commerce of January 1, 2000). Moreover, Orlando believes that HYLETE is confusingly similar to HYBRID ATHLETICS, and Orlando was aware of Hylete's substantial use of the HYLETE mark since 2012. Orlando's misrepresentations were not an error or inadvertence; rather, they were a deliberate attempt to mislead the USPTO. The misrepresentations were also material at least because the USPTO would not have allowed the application if the applicant could not prove acquired distinctiveness through substantially exclusive use.

Redlined Am. Ans. at 45–47.

Hybrid argues that Hylete lacks good cause for not diligently amending this allegation sooner as it is based on Hybrid's "trademark registrations" and thus on facts "known by Hylete long before it filed its initial answer." Hybrid Opp. to Hylete Mot. at 22. Hybrid also argues that

this proposed amendment is futile because "Hylete has not shown that Mr. Orlando made any material false statement by clear and convincing evidence." *Id.* at 26. Accordingly, Hybrid argues the Court "should not allow Hylete to make its supplemental allegations in Counterclaim 5." *Id.*

The Court disagrees.

Hybrid effectively asks the Court to make a finding on the merits—based on the sufficiency of evidence—that the counterclaim should not be amended.

The standard for demonstrating that an amendment to an answer is futile, however, is whether it can survive a motion to dismiss. On the whole, the amendment's primary function is to enhance the factual content of its allegations. *See* Hylete Reply to Hybrid Opp. at 9 ("Counterclaim 5 merely clarifies and narrows the grounds asserted before."). In so doing, the amendment appears to strengthen the counterclaim's ability to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Twombly*, 550 U.S. at 556); *GEOMC*, 918 F.3d at *9 ("As to content, a new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*.") (citations omitted).

This amendment, though untimely, ultimately sharpens the parties' and the Court's focus on the basic facts and issues relevant to adjudicating this existing counterclaim—which Hybrid had not previously moved to dismiss.

Accordingly, the Court will grant Hylete leave to amend this counterclaim.

### 4. Proposed Counterclaim 6

Hylete seeks to add a new counterclaim seeking cancellation of the #469 Mark, under 15 U.S.C. § 1119, on the basis of fraud, as proposed Counterclaim 6. *See* Redlined Am. Ans. at 47–49.

Hybrid argues that Hylete lacks good cause for not diligently seeking leave to amend to add this new counterclaim sooner as it is based on Hybrid's "trademark registrations" and thus on facts "known by Hylete long before it filed its initial answer." Hybrid Opp. to Hylete Mot. at 22. Hybrid also argues that the new counterclaim would be futile. *Id.* at 26.

The Court agrees that Hylete has not demonstrated good cause for this amendment, and that this is fatal to this amendment.

While Hylete insists the facts underlying this new counterclaim were not known to it before its deposition of Mr. Orlando, it has not identified what specific facts those were. This "explanation for the delay is unpersuasive and unavailing." *Evans v. Syracuse Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.") (quoting *Evans*, 704 F.2d at 47).

In any event, Hylete had already asserted a separate counterclaim seeking cancellation of the #469 Mark for failure to use as a trademark (current Counterclaim 6; proposed Counterclaim 7). Adding an additional counterclaim seeking cancellation of this mark would therefore appear to require significant new discovery concerning the actions and subjective beliefs of Hybrid and its attorneys in connection with that application—discovery that is altogether different from that which was already required with respect to the current counterclaim as to the #469 Mark. Requiring the parties to undertake such discovery at this late stage in the discovery period would

appear to be unduly prejudicial to Hybrid. *GEOMC*, 918 F.3d at 102 ("The District Court rejected the four counterclaims concerning Radiant on the ground of prejudice, stating that these counterclaims would 'greatly expand the relatively narrow scope of this case' and 'substantially increas[e] the cost and time required to litigate this matter' . . . . Rejecting the counterclaims concerning Radiant was within the District Court's discretion because, at a late stage of the case, their presentation would have prejudicially expanded the litigation . . . .") (quoting and citing *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, No. 3:14-cv-1222 (VAB), 2016 WL 6122930, at *6 (D. Conn. Oct. 19, 2016)).

Accordingly, the Court will not grant Hylete leave to add this new counterclaim into the case at this advanced stage of the litigation, as it would prejudice Hybrid by substantially increasing the cost and time required to litigate this matter. *See GEOMC*, 918 F.3d at 102; *see also Dietz*, 136 S. Ct. at 1892 (2016) (recognizing a district court's inherent authority to manage its docket "with a view toward the efficient and expedient resolution of cases.") (citations omitted).

### 5. Proposed Counterclaim 9

In addition to the amendments to Counterclaims 4 and 7 discussed (and rejected) above, *see supra* § III.D.2, Hylete seeks leave to add a new counterclaim seeking a declaratory judgment of non-infringement concerning the #850 Mark and the #185 Mark, due to the alleged misidentification of the actual owner of the marks applied for, as proposed Counterclaim 9.

