# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

HYBRID ATHLETICS, LLC,
    *Plaintiff*,

    v.

HYLETE, LLC, HYLETE, INC.,
RONALD L. WILSON, II, and
MATTHEW PAULSON,
    *Defendants*.

No. 3:17-cv-1767 (VAB)
*consolidated with*
No. 3:19-cv-595 (VAB)
No. 3:19-cv-596 (VAB)

## RULING AND ORDER ON MOTIONS TO QUASH

Hybrid Athletics, LLC ("Plaintiff" or "Hybrid") and non-party CrossFit, Inc. ("CrossFit") have moved to quash the third-party subpoena served in August 2018 by Defendant Hylete, LLC ("Hylete") on CrossFit. Hybrid Athletics, LLC's Notice of Motion to Quash Subpoena to Non-Party CrossFit, Inc. to Testify at a Deposition and Produce Documents in a Civil Action; Memorandum of Points and Authorities in Support Thereof, dated Sept. 19, 2018 ("Hybrid Mot."), ECF No. 163; Non-Party CrossFit, Inc.'s Notice of Motion to Quash Subpoena to Testify at a Deposition and Produce Documents in a Civil Action; Memorandum of Points and Authorities in Support Thereof, dated Sept. 19, 2018 ("CrossFit Mot."), ECF No. 165; *see also* Hylete LLC's Amended Notice of Third-Party Subpoena to CrossFit, Inc. ("Hylete Subpoena"), annexed as Ex. A to Declaration of Michael J. Kosma in Support of Hybrid Athletics, LLC's Motion to Quash, dated Sept. 19, 2018 ("Kosma Hybrid Decl."), ECF No. 164-1, and as Ex. A to Declaration of Michael J. Kosma in Support of CrossFit, Inc.'s Motion to Quash, dated Sept. 19, 2018 ("Kosma CrossFit Decl."), ECF No. 166-1.

That subpoena seeks both testimony and documents that Hylete argues are relevant to its defenses in this trademark infringement action, but which both Hybrid and CrossFit contend are

protected from disclosure by either the attorney-client privilege, the common interest rule, or the work product doctrine. In the alternative, Hybrid argues that the discovery sought is irrelevant or disproportionate.

For the reasons explained below, the motions to quash are **GRANTED IN PART AND DENIED IN PART**.

The motions are granted in part on relevance grounds, but only to the extent consistent with the rulings below, and with respect to the four documents specifically identified as containing attorney work product. The motions are otherwise denied with respect to the claimed application of the attorney-client privilege, the common interest rule, and the work product doctrine. Because of the unique importance of the attorney-client privilege in our system of justice, the denial on privilege grounds is without prejudice to renewal by **September 20, 2019**, subject to an evidentiary showing of the existence of either an attorney-client relationship or a joint litigation strategy between Hybrid and Cross-Fit's in-house counsel, consistent with the cases cited in this ruling.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the factual allegations and procedural history of this trademark infringement action is assumed. *See Hybrid Athletics v. Hylete, LLC*, 2018 WL 4323816, at *1–2 (D. Conn. Sept. 10, 2018); Ruling and Order on Motion to Dismiss and Motion to Amend Answer, dated Aug. 30, 2019, ECF No. 209, at 2–5.

On July 27, 2018, the parties jointly moved for a discovery conference to address several pending issues, including, *inter alia*, discovery sought by Hylete from non-party CrossFit that Hybrid claimed would violate attorney-client privilege. Joint Motion for Discovery Conference, dated Jul. 27, 2018 ("Joint Mot."), ECF No. 75.

On either August 3, 2018 or August 6, 2018,[1] Hylete served a third-party subpoena on CrossFit, noticing a 30(b)(6) deposition for August 31, 2018. *See* Subpoena. The subpoena set a date of August 31, 2018 at 9:00 a.m. for a deposition, and commanded CrossFit to designate one or more officers, directors, managing agents, or other persons, under Federal Rule of Civil Procedure 30(b)(6), to appear on behalf of CrossFit to testify on eleven topics:

**TOPIC NO. 1**
Any assistance You have provided to Hybrid or Robert Orlando relating to the Trademark Opposition Proceeding including, but not limited to, any financial assistance or any other thing of value provided by You.

**TOPIC NO. 2**
Any assistance You have provided to Hybrid or Robe1i Orlando relating to This Lawsuit including, but not limited to, any financial assistance or any other thing of value provided by You.

**TOPIC NO. 3**
Your involvement in the Trademark Opposition Proceeding.

**TOPIC NO. 4**
Your involvement in This Lawsuit including, but not limited to, any financial or other assistance You have provided to Hybrid or Robert Orlando to partially or completely finance This Lawsuit.

**TOPIC NO. 5**
Your decision to ban HYLETE from YOUR events from 2013 to the present.

**TOPIC NO. 6**
Any contractual agreements between You and Robert Orlando.

**TOPIC NO.** 7
Any contractual agreements between You and Hybrid.

**TOPIC NO. 8**
Communications with Hybrid or Robert Orlando regarding Hylete, the Hylete Marks, the Trademark Opposition Proceeding, or This Lawsuit.

---

[1] The question of when the subpoena was served is relevant to the Court's determination of whether CrossFit's motion was timely, as will be discussed below.

**TOPIC NO. 9**
Any attorney-client relationship or any other relationship that may implicate any privilege between You and Robert Orlando.