As noted above, Hybrid argues that Hylete lacks good cause for not diligently amending this allegation sooner as it is based on Hybrid's "trademark registrations" and thus on facts "known by Hylete long before it filed its initial answer." Hybrid Opp. to Hylete Mot. at 22. Hybrid also argues the amendment is futile because (1) when Mr. Orlando filed the applications

for these Marks, he stated in his accompanying declarations that "he or his 'related company' is using the relevant marks, *id.* at 24; (2) a related company is "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used," *id.* at 25 (quoting 15 U.S.C. § 1127); (3) that he was the sole owner of Hybrid; (4) that he was permitted to register the marks for his related company, *id.*; and (5) that these facts "cannot invalidate Hybrid's registration or form the basis of a declaratory judgment action," *id.*

The Court disagrees.

The addition of this new counterclaim appears to largely pose a question of law: whether Mr. Orlando, as Hybrid's sole owner, was permitted to register these marks in his name, or whether Hybrid was required to register them directly. The few paragraphs on this issue in the parties' briefing does not provide the Court sufficient context to assess the legal merits of the counterclaim. *See* Hybrid Opp. to Hylete Mot. at 24–25; Hylete Reply at 5.

Because a finding that the #850 and #185 Marks are invalid as a matter of law would significantly affect the merits of Hybrid's claims in this litigation, the Court declines to determine whether the counterclaim would be futile—i.e., whether it could survive a motion to dismiss—on this limited record.

The Second Circuit has recognized that "[a]t a late stage of the litigation . . . a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint should normally not be permitted if it exceeds the scope of the plaintiff's new claims." *GEOMC*, 918 F.3d at 100. This new counterclaim does appear to raise issues beyond the scope of Hybrid's most recent amendment.

Nevertheless, the Court finds that the risk of undue prejudice to Hybrid from this amendment is minimal, as it does not appear resolution of this counterclaim would require any additional discovery, or turn on any genuine dispute of material fact. *See, e.g.*, *Provepharm, Inc. v. Akorn, Inc.*, No. 17-CV-7087 (SJF)(AKT), 2019 WL 2443185, at *15 (E.D.N.Y. Jun. 11, 2019) (permitting late-filed amendment of counterclaims based on lack of undue prejudice to plaintiff, as amendments "do not require additional fact discovery; and will not significantly delay the resolution" of the action); *see also Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014) ("[I]n appropriate circumstances, a district court has discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order."); *Coale v. Metro-N. R.R. Co.*, No. 3:08-cv-1307 (CSH), 2009 WL 4881077, at *3 (D. Conn. Dec. 11, 2009) ("apart from the counterclaim's untimeliness, Metro–North has raised no other reason in law or equity to deny leave to amend. In particular, it has identified no prejudice that it will suffer by permitting the amendment. Discovery will not be complete until the end of March, and the proposed counterclaim does not appear to expand the scope of that discovery, because the factual predicate of the alleged breach was already incorporated into NHPA's affirmative defense. Scheduling orders are not the Code of Hammurabi. Refusing to consider NHPA's counterclaim, at what still amounts to an early stage in this litigation, would be out of proportion to NHPA's misdemeanor.").

Accordingly, the Court will grant Hylete leave to add this new counterclaim.

### 6. Proposed Counterclaims 10–13

Hylete seeks leave to add four new counterclaims to its Amended Answer, against both Hybrid and Mr. Orlando. *See* Proposed Am. Ans. at 50–55. Specifically, Hylete alleges (1) that

Hybrid and Mr. Orlando have made false and misleading advertising statements and omissions, regarding Hylete and Hylete's products, that have damaged Hylete's reputation with customers and commercial interests in sales, in violation of 15 U.S.C. § 1125(a), *id.* at 50–51; (2) that Hybrid and Mr. Orlando have made and published "slanderous, libelous, defamatory and disparaging statements about Hylete and Hylete's products," commercially disparaging and defaming them, *id.* at 51–52; (3) that those same statements constitute an unfair and deceptive trade practice under the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. §§ 42-110a *et seq.*, *id.* at 52–54; and (4) that those same statements have tortiously interfered with Hylete's business expectancies, in violation of Connecticut law, *id.* at 54–55. These counterclaims all rely on additional factual allegations that Hylete also seeks leave to include with its Amended Answer. *See* Redlined Am. Ans. at 23–29.

Hylete therefore also seeks leave to add Mr. Orlando as a counterclaim defendant, under Rules 13(h) and 20(a) of the Federal Rules of Civil Procedure, arguing that he should be joined in this action because Hylete "seeks relief jointly and severally from [Hybrid] and [Mr.] Orlando because of [Mr.] Orlando's central role in personally directing and even personally performing the alleged unlawful conduct," and because "questions of law or fact common to all [counterclaim] defendants will arise in the action." Hylete Mem. at 9.

Hylete argues that it has good cause for adding these new counterclaims now, and that it acted with due diligence, because the new counterclaims flow directly from revelations allegedly made by Hybrid owner Robert Orlando during his March and April 2019 depositions, and because Hylete "moved swiftly to file this motion for leave once the facts were known." Hylete Mem. at 6.