**TOPIC NO. 10**
Any attorney-client relationship or any other relationship that may implicate any privilege between You and Hybrid.

**TOPIC NO. 11**
Viewership of the CrossFit competitions in 2010 and 2011.

Subpoena, Attachment A, at 3–4 ("Topics of Examination").

The subpoena further commanded CrossFit to produce documents on August 20, 2018, responsive to the following requests:

**REQUEST NO. 1**
Documents sufficient to show any assistance You have provided to Hybrid or Robert Orlando relating to the Trademark Opposition Proceeding including, but not limited to, documents relating to any financial assistance or any other thing of value provided by You.

**REQUEST NO. 2**
Documents sufficient to show any assistance You have provided to Hybrid or Robert Orlando relating to This Lawsuit including, but not limited to, documents relating to any financial assistance or any other thing of value provided by You.

**REQUEST NO. 3**
Documents sufficient to show the scope of Your involvement in the Trademark Opposition Proceeding.

**REQUEST NO. 4**
Documents sufficient to show Your involvement in This Lawsuit including, but not limited to, documents sufficient to show any financial or other assistance You have provided to Hybrid or Robert Orlando to partially or completely finance This Lawsuit.

**REQUEST NO. 5**
All Communications between You and Hybrid or Robert Orlando concerning the Trademark Opposition Proceeding including, but not limited to, Communications regarding any purported instances of actual confusion between the Hybrid Marks and Hylete Marks.

**REQUEST NO. 6**
All Communications between You and Hybrid or Robert Orlando concerning This Lawsuit.

**REQUEST NO. 7**
Documents sufficient to show whether there is any attorney-client relationship or any other relationship that may implicate any privilege between You and Robert Orlando.

**REQUEST NO. 8**
Documents sufficient to show whether there is any attorney-client relationship or any other relationship that may implicate any privilege between You and Hybrid.

**REQUEST NO. 9**
All Communications between You and Hybrid concerning the Hylete Marks.

**REQUEST NO. 10**
Documents sufficient to show any compensation that Robert Orlando or Hybrid has received from CrossFit for any training seminar Robert Orlando or Hybrid has conducted, participated in, or taught on behalf of CrossFit in the United States from 2008 to the present.

**REQUEST NO. 11**
All Communications regarding your decision to ban Hylete from Your events from 2013 to the present.

**REQUEST NO. 12**
All Communications between You and any CrossFit affiliate regarding HYLETE and/or the Hylete Marks.

**REQUEST NO. 13**
All contractual agreements between You and Robert Orlando.

**REQUEST NO. 14**
All contractual agreements between You and Hybrid.

Subpoena, Attachment B ("Requests").

On August 20, 2018, CrossFit objected to the subpoena under Federal Rule of Civil

Procedure 45(d)(2)(B) and requested to meet and confer with Hylete. CrossFit Mot. at 5.

On August 29, 2018, CrossFit and Hylete met and conferred regarding the scope of the subpoena. *Id.* CrossFit alleges that Hylete "would not agree to limit any Requests or Topics" as requested by CrossFit and Hybrid. *Id.* CrossFit therefore informed Hylete it would be moving to quash the subpoena and that the deposition would not be moving forward. *Id.*

On September 10, 2018, the Court granted the motion for a discovery conference, scheduling a discovery conference for September 24, 2018. Order, dated Sept. 10, 2018, ECF No. 90; Notice of E-Filed Calendar, dated Sept. 10, 2018, ECF No. 91.

On September 17, 2018, Hybrid and Hylete filed brief submissions ahead of the discovery conference, in accordance with this Court's Chambers practices. *See* Hybrid's Memorandum Regarding Discovery Conference, dated Sept. 18, 2018, ECF No. 97; Hylete's Brief Submission re Joint Mot., dated Sept. 17, 2018, ECF No. 96.

On September 19, 2018, Hybrid moved to quash the subpoena in the United States District Court for the Northern District of California, arguing that it is "affected by" the subpoena on non-party CrossFit, FED. R. CIV. P. 45(d)(3)(B), because it has a personal right or privilege with regard to the documents sought. *See* Hybrid Mot. at 5 (quoting 9A WRIGHT & MILLER, FED. PRAC. & PROC. § 2459 (3d ed.). Specifically, Hybrid asserted that CrossFit's compliance with the subpoena would result in disclosure of information protected by the attorney-client privilege and/or the work-product doctrine.

That same day, non-party CrossFit—also represented by Hybrid's counsel—moved to quash the subpoena in the United States District Court for the Northern District of California, arguing that it is: (1) unduly burdens CrossFit because it improperly seeks information available through party discovery; (2) seeks privileged information protected from disclosure; (3) demands

documents and testimony relating to events dating back to 2008; and (4) seeks irrelevant information regarding compensation or financial arrangements. CrossFit Mot. at 7–15.

Both Hybrid and CrossFit also moved to transfer adjudication of the subpoena to this District under Federal Rule of Civil Procedure 45(f). *See* Hybrid Mot. at 10; CrossFit Mot. at 15.