Specifically, Hylete alleges that it learned that: (1) Hybrid and Mr. Orlando "interfered with Hylete's business by making false and misleading statements about Hylete, Hylete's trademarks and Hylete's products, interfered with Hylete's business relationships and Hylete's fundraising efforts, and committed further acts of fraud in obtaining HA's trademark registrations," *id.* at 3; and (2) Mr. Orlando "admitted that he personally directed and even personally performed the alleged unlawful conduct, which includes making false statements about the ownership of Hylete's marks, improper statements urging consumers not to buy Hylete's products, statements urging or supporting others who sought to interfere in Hylete's efforts to fundraise and grow its business, and other the conduct and practices that support proposed Counterclaim counts 10 through 13, which are specifically asserted against Orlando." *Id.* at 5.

Hybrid does not assert that these amendments should be denied for lack of good cause. Instead, Hybrid argues that leave to amend should be denied with respect to these claims because (1) these are claims challenging Hybrid's litigation conduct that are merely state law tort "claims of vexatious litigation" that have been brought "under the guise of other names," and which therefore, under Connecticut law, cannot be brought in this action until this action has terminated; and (2) leave to amend would be futile. Hybrid Opp. to Hylete Mot. at 20–21, 27–31.

The Court agrees that leave to amend should be denied, but for a different reason.

First, even if Hylete's claims as to Hybrid's litigation were properly construed as mere "claims of vexatious litigation," that Connecticut state law doctrine would only apply to counterclaims in actions brought under the Court's diversity jurisdiction. As Hybrid has brought two claims under the Court's federal question jurisdiction (Counts 1 and 2) and three state law claims under the Court's supplemental jurisdiction (Counts 3, 4, and 5), this doctrine does not

appear to justify denial of leave to amend, under Federal Rule of Civil Procedure 15(a), to bring additional counterclaims under Federal Rule of Civil Procedure 13, insofar as these are counterclaims to the federal claims. *See Simms v. Seaman*, 308 Conn. 523, 542 (2013) (describing the "stringent requirements of the tort of vexatious litigation, including that the prior proceeding had terminated in the plaintiff's favor . . . ."); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 409–10 (2010) ("A Federal Rule of Procedure is not valid in some jurisdictions and invalid in others—or valid in some cases and invalid in others— depending upon whether its effect is to frustrate a state substantive law (or a state procedural law enacted for substantive purposes) . . . . [I]t is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule. We have held . . . and reaffirmed repeatedly, that the validity of a Federal Rule depends entirely upon whether it regulates procedure. If it does, it is authorized by [28 U.S.C.] § 2072 and is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-created rights.").

Second, the Court is not certain that all of these claims are futile. The parties' briefing does not provide the Court sufficient context to assess the legal merits of these counterclaim. *See* Hybrid Opp. to Hylete Mot. at 24–25; Hylete Reply at 5.

But the Court need not determine whether the counterclaims are futile. Instead, the Court finds that these new counterclaims are not responsive to the new allegations in the Amended Complaint, would expand dramatically the scope of this litigation, and are likely to require a new period of discovery concerning the alleged statements of Hybrid and Mr. Orlando. *See GEOMC*, 918 F.3d at 100; *see also id.* at 102 ("Rejecting the counterclaims concerning Radiant was within the District Court's discretion because, at a late stage of the case, their presentation would have

prejudicially expanded the litigation . . . ."). Mr. Orlando, as a new party in the case, would also be entitled to additional time for pleadings, discovery, and more.

The Court also notes that these four proposed counterclaims would, if granted, be permissive counterclaims. Thus, denying leave to amend does not prejudice Hylete, which will be free to pursue these claims in another proceeding.

In sum, granting the motion with respect to these four counterclaims would result in undue prejudice to Hybrid, *see GEOMC*, 918 F.3d at 100, undermine the Court's ability to efficiently and expeditiously manage its docket, *see Dietz*, 136 S. Ct. at 1892, and undercut both the parties' and the Court's obligations under Rule 1 of the Federal Rules of Civil Procedure, *see* FED. R. CIV. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

## IV.    CONCLUSION

For the reasons explained below, the Individual Defendants' motion to dismiss is **DENIED**, and Hylete's motion to amend is **GRANTED IN PART AND DENIED IN PART**.

Hylete's motion to amend is granted with respect to its affirmative defenses, existing Counterclaims 2, 3, and 5, and Proposed Counterclaim 9. Hylete's motion is denied with respect to existing Counterclaims 4 and 7, Proposed Counterclaim 6, and Proposed Counterclaims 10, 11, 12, and 13.

The Individual Defendants shall answer the Amended Complaint by **September 20, 2019**.

Hylete shall file an Amended Answer, consistent with this Ruling and Order, by **September 20, 2019**.

If Hybrid believes any material in Hylete's Amended Answer exceeds the scope of what the Court has permitted in this decision, it must move to strike such allegations by **October 18, 2019**. This deadline will not be extended, absent extraordinary circumstances.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of August, 2019.

　　　　　　　　　　　　　　　/s/ Victor A. Bolden　　　　　　　
　　　　　　　　　　　　　　Victor A. Bolden
　　　　　　　　　　　　　　United States District Judge