On September 24, 2018, the Court held the telephonic discovery conference with the parties requested in their Joint Motion. Minute Entry, dated Sept. 24, 2018, ECF No. 103; Transcript of Proceedings, filed Oct. 2, 2018 ("10/2/2018 Tr."), ECF No. 105. After the parties stated that motions to quash had been filed in the Northern District of California and that they were awaiting their transfer to this Court, *see* 10/2/2018 Tr. at 15:3–22, the Court explained that it would defer ruling on that issue until the motion was fully briefed, *id.* at 17:23–18:24.

In a separate ruling on the record, however, the Court permitted document discovery going back to 2012 with respect to the relationship between CrossFit and Hybrid, finding that while the Court was uncertain of the ultimate impact of Hylete's arguments concerning bias of witnesses claiming actual confusion it would nevertheless permit such discovery, subject to any limitations to be addressed in the context of the motion to quash. *See id.* 13:24–14:24, 19:1–20:9.

On October 2, 2018, the motions to quash were ordered related by United States Magistrate Judge Virginia K. DeMarchi. Order Relating Case, dated Oct. 2, 2018, No. 3:19-cv-595 (VAB), ECF No. 12.

On October 3, 2018, Hylete opposed both motions to quash. *See* Hylete's Opposition to CrossFit Mot., dated Oct. 3, 2018 ("Hylete Opp. to CrossFit Mot."), ECF No. 167; Hylete's Opposition to Hybrid Mot., dated Oct. 3, 2018 ("Hylete Opp. to Hybrid Mot."), ECF No. 168.

On October 4, 2018, Magistrate Judge DeMarchi ordered that the motions be transferred to the District of Connecticut. *See* Order Transferring Motions to Quash, dated Oct. 4, 2018, No.

3:19-cv-595 (VAB), ECF No. 18; Order Transferring Motions to Quash, dated Oct. 4, 2018, No. 3:19-cv-596 (VAB), ECF No. 7.

On October 9, 2018, the motions were docketed by the Clerk of the Court for this District as Case Nos. 3:18-mc-105 (for Hybrid's motion) and 3:18-mc-106 (for CrossFit's motion) and assigned to United States District Judges Vanessa L. Bryant and Janet C. Hall, respectively. *See* Notice to Counsel in Transferred Case, dated Oct. 9, 2018, No. 3:19-cv-595 (VAB), ECF No. 24; Electronic Filing Order for Counsel, dated Oct. 9, 2018, No. 3:19-cv-596 (VAB), ECF No. 9.

On October 10, 2018, Hybrid and CrossFit replied to Hylete's opposition. *See* Hybrid's Reply in Support of Hybrid Mot., dated Oct. 10, 2018 ("Hybrid Reply"), ECF No. 27; CrossFit's Reply in Support of CrossFit Mot., dated Oct. 10, 2018 ("CrossFit Reply").

On October 12, 2018, Hybrid moved to transfer the Hybrid motion to this Court. Plaintiff's Motion to Transfer and Notice of Filing, dated Oct. 12, 2018, No. 3:19-cv-595 (VAB), ECF No. 28.

On October 16, 2018, CrossFit and Hybrid moved to transfer the CrossFit motion to this Court. *See* Motion to Transfer and Notice of Related Cases, No. 3:19-cv-596 (VAB), dated Oct. 16, 2018, ECF No. 12.

On October 17, 2018, Judge Bryant transferred the Hybrid motion to this Court. Order of Transfer, dated Oct. 17, 2018, No. 3:19-cv-595 (VAB), ECF No. 30. That same day, Judge Hall transferred the CrossFit motion to this Court. Order of Transfer, dated Oct. 17, 2018, No. 3:19-cv-596 (VAB), ECF No. 13.

On April 17, 2019, the Court held a telephonic motion hearing on the motions to quash with Hybrid, Hylete, and non-party CrossFit. Minute Entry, filed Apr. 18, 2019, No. 3:19-cv-595 (VAB), ECF No. 39; Minute Entry, filed Apr. 18, 2019, No. 3:19-cv-596 (VAB), ECF No. 20.

The Court ordered Hybrid and CrossFit to file "comprehensive privilege logs in accordance with this Court's Local Rules and the Federal Rules of Civil Procedure" by May 3, 2019, and gave Hylete until May 17, 2019 to file any further reply in opposition to the motions. *Id.*; *see also* Transcript of Proceedings, filed Apr. 26, 2019 ("4/17/2019 Tr."), ECF No. 162.

After the hearing, the Clerk of the Court transferred the motions to civil dockets, Nos. 3:19-cv-595 (VAB) and 3:19-cv-596 (VAB), and closed the 3:18-mc-105 (VAB) and 3:18-mc-106 (VAB) dockets, consistent with this District's case management practices. *See* Docket Entry, dated Apr. 17, 2019, 3:18-mc-105 (VAB) ("Case transferred to 3:19cv595 (VAB). All future filings must be e-filed in case 3:19cv595(VAB)."); Docket Entry, dated Apr. 17, 2019, 3:18-mc-106 (VAB) ("Case transferred to 3:19cv596 (VAB). All future filings must be e-filed in case 3:19cv596 (VAB).").

On April 25, 2019, the Court ordered the consolidation of the civil dockets containing the filings for the motion to quash, Nos. 3:19-cv-595 (VAB) and 3:19-cv-596 (VAB), with the trademark infringement action, No. 3:17-cv-1767 (VAB), with all future filings relating to the motions to quash to be filed on the docket for the trademark infringement action. Order, dated Apr. 25, 2019, ECF No. 161.

On May 3, 2019, Hybrid and CrossFit filed a joint supplemental memorandum in support of their motions to quash, along with a joint privilege log. *See* Supplemental Brief in Support of Motions to Quash, dated May 3, 2019 ("Hybrid/CrossFit Supp."), ECF No. 176; Declaration of Michael J. Kosma in Support of Hybrid/CrossFit Supp., dated May 3, 2019 ("Supp. Kosma Decl."), ECF No. 176-1; Privileged Communications Between Hybrid Athletics, LLC and CrossFit, Inc., dated May 3, 2019 ("Privilege Log"), ECF No. 176-2. The privilege log lists a total of 61 documents, primarily email communications and attachments to those emails, dating

from May 2013 to April 2018. *See* Privilege Log. The basis of objection noted for each document is attorney-client privilege, common interest, and attorney work product. *See id.*

That same day, Hybrid moved for permission to file the privilege log and other exhibits accompanying the supplemental brief under seal. Motion to Seal, dated May 3, 2019, ECF No. 175. On May 4, 2019, the Court granted that motion. Order, dated May 4, 2019, ECF No. 178.

On May 17, 2019, Hylete filed a supplemental brief in opposition to the motions to quash. Hylete, Inc.'s Supplemental Brief on Motions to Quash, dated May 17, 2019 ("Hylete Supp."), ECF No. 185.

On August 9, 2019, Hybrid filed an additional supplemental submission, arguing that it provided the Court with new evidence and authority related to, *inter alia*, the pending motions to quash. Hybrid's Notice of Supplemental Authority and New Evidence, dated Aug. 9, 2019, ECF No. 207.

On August 12, 2019, Hylete objected to the supplement, arguing that it was a 207-page, unauthorized sur-reply that does not affect the motions pending before the Court and should not be considered, absent an opportunity for Hylete to respond. Defendants' Objection to Hybrid's Procedurally and Substantively Improper Notice of Supplemental Authority and New Evidence, dated Aug. 12, 2019, ECF No. 208.

## II.     STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." FED. R. CIV. P. 26, Advisory Committee Notes to 2015 Amdts. Even after the 2015 amendments, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear

on any party's claim or defense." *Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 12, 2015)).

Moreover, the district court has "wide latitude to determine the scope of discovery." *In Re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion."). "The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive." *Klein v. AIG Trading Grp.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal citations and quotation marks omitted).

Under Rule 45(d)(3)(A), the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A).

Motions to quash a subpoena are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

## III. DISCUSSION

Both Hybrid and CrossFit allege that communications between Hybrid's sole member Robert Orlando and CrossFit's in-house counsel[2] are privileged and protected from disclosure.

---

[2] These attorneys, based on Hybrid's privilege log, appear to include the following individuals: Steve Weiss, Dale Saran, Erica Rozetti, David P. Kelley, Marshall Brenner, and Sarah Munn. *See* Privilege Log. As noted below,

The Court disagrees.

## A. Threshold Issues

As an initial matter, the Court must address three threshold issues: (1) whether CrossFit's objections, and therefore its motion to quash, were timely filed; (2) whether CrossFit has otherwise complied with the requirements of a motion to quash based on privilege objections; (3) whether Hybrid's privilege log is sufficiently detailed to support its motion; and (4) what law should apply to Hybrid and CrossFit's claims of privilege.

### 1. Timeliness

Hylete argues that CrossFit's initial objections to the subpoena were filed after the fourteen day deadline for objections, and that CrossFit therefore waived the right to move to quash the subpoena. Hylete Opp. to CrossFit Mot. at 10–11.

The Court disagrees.

Hylete asserts that the subpoena was served on August 3, 2018 at 4:05 p.m., meaning that CrossFit's objections were due on August 17, 2018. *Id.* at 10.

CrossFit does not dispute that its objections were not served until August 20, 2018. CrossFit Reply at 10. Rather, it claims that Hylete's subpoena was not served until August 6, 2018. *Id.*; *see also* CrossFit Mot. at 1.

The Court finds that the evidence in the record—an affidavit from process server Hector Garcia—supports Hylete's claims as to when the subpoena was served. *See* Proof of Service, dated Aug. 5, 2018, annexed as Ex. A to Hylete Opp. to CrossFit Mot., ECF No. 16-1.

---

however, Hybrid's privilege log does not specifically identify who serves primarily as in-house counsel for CrossFit, as the log also includes several other attorneys who directly represent Hybrid in this case.

Nevertheless, while CrossFit's initial objections may have been untimely filed, this Court has the discretion to find that CrossFit did not waive its right to object to the subpoena based on attorney-client privilege, particularly given that the objections were filed a mere three days later.

Such discretion is especially warranted here because of the bedrock importance our legal system places on the attorney-client privilege. That privilege would be undermined were this Court to find that a three-day filing delay that caused no prejudice to Hylete was sufficient reason to deny a motion to quash.

### 2. CrossFit's Original Failure to File Privilege Log

Hylete also argues that CrossFit's right to move to quash was waived by its failure to file its own privilege log. Hylete Opp. to CrossFit Mot. at 11.

The Court disagrees.

Under this Court's Local Rules, "Unless excused by the Court or the party issuing the subpoena, a non-party responding to a subpoena and claiming privilege as to any document must prepare a privilege log in accordance with Local Rule 26(e) to satisfy the requirements of Fed. R. Civ. P. 45(e)(2)." D. Conn. L. Civ. R. 45.

While this rule technically requires that CrossFit file a privilege log, it also clearly recognizes the Court's ability to excuse this requirement. Accordingly, the Court will not deny CrossFit's right to quash the subpoena on this basis. Instead, the Court will evaluate the privilege log more recently submitted by Hybrid and CrossFit.

### 3. Hybrid's Privilege Log

Hylete separately argues that Hybrid's original privilege log is insufficient insofar as it only lists documents covering a one-month period. Hylete Opp. to Hybrid Mot. at 7. Hybrid

argues, however, that the log it produced was sufficient for the Court to evaluate the merits of its claims. Hybrid Reply at 3–4.

The Court agreed with Hylete; as a result, it ordered submission of a more fulsome privilege log in accordance with this District's Local Rules. *See* Minute Entry, filed Apr. 18, 2019, ECF No. 39. Because that privilege log is now properly before the Court, the Court will not deny Hybrid's the right to challenge the subpoena on this basis.

### 4. Choice of Law

Because this Court has federal question jurisdiction over the trademark infringement claims, and the evidence sought from CrossFit is relevant to both the federal and state law claims, the Court applies the federal common law of attorney-client privilege in deciding this motion. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) ("The complaint in the instant action alleges a federal claim based on RICO and state law claims based on pendent and diversity jurisdiction. The evidence sought from Reynolds is relevant to both the federal and state claims. In such situations courts consistently have held that the asserted privileges are governed by the principles of federal law.") (citations omitted).

### B. Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "The privilege's underlying purpose has long been 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

"[A]s a general matter the attorney-client privilege applies only to communications between lawyers and their clients . . . ." *Id.* The Second Circuit has, however, recognized certain limited exceptions to that rule. *See id.* (collecting cases); *see also United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (extending privilege to certain communications between a client and accountant); *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989) (discussing joint defense/common interest privilege).

Hylete argues that Hybrid has failed to demonstrate the existence of an attorney-client relationship between Hybrid and CrossFit's in-house counsel.

The Court agrees.

Hybrid argues that Robert Orlando and Hybrid "have had a privileged relationship with non-party CrossFit's in-house counsel for years," Hybrid Mot. at 6, that Mr. Orlando "has conversations of a legal nature with CrossFit's in-house counsel," *id.*, and that its "assertion of privilege covers only a narrow set of communications in which Hybrid sought and received legal advice from CrossFit's in-house counsel pursuant to a privileged relationship," Hybrid Reply at 4. In their more recent supplemental brief, Hybrid and CrossFit argue that their privilege log provides sufficient evidence of that relationship. Hybrid/CrossFit Supp. at 4 ("As evidenced in Hybrid and CrossFit's privilege log, Hybrid has an attorney-client relationship with CrossFit's in-house counsel, making Hybrid's communications with CrossFit's in-house counsel undiscoverable.") (citing *Cty. of Erie*, 473 F.3d at 419).

"The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." *United States v. Dennis*, 843 F.2d 652, 657 (1988) (citing *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958); WIGMORE, EVIDENCE § 2304 (McNaughton rev. 1961)); *see also In re Bonanno*, 344 F.2d

830, 833 (2d Cir. 1965) ("We recognize that an attorney-client relationship arises when legal advice of any kind is sought from a professional legal adviser in his capacity as such.") (citing WIGMORE, EVIDENCE § 2292 (McNaughton rev. 1961)).

"The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." *Schwimmer*, 892 F.2d at 244 (collecting cases); *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("It is well settled that "[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.") (quoting *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)). "The relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which the protection is claimed, all must be established in order for the privilege to attach." *Schwimmer*, 892 F.2d at 243.

But Hybrid and CrossFit's burden is not, as the Second Circuit has long recognized, "discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Bonanno*, 344 F.2d at 833; *accord von Bulow*, 811 F.2d at 146–47 ("We agree with the district court that her claim of an attorney-client privilege lacks the required factual support . . . . [I]nstead of competent evidence, Reynolds makes blanket assertions seeking to invoke an attorney-client privilege. She has not given the name of any attorney for whom she served as agent. A letter from a von Bulow attorney merely acknowledges that she attended legal strategy and planning sessions for the criminal case, but does not explicate any professional reasons for her attendance.").

Neither Hybrid nor CrossFit have provided any other specific facts or evidence to establish the existence of an attorney-client relationship between Hybrid, a limited liability corporation, and CrossFit's in-house counsel, apart from counsel's assertions and the privilege log. Submitting a privilege log is critical, to be sure, but it is not sufficient. *See United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("The privilege log should: 'identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between ... individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.'") (quoting *Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993)).

To the extent that any attorney-client relationship has been asserted, it has primarily been described as one between Mr. Orlando and CrossFit's in-house counsel.[3] *See* Hybrid Mot. at 10 ("Mr. Orlando has conversations of a legal nature with CrossFit's in-house counsel. Thus, at minimum, these conversations are privileged, and any documents regarding Hybrid's litigation that were shared with CrossFit are protected by privilege and work-product protections."); Tr. 44:14–22 ("with respect to Mr. Deonarine's assertion that there is no indication of why the attorney-client relationship exists, the reason it exists is Mr. Orlando sought legal advice. So I

---

[3] It therefore is not obvious whether Hybrid has standing to claim the privilege at all. To the extent that the privilege exists between Mr. Orlando and CrossFit's in-house counsel, Mr. Orlando would be the holder of the privilege—not Hybrid. *See Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness.") (citation omitted).

don't understand why he is questioning the attorney-client relationship when Mr. Orlando himself has sought legal advice and even put into his interrogatory responses that he has an attorney-client relationship with CrossFit."); Privilege Log at Doc Nos. 1–35, 37–39, 45–60 (listing "Robert Orlando" as either author or recipient of e-mail communications); *see also S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 365–67 (N.D.N.Y. 2010) ("Because Ryan and Prime Rate [LLC] are so intertwined and inter-connected, the law firm argues that, even if Ryan and Prime Rate were legally independent of each other, it would remain virtually impossible to separate the documents and delineate each party's sovereign privilege. The Court finds that Bosman & Associates' understanding of the facts in this case and attorney-client privilege doctrine itself are inexact . . . . There are two distinct attorney-client privileges at play here: Ryan has a privilege as to his personal files and related communications and Prime Rate has a privilege as to its files, documents, and communications. Speaking directly to Prime Rate, an LLC, the attorney-client privilege belongs to the corporation or similar organization.") (citing *Orbit One Commc'ns Inc. v. Numerex Corp.*, 255 F.R.D. 98, 104 (S.D.N.Y. 2008)).

Hybrid and CrossFit have not introduced a declaration or affidavit from Mr. Orlando or anyone else establishing the relevant facts pertinent to establishing an attorney-client relationship existed between Hybrid and CrossFit's in-house counsel. *See* Hylete Supp. Opp. at 5 ("HA and CrossFit should have at least offered a declaration setting out facts to establish the basis for their claim of an attorney-client relationship. But, HA and CrossFit offer no such factual bases and instead simply state in conclusory fashion that 'As evidenced in Hybrid and CrossFit's privilege log, Hybrid has an attorney-client relationship with CrossFit's in-house counsel, making Hybrid's communications with CrossFit's in-house counsel undiscoverable. Likewise, the communications are also entitled to work-product protection as they were prepared "in

anticipation of litigation or for trial by or for" Hybrid.' This is insufficient and, for this reason alone, the Court should reject their claims of privilege."). Indeed, as Hylete points out, Hybrid has not specifically identified who on the privilege log serves as CrossFit's in-house counsel, as opposed to its own direct counsel in this case. *See id.*

"Deciding whether the attorney-client privilege exists requires 'common sense . . . in light of reason and experience,' and should be determined 'on a case-by-case basis.'" *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir. 1995) (quoting *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992)).

Here, in light of the limited record as to that privilege, as well as Hybrid and CrossFit's failure to develop that record after a long period of time—and second round of briefing—the Court finds that Hybrid and CrossFit have failed to meet their burden of demonstrating the existence of an attorney-client relationship between Hybrid and CrossFit's in-house counsel.

### C. Common Interest Rule

"The joint defense privilege, more properly identified as the 'common interest rule,' has been described as 'an extension of the attorney client privilege.' It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." *Schwimmer*, 892 F.2d at 243 (citations omitted); *see United States v. Weissman*, 195 F.3d 96, 99–100 (2d Cir. 1999) (discussing *Schwimmer* and affirming district court's finding that no implied joint defense agreement existed); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("[T]he weight of authority is that the common interest doctrine does

extend at least to situations 'where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.' That is, the doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise.") (quoting *Schwimmer*, 892 F.2d at 243).

"Although originally developed in the context of cooperation between codefendants in criminal cases, this extension of the doctrine is fully applicable to parties in civil cases as well." *Bank Brussels*, 160 F.R.D. at 447 (citing *In re Bairnco Sec. Litig.*, 148 F.R.D. 91, 102 (S.D.N.Y. 1993); *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 503 (E.D.N.Y. 1986)); *see Jansson v. Stamford Health*, 312 F. Supp. 3d 289, 301 (D. Conn. 2018) ("While *Schwimmer* and *Weissman* are Second Circuit criminal cases, they are routinely cited in civil cases by this and other district courts in the circuit as authority with respect to the existence vel non of the joint defense privilege or common interest rule.") (collecting cases).

"As in all claims of privilege arising out of the attorney-client relationship, a claim resting on the common interest rule requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Schwimmer*, 892 F.2d at 244 (collecting cases).

In its most recent filing, Hybrid and CrossFit for the first time claim, in the alternative, that the common interest privilege shields the documents in question from disclosure. *See* Hybrid/CrossFit Supp. at 6 ("Additionally, Hybrid's claims of privilege were not waived because, though CrossFit is an uninterested third-party who does not stand to profit from any of Hybrid's recovery, Hybrid's communications with CrossFit occurred pursuant to a common legal interest. Parties need not be in litigation for common interest protections to apply . . . . Hybrid

and CrossFit confidentially communicated pursuant to a common enterprise, which makes the communications privileged.").

Hylete argues that Hybrid and CrossFit have not met their burden of showing a "common legal interest" because they have not demonstrated that they had come to an agreement on an "identical" legal strategy, Hylete Supp. Opp. at 7–8, nor "provide[d] any facts to support a common legal interest," *id.* at 8.

The Court agrees.

As with their claims of privilege based on a direct attorney-client relationship between Hybrid and CrossFit's in-house counsel, the burden is on Hybrid and CrossFit to establish the existence of an ongoing common enterprise, communications made in the course of that enterprise, and that those communications were made to further the enterprise. *See Schwimmer*, 892 F.2d at 244 ("Schwimmer has carried the burden of establishing that the information he furnished to Glickman, the accountant hired by Renda's attorney to serve the joint interests of Renda and himself, was protected by the attorney-client privilege. Schwimmer was directed by his attorney, Fink, to speak freely with Glickman, who had been hired by Silverman, Renda's attorney, on behalf of both clients. The attorneys had agreed to cooperate in all matters of mutual concern relating to the investigation by the government then in progress, and Fink represented to Schwimmer that any conversations with Glickman would be privileged."); *Weissman*, 195 F.3d at 99 ("The burden is on Weissman to demonstrate the existence of a JDA [joint defense agreement] that would have precluded admission in evidence of Weissman's June 16th revelations of wrongdoing."); *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004) ("The party asserting the common interest rule bears the burden of showing that there was 'an agreement, though not necessarily in writing, embodying a cooperative

and common enterprise towards an identical legal strategy.'") (quoting *Lugosch v. Congel,* 219 F.R.D. 220, 237 (N.D.N.Y. 2003)).

Hybrid and CrossFit's burden, accordingly, "is to demonstrate the existence of a joint defense agreement" between Hybrid and CrossFit "which would justify application of the common interest rule, thereby protecting from discovery the email communications in question." *Jansson*, 312 F. Supp. 3d at 304. Here, apart from a single paragraph of their supplemental brief, and the notations on the privilege log, Hybrid and CrossFit have failed to submit any documentary evidence or other admissible evidence to establish the existence of a joint defense agreement.[4]

But the Second Circuit has recognized that "[s]ome form of joint strategy is necessary to establish a JDA [joint defense agreement], rather than merely the impression of one side." *Weissman*, 195 F.3d at 100.

"Facts justifying application of the rule must be proven, and a brief of counsel is not equal to that task." *Jansson*, 312 F. Supp. 3d at 304. Proving a meeting of the minds between Hybrid and CrossFit "requires, at the very least, affidavits from the attorneys and lay representatives of both those parties which show that at a specific time or times, 'a joint defense or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *Id.* (quoting *Schwimmer*, 892 F.2d at 243). "Depending on what such affidavits say, an evidentiary hearing may or may not be necessary . . . . The governing principle is that a joint defense agreement is demonstrated by proof, not proclamation." *Id.*

---

[4] The brief does not even directly assert that there was such an agreement in place. *See* Hybrid/CrossFit Supp. at 5.

Here, in light of the lack of evidence demonstrating the existence of a joint defense agreement, the Court finds that Hybrid and CrossFit have failed to meet their burden of demonstrating the application of the common interest rule to the e-mail communications.

### D.  Work Product

"The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Adlman*, 134 F.3d at 1196 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). "Analysis of one's case 'in anticipation of litigation' is a classic example of work product, and receives heightened protection under Fed. R. Civ. P. 26(b)(3)." *Id.* at 1196–97 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)).

"To invoke this privilege, a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *Constr. Prods. Research,* 73 F.3d at 473.

Here, while the privilege log asserts work product privilege as a basis for withholding all 61 documents, only four of the document descriptions explicitly refer to work product. *See* Privilege Log, Doc. Nos. 13, 26, 34, and 44. Accordingly, only those four documents would appear, on their face, to contain privileged work product.

Their production therefore would likely not be required—but only to the extent that Hybrid or CrossFit can demonstrate that they were, in fact, prepared "principally or exclusively to assist in anticipated or ongoing litigation," *Constr. Prods. Research,* 73 F.3d at 473. The record before the Court does not provide any additional evidence that would substantiate this.

### E.  Relevance

Rule 26(b)(1)'s relevance standard governs a subpoena issued to a non-party under Rule 45. *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (citing *During v. City Univ. of N.Y.*, No. 05 CIV. 6992 (RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006) (collecting cases)). To prevail on a motion to quash on relevance grounds, the moving party must show that the discovery sought is not "relevant to any party's claim or defense," or is not "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

Hybrid originally argued that the subpoena was overbroad because Hylete sought irrelevant information relating to: (1) "Mr. Orlando's personal compensation from non-party CrossFit for work he performed in his individual capacity," (2) "documents or communications from CrossFit's in-house legal department that are subject to attorney-client and work product protection," and (3) "discovery requests derived from its allegations that a third party, such as CrossFit, has contributed financially to Hybrid's litigation." Hybrid Mot. at 9.

In their more recent supplemental brief, Hybrid and CrossFit argue that any evidence of bias sought by Hylete concerning testimony by CrossFit employees of actual confusion was also irrelevant because "the evidence of record shows Hybrid's enormous amount of confusion evidence is all true." Hybrid/CrossFit Supp. at 2.

Hylete has argued, however, that "the vast majority of [Hybrid]'s purported evidence of actual confusion is from CrossFit or official CrossFit affiliates," and that the "information sought by the subpoena is also relevant to Hylete's original and proposed amended defenses and counterclaims . . . ." Hylete Supp. at 2–3. Hylete also argued that litigation financing and fee related information is necessary to "reveal which particular individuals or entities HA has an actual attorney-client relationship with, and when that relationship started." *Id.* at 8–9. Hylete

also argues such information is relevant to Hybrid's claim for attorney's fees and costs in this action. *Id.* at 9.

As the Court discussed with the parties during the April 17, 2019 telephonic discovery conference, the discovery disputes in this case appear to have complicated the expeditious resolution of this case. Accordingly, in the interest of judicial economy and consistent with this Court's inherent authority to manage its docket to resolve cases efficiently and expediently, *Dietz*, 136 S. Ct. at 1892, the Court makes the following findings with respect to relevance.

At this time, the Court will not disturb its earlier ruling that evidence related to potential bias, going back to 2012, is relevant and discoverable from CrossFit, to the extent it is not protected by a privilege.[5] *See* 10/2/2018 Tr. at 13:24–14:24, 19:1–20:9. Nor will the Court disturb other previous rulings. *See* Ruling and Order on Discovery Disputes, dated Apr. 17, 2019, ECF No. 156. The Court also finds that general discovery about CrossFit's relationship with Hybrid or Mr. Orlando dating back to 2012 continues to be relevant and discoverable. This also would appear to include evidence related to contracts between CrossFit and Mr. Orlando.

Whether the precise sums involved must be disclosed, given Hybrid's insistence that the compensation for Mr. Orlando concerned entirely unrelated activities, is unclear. Accordingly, the Court finds that CrossFit may redact specific compensation information from the relevant discovery at this time. Should the contracts otherwise reveal that such information would be relevant to either Hybrid's claims, or Hylete's claims or defenses, Hylete may seek a discovery

---

[5] With respect to this and other rulings, however, the Court notes that its finding at this stage is not a determination that such evidence would be admissible at summary judgment or trial. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *Barrett v. City of N.Y.*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) ("The information sought need not be admissible at trial to be discoverable . . . .") (citations omitted).

conference to address the limited question of whether specific compensation information must be produced.

To the extent that any further discovery from CrossFit is claimed to be relevant to Hylete's original and proposed amended defenses and counterclaims, the parties are directed to meet and confer regarding the scope of remaining discovery needed from CrossFit in light of the Court's recent Ruling and Order on Hylete's motion to amend its answer. *See* Ruling and Order on Motion to Dismiss and Motion to Amend Answer, dated Aug. 30, 2019, ECF No. 209. To the extent the parties cannot agree on what remains to be produced from CrossFit with respect to those issues, they may move for a discovery conference by **September 20, 2019**.

Finally, the Court agrees with Hybrid that discovery regarding litigation financing is not relevant at this time because it might reveal the extent of any attorney-client relationship or claimed privilege. But as of this time, the Court has not found such a relationship exists. Similarly, while Hylete claims this discovery is relevant with respect to Hybrid's claims for attorney's fees, any such discovery—if actually necessary—would be highly premature before any claims in this action are litigated on their merits.

Accordingly, the Court fails to see what meaningful purpose litigation financing or fee related discovery would reveal at this time that would be relevant or proportional to the claims in this case. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); *Metcalf v. Yale Univ.*, No. 3:15-cv-1696

(VAB), 2017 WL 6614255, at *2 (D. Conn. Dec. 27, 2017) ("Under this standard, this Court must determine whether the discovery sought is proportional to the needs of the case. Even if relevant to this case, the discovery of medical records concerning Yale employee's treatment for emotional distress is not 'proportional to the needs of the case.'") (citing *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 40 (2d Cir. 2017) (quoting FED. R. CIV. P. 26(b)(1)).

## IV.   CONCLUSION

For the reasons explained above, the motions to quash are **GRANTED IN PART AND DENIED IN PART**.

The motions are granted in part on relevance grounds, but only to the extent consistent with the rulings above, and with respect to the four documents specifically identified as containing attorney work product. The motions are otherwise denied with respect to the claimed application of the attorney-client privilege, the common interest rule, and the work product doctrine.

Because of the unique importance of the attorney-client privilege in our system of justice, the denial on privilege grounds is without prejudice to renewal, subject to an evidentiary showing of the existence of either an attorney-client relationship or a joint litigation strategy between Hybrid and Cross-Fit's in-house counsel, consistent with the cases cited in this ruling. *See, e.g.*, *Jansson*, 312 F. Supp. 3d at 305 (provisionally granting motion to compel, after finding that defendants failed to carry burden to establish attorney-client privilege or application of common interest rule, but permitting defendants to submit additional papers in support of their claim of privilege).

To the extent that Hybrid or CrossFit is able to make such a showing, the Court may opt to hold a hearing or, if requested, conduct an *in camera* document review. *See, e.g.*, *Jansson*, 312 F. Supp. 3d at 305 ("The cited cases require that a showing of privilege must be made as to each document. It will not suffice to lay the foundation for the attorney-client privilege or its variation, the joint defense privilege, and then simply sweep a collection of communications within that label. If such additional submissions are made, the Court will enter a further scheduling order for the submission of responsive papers by Plaintiff.").

Any re-filed motion to quash must be filed in this Court by **September 20, 2019**. Moreover, before any such motion is re-filed, the parties must meet and confer to develop an expedited briefing schedule to ensure the speedy and efficient completion of all outstanding pre-trial discovery.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of August, 2019.

   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge