HYBRID ATHLETICS, LLC,
  *Plaintiff,*


  v.                                              No. 3:17-cv-1767 (VAB)


HYLETE, INC., et al.,
  *Defendants*.

**RULING AND ORDER ON OUTSTANDING DISCOVERY DISPUTES,**
**MOTION TO STRIKE, AND RENEWED MOTIONS TO QUASH**

Hybrid Athletics, LLC ("Plaintiff" or "Hybrid") and Hylete, Inc. ("Hylete"), Ronald L.

Wilson, II, and Mathew Paulson (collectively "Defendants") filed a joint motion for a discovery

conference. Joint Mot. for Discovery Conference, ECF No. 148 (Apr. 15, 2019). The Court

addresses here the outstanding discovery disputes.

On September 20, 2019, Hybrid and non-party CrossFit, Inc. ("CrossFit") filed renewed

motions to quash the August 2018 third-party subpoena Hylete served on CrossFit. Hybrid's

Renewed Mot. to Quash, ECF No. 217 (Sept. 20, 2019); CrossFit's Renewed Mot. to Quash,

ECF No. 215 (Sept. 20, 2019).

That subpoena seeks both testimony and documents that Hylete argues are relevant to its

defenses in this trademark infringement action, but that Hybrid and CrossFit argue are protected

from disclosure by the attorney-client privilege, the common interest rule, and the work-product

doctrine. The Court previously denied Hybrid and CrossFit's motions to quash but granted them

leave to supplement their filings because of the unique importance of the attorney-client

privilege in our system of justice.

On October 18, 2019, Hybrid moved to strike Hylete's Amended Answer. Hybrid's Mot. to Strike, ECF No. 240 (Oct. 18, 2019); Hybrid's Mem. of Law in Support of Hybrid Mot. to Strike; ECF No. 240-1 (Oct. 18, 2019).

For the reasons explained below, the motion to strike is **GRANTED IN PART AND DENIED IN PART** and the renewed motions to quash are **GRANTED**.

By **December 6, 2019,** Hylete is ordered to re-file its Amended Answer and affirmative defenses and by **December 13, 2019,** Hybrid should file a responsive pleading or otherwise respond to this filing. The Court also has adopted a new pre-trial schedule and resolved several outstanding discovery disputes.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the factual allegations and procedural history of this trademark infringement action is assumed. *See Hybrid Athletics v. Hylete, LLC*, 2018 WL 4323816, at *1–2 (D. Conn. Sept. 10, 2018); Ruling and Order on Mot. to Dismiss and Mot. to Amend Answer, ECF No. 209 at 2-5 (Aug. 30, 2019); *see also* Ruling and Order on Mots. to Quash, ECF No. 210 at 2-10 (Aug. 30, 2019) ("Quash Order").

On April 15, 2019, Hybrid and Defendants submitted a joint motion for a discovery conference on various discovery disputes. Joint Mot. for Discovery Conference, ECF No. 148 (Apr. 15, 2019) ("Joint Mot.").

On May 17, 2019, following the Court's order, Ruling and Order on Discovery Disputes, ECF No. 156 (Apr. 17, 2019) (directing the parties to submit short briefs of no more than five pages outlining the outstanding discovery issues requiring the Court's involvement from the April 15 joint motion), Hybrid and Defendants submitted filings in support of the April 15, 2019 joint motion for discovery conference, Hybrid's Suppl. Mem. Regarding Joint Mot., ECF No.

182 (May 17, 2019) ("Hybrid Suppl. Mem."); Defs.' Brief Submission Re Outstanding Discovery Issues from Joint Mot., ECF No. 184 (May 17, 2019) ("Defs.' Supp. Mem.").

On August 30, 2019, this Court issued rulings and orders for a motion to dismiss and motions to quash. Ruling and Order on Mot. to Dismiss and Mot. to Amend Answer, ECF No. 209 (Aug. 30, 2019) ("Ruling and Order"); Quash Order. With respect to the motions to quash, the Court allowed the parties to file renewed motions to quash with additional evidentiary support by September 20, 2019. Quash Order at 2, 27-28.

On September 20, 2019, Hybrid and CrossFit filed renewed motions to quash. Hybrid's Renewed Mot. to Quash, ECF No. 217 (Sept. 20, 2019) ("Hybrid Mot."); Mem. in Supp. of Hybrid Mot., ECF No. 217-1 (Sept. 20, 2019) ("Hybrid Mem."); Decl. of Robert Orlando in Supp. of Renewed Mots. to Quash, ECF No. 217-2 (Sept. 20, 2019) ("Orlando Decl."); CrossFit's Renewed Mot. to Quash, ECF No. 215 (Sept. 20, 2019) ("CrossFit Mot."); Mem. in Supp. of CrossFit Mot., ECF No. 215-1 (Sept. 20, 2019). Hybrid and CrossFit also filed several other supporting exhibits, including a joint privilege log. *See* Omnibus Decl. of Michael J. Kosma, ECF No. 220 (Sept. 20, 2019); Ex. L: Suppl. Privileged Communications Between Hybrid and CrossFit, ECF No. 220-12 (Sept. 20, 2019) ("Supplemental Privilege Log"); *see also* Ex. 1: Privileged Communications Between Hybrid and CrossFit, ECF No. 176-2 (May 3, 2019) ("Privilege Log").

On September 20, 2019, Hylete filed an Amended Answer. Hylete's Am. Answer, Affirmative Defenses and Counterclaims, ECF No. 222 (Sept. 20, 2019) ("Hylete Answer").

On October 4, 2019, Hybrid submitted its Answer and affirmative defenses in response to Hylete's amended counterclaims. Hybrid's Answer and Affirmative Defenses, ECF No. 225 (Oct. 4, 2019) ("Hybrid Answer").

On October 4, 2019, Hylete also opposed the renewed motions to quash. Hylete's Opp. to Hybrid Mot. and CrossFit Mot., ECF No. 227 (Oct. 4, 2019) ("Hylete Opp.").

On October 8, 2019, this Court denied Hylete's motion for partial reconsideration of the Court's August 30, 2019 Ruling and Order regarding proposed counterclaim 6. Ruling and Order on Mot. for Partial Reconsideration, ECF No. 232 (Oct. 8, 2019) ("Reconsideration Order").

On October 11, 2019, Hybrid and CrossFit replied to Hylete's opposition. Reply in Supp. of Hybrid Mot., ECF No. 235 (Oct. 11, 2019); Reply in Supp. of CrossFit Mot., ECF No. 237 (Oct. 11, 2019).

On October 18, 2019, Hybrid moved to strike Hylete's Amended Answer. Hybrid's Mot. to Strike, ECF No. 240 (Oct. 18, 2019); Hybrid's Mem. of Law in Supp. of Hybrid Mot. to Strike; ECF No. 240-1 (Oct. 18, 2019).

On October 28, 2019, Hylete opposed Hybrid's motion to strike. Hylete's Opp. to Hybrid Mot. to Strike, ECF No. 247 (Oct. 28, 2019) ("Hylete Opp. – Strike").

On November 1, 2019, Hybrid replied. Hybrid Reply in Supp. of Hybrid Mot. to Strike, ECF No. 248 (Nov. 1, 2019) ("Hybrid Reply – Strike").

On November 25, 2019, the Court held a discovery conference on these outstanding issues. Minute Entry, ECF No. 251 (Nov. 25, 2019).


## II.    STANDARD OF REVIEW

### A.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under Rule 12(f) "are generally disfavored and will not be

granted unless the matter asserted clearly has no bearing on the issue in dispute." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *see also Gierlinger v. Town of Brant*, No. 13-CV-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("Because striking a [part] of a pleading is a drastic remedy[,] motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.") (internal quotation marks omitted).

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (citing *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999); *Impulsive Music v. Pomodoro Grill, Inc.*, No. 08-CV-6293, 2008 WL 4998474, at *2 (W.D.N.Y. Nov. 19, 2008)).

## B. The Various Discovery Motions

Recently amended on December 1, 2015, Rule 26(b)(1) of the Federal Rules of Civil Procedure recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed R. Civ. P. 26, Advisory Committee Notes to 2015 Amendments. Even after the 2015 amendments, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 12, 2015)).

But "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). Indeed, "[a] trial court enjoys wide discretion in its handling of pre-trial discovery . . . ." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992); *see In Re Agent*

*Orange Product Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008) (the district court has "wide latitude to determine the scope of discovery."); *Gen. Houses v. Marloch Mfg. Corp.*, 239 F.2d 510, 514 (2d Cir. 1956) ("The order of examination is at the discretion of the trial judge . . . ."); *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion.").

Rule 37 allows the Court to impose a variety of sanctions for discovery-related abuses and affords the Court "broad discretion in fashioning an appropriate sanction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order.").

Under Rule 45(d)(3)(A), the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Motions to quash a subpoena are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

III.    DISCUSSION

A.  Outstanding Discovery Issues

Both Hybrid and Hylete allege various misconduct and other discovery disputes. The Court addressed each of these with the parties at the most recent discovery conference and notes, as it has several times during this litigation, that rather than resolve matters efficiently and inexpensively, the parties have taken an unnecessarily litigious route to resolving relatively routine discovery matters. Accordingly, the parties will bear their own costs for these filings.

1.  Discovery and the Pre-Trial Schedule

In the interest of judicial economy and consistent with this Court's inherent authority to manage its docket to resolve cases efficiently and expediently, *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), the Court adopts the following pre-trial schedule:

- Fact discovery, including all depositions of fact witnesses, and the preliminary damages analysis shall be completed by **January 24, 2020.**

- Disclosure of expert witnesses shall be due by **February 7, 2020.**

- Disclosure of rebuttal witnesses shall be due by **March 13, 2020**.

- Expert discovery, and all discovery, shall close by **April 24, 2020**.

- The post-discovery telephonic status conference will be **10:00 AM April 30, 2020**.

- Dispositive motions shall be due on **May 22, 2020.** Any responses shall be due on **June 19, 2020,** and any replies to any responses shall be due by **July 10, 2020.**

- The Court will hold oral argument on any dispositive motions at **11:00 AM July 28, 2020.**

- The joint trial memorandum is due **September 4, 2020**.

- The final pre-trial conference will be **10:00 AM October 1, 2020**.

- The parties will be trial ready on **October 5, 2020.**

The Court does not intend to grant any further extensions of time and the parties are expected to adhere to this schedule.

Additionally, to ensure the expeditious resolution of any discovery disputes that may arise until the close of discovery on **April 24, 2020**, the Court will suspend its normal practices and will no longer entertain motions for discovery conferences.

To the extent a discovery issue warrants relief under the Federal Rules of Civil Procedure, the parties may file the appropriate motion, i.e., a motion to compel or a motion for a protective order, without a discovery conference. Any response to any motion filed for discovery relief shall be filed within seven (7) days, and any reply is due within three (3) days.[1]

The Court will issue a ruling and order based on the parties' filings only. *See* D. Conn. L. Civ. R. 7(a) ("[T]he Court may, in its discretion, rule on any motion without oral argument."). To the extent that any monetary sanction is warranted based on the lack of justification for a party's position, the Court will order the awarding of any and all monetary sanctions deemed to be appropriate. *See Residential Funding Corp.*, 306 F.3d at 101 (Rule 37 affords district courts "broad discretion in fashioning an appropriate sanction" for discovery-related abuses); *see also* D. Conn. L. Civ. R. 37(c) ("Where a party has sought or opposed discovery which has resulted in the filing of a motion, and that party's position is not warranted under existing law . . ., sanctions will be imposed in accordance with applicable law.").

---

[1] Consistent with Rule 6 of the Federal Rules of Civil Procedure, if the deadline for a filing "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

## 2. The issue of sanctions

As to the request for sanctions, there is still not an outstanding motion for sanctions, besides the repeated requests for sanctions by Defendants. In any event, in the interest of judicial efficiency, the Court will treat the pending submissions as including a motion for sanctions for Hybrid's alleged spoliation. Indeed, "[a] federal court may impose sanctions under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order. . . . Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control spoliation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal citations omitted).

Defendants' allegations against Hybrid are serious indeed, especially with Mr. Orlando's recent deposition testimony. Ex. 1: Dep. of Robert Orlando, ECF No. 148-1 at 54:14-56:7 (Mar. 20, 2019) ("Orlando Dep.") (describing that he deleted emails as recent as "a year or two ago" and that his attorneys never instructed him to institute a litigation hold). Hybrid's contention that Defendants allegedly acted improperly[2] at depositions does not distract from the fact that Hybrid has not offered a sufficient excuse or explanation for Mr. Orlando's deletion of possibly relevant e-mails as recently as "a year or two ago." *See* Orlando Dep. at 54:24-55:24 (describing that he deleted old e-mails to "free up space" in his account).

Accordingly, the Court will impose sanctions on Hybrid. Although the Court will not dismiss the case, *see West*, 167 F. 3d at 779 ("dismissal is a 'drastic remedy'" (internal citation omitted)), at the time of trial, the jury will be given an instruction allowing for an adverse inference, *id.* at 780 (listing types of adverse inferences the trial court could order as an

---

[2] Hybrid mentions that they will also seek sanctions against Defendants for their counsels' conduct at depositions, including allegedly snickering and making numerous objections. Because there is no outstanding motion or explicit request for sanctions, the Court will not consider one here. As the Court noted at the discovery conference, a motion for sanctions based on the conduct referenced likely will not succeed.

alternative sanction to dismissal), to the extent that Hylete can show the impact of the missing discovery following the close of evidence at trial.

### 3. Additional Deposition Testimony and Documents from Mr. Orlando

Two additional discovery issues relate to the deposition of Mr. Orlando: (1) whether additional time should be permitted for his deposition; and (2) whether the allegedly privileged document used to refresh his recollection should be turned over. The answer to both questions is no.

First, the Court will not allow additional time for the deposition of Mr. Orlando for several reasons. Hylete has not shown specifically what additional discovery requires this additional time, especially since Hylete claims that Mr. Orlando could not provide testimony on several of the sixty noticed 30(b)(6) topics. Joint Mot. at 9 ("HA's corporate witness was not prepared to provide testimony on several of the noticed 30(b)(6) topics, including those relating to HA's financials, HA's trademark applications and the steps HA took to search for documents."). Moreover, to the extent that Hylete's printing issues is the reason for additional time, Hylete's limited use of documents during the deposition undercuts that claim. *Id.* at 17 (noting that "Hybrid's counsel offered to print any needed documents to maintain the 9:00AM start time" but that Hylete's counsel "refused the offer to print documents and proceeded to arrive at 10:30AM despite using only one (1) exhibit – the First Amended Complaint – prior to breaking for lunch at 12:42PM" (emphasis omitted)). As a result, an additional one and a half hour of deposition time for Mr. Orlando is not required and will not be ordered by this Court. *See Dietz*, 136 S. Ct. at 1892 (holding that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases").

Second, the Court also will not order the production of the document Mr. Orlando allegedly used to refresh his recollection during his deposition. This document is protected by attorney-client privilege and work product, as Hybrid contends. Furthermore, Federal Rule of Evidence 612 only requires the production of documents used by a witness to refresh his memory while testifying. Fed. R. Evid. 612(a) ("This rule gives an adverse party certain options when a witness uses a writing to refresh memory: (1) while testifying; or (2) before testifying, if the court decides that justice requires the party to have those options."). Here, Mr. Orlando referenced a document he reviewed in preparing for his depositions. Although the Court may order the production of this document if "justice requires," Fed. R. Evid. 612(a)(2), the Court does not find it necessary here, both because Hylete has not demonstrated a need for the document and because the document is protected from disclosure by privilege, as discussed below.

### 4. Remaining Rule 30(b)(6) topics and additional witnesses

On the issue of whether Hybrid should produce another witness for the remaining 30(b)(6) topics noticed by Hylete, the Court will order Hybrid to provide its accountant with respect to Topic 35, as it has already offered to do so. *See* Ex. 15: E-mail from Michael J. Kosma to Dave Deonarine, ECF No. 148-15 (Mar. 28, 2019) (offering Hybrid's accountant, Mr. Bocek, for a deposition after April 15 and requesting proposed dates from Hylete).

Defendants contend that they still need discovery on the topics relating to Hybrid's trademark applications and the steps Hybrid took to search for documents, but Hybrid submits that there is no need for further discovery on these topics. Because Defendants have not identified specific topics for a corporate witness to address, the Court is not persuaded that

additional discovery is proportionate to the needs of the case, especially at this advanced and prolonged stage in discovery.[3]

Accordingly, the Court will order additional time for Hylete to depose Hybrid's accountant, but the amount of time will not be the five and one half of an hour requested, but will be limited to three hours.

As to whether Hylete should designate an additional 30(b)(6) witness on Hybrid's topics 13, 14, 23, 24, 25, 26, and 27, Hylete submits they have already provided discovery on topics 13, 14, 23, and 24, and that Hybrid's attorneys failed to ask any questions on topics 26 and 27. In any event, the Court will exercise its discretion and provide Hybrid an additional three hours on all of these topics. Hylete is ordered to designate the appropriate witness or witnesses for topics 13, 14, 23, 24, 25, 26, and 27 by **December 6, 2019.**

### 5. Discovery of the Settlement Agreement

As to whether Hylete should be ordered to produce documents and testimony concerning Hylete's settlement agreement with Jennifer Null, to the extent that such discovery violates the terms of Ms. Null's settlement agreement, as Ms. Null's counsel objected, the Court will not order additional discovery.

Although Hybrid contends that Ms. Null may have knowledge of additional instances of alleged confusion between Hybrid and Hylete, Hybrid is not seeking additional discovery on this issue. Rather, Hybrid seeks discovery related to the extrinsic issue of Ms. Null's termination and lawsuit against the individual Defendants, and how that may call into question the individual Defendants' character. The Court does not find it necessary or proportionate to the needs of the case to order Ms. Null to testify, especially absent a motion to compel and with counsel's

---

[3] The first scheduling order set the discovery deadline as December 14, 2018. Scheduling Order, ECF No. 48 (Mar. 2, 2018).

instruction for Ms. Null to not violate the terms of a binding settlement agreement. Joint Mem. at 15 ("Ms. Null's counsel, Susan Swan, instructed Ms. Null not to answer and confirmed that she did so because the information is confidential.").

Accordingly, the Court will not order Hylete to produce documents and testimony regarding Hylete's settlement with Ms. Null.

### 6. Designation of a document

As to whether Hybrid should de-designate document HYBRID007792, the Court does not have sufficient information in the record to make a determination as to whether this document is improperly designated or if the document does contain confidential information. Accordingly, consistent with this Court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," *Dietz*, 136 S. Ct. at 1892, Hybrid is directed to submit document HYBRID007792 by **December 6, 2019**. The Court will conduct an *in camera* review of the document and issue an order consistent with this ruling.

### B. Motion to strike

Hybrid contends that Hylete's Amended Answer exceeds the scope of this Court's August 30, 2019, Ruling and Order. Hybrid Mem. – Strike at 1. Specifically, Hybrid submits that the content of Hylete's filed paragraphs 8, 32, 51, 58, 59, and 105 do not match the proposed amendments. *Id.* 2-3. Further, Hybrid argues that Hylete improperly maintains factual allegations that are allegedly only relevant to its denied fraud claim. *Id.* at 4; *see also* Ruling and Order at 23-24 (denying Hylete leave to add a proposed counterclaim 6 alleging fraud); Reconsideration Order at 3 (declining to reconsider adding proposed counterclaim 6).

Hylete admits that some changes were due to a clerical error, and does not oppose editing to include the original proposed language from the filed paragraphs 32, 51, 58, 59, and 105.

Hylete Opp. – Strike at 1-3. But, Hylete contends that the deletion of "and CrossFit" in paragraph 8 is consistent with the Court's Ruling and Order and is not an avoidance of a prior admission. *Id.* at 3. In Hylete's view, this deletion conforms with the Court's denial of Hylete's request for leave to add other tortious claims. *Id.* ("Because the Court denied Hylete's proposed amended counterclaims that directly implicate CrossFit, the deletion of 'CrossFit' . . . is entirely consistent with the Court's Ruling and Order."). As for the five factual allegations and three headings also opposed by Hybrid, Hylete contends they are relevant to Hylete's affirmative defenses of fraud, laches, and acquiescence, as well as counterclaim 5 for cancellation of U.S. Trademark Registration No. 4,722,185 for fraud. *Id.* at 4-8.

In reply, Hybrid contends that Hylete's twelfth affirmative defense for fraud was only against "HYBRID ATHLETICS" and not the "H" mark. Hybrid Reply – Strike at 2. Hybrid argues that because Hylete's fraud defense incorporated its counterclaim for fraud, which was originally only against "HYBRID ATHLETICS," the fraud defense cannot include the "H" mark. *Id.* As a result, "the current fraud allegations against the ['H' mark] cannot and do not relate to the fraud affirmative defense." *Id.* Hybrid proposes edits to the allegations and headings related to fraud, and asserts it is substantially prejudiced by these "unapproved amendments." *Id.* at 3-6. Finally, Hybrid submits that the deletion of "and CrossFit" is not solely relevant to Hylete's denied CUTPA claim, but that the phrase is an important admission that Hybrid targets consumers who participate in CrossFit. *Id.* at 6-7.

The Court agrees.

The Court did not grant Hylete leave to further change filed paragraphs 8, 32, 51, 58, 59, and 105. The Court accepts the clerical mistakes in paragraphs 32, 51, 58, 59, and 105; the Court, however, is not persuaded by Hylete's argument that the deletion of "and CrossFit" in

filed paragraph 8 is consistent with the Court's Ruling and Order. In addition, this deletion is not only relevant to the denied CUTPA counterclaim, but instead operates as an admission couched as an authorized amendment.

Furthermore, the Court has already ordered Hylete to "file an Amended Answer, consistent with this Ruling and Order," which, *inter alia*, denied Hylete leave to amend and add proposed Counterclaim 6 seeking cancellation of the #469 mark on the basis of fraud. Ruling and Order at 30.

Hylete therefore may not include factual allegations that relate solely to alleged fraud with the #469 mark; but Hylete may include factual allegations that relate to its other authorized counterclaims and defenses. Although Hylete's twelfth affirmative defense of fraud incorporates its counterclaim for fraud, that counterclaim is only in relation to the #185 mark ("HYBRID ATHLETICS"). As a result, factual allegations that refer to fraud, even in relation to the twelfth affirmative defense of fraud, cannot simultaneously refer to the #469 "H" mark.

Consistent with this Court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," see *Dietz*, 136 S. Ct. at 1892, Hylete is ordered to refile an Amended Answer that adheres to the following requirements by **December 6, 2019**:

(1) The filed paragraphs 8, 32, 51, 58, 59, and 105 must conform to the original proposed amendments, including the re-addition of "and CrossFit" in filed paragraph 8.

(2) Consistent with this Court's prior Ruling and Order and Reconsideration Order, Hylete must make the following changes in its amended answer to remove reference of fraud with the #469 "H" mark.

    a. Page 25, paragraph 21: strike "fraudulent" because it relates to the "H" mark.

b. Page 26, paragraph 24: no changes necessary because "fraudulent" here also refers to the "HYBRID ATHLETICS" mark, for which fraud counterclaims remain authorized.

c. Page 26, heading above paragraph 25: strike entirely because it offers an inference of fraud with Hybrid's "H" mark.

d. Page 31, heading above paragraph 53: strike "Fraudulently" because it relates to #469 "H" mark.

e. Page 32, paragraph 58: strike entirely, because it only relates to fraud in obtaining the "H" marks.

f. Page 33, paragraph 60: strike entirely, because it only relates to fraud in obtaining the "H" marks.

g. Page 34, paragraph 61: remove everything before "the USPTO allowed"

(3) Although Local Rule 7(f) only requires the filing of a redlined version of the proposed amended pleading with the current pleading when a party files a motion for leave to amend, and not afterwards, the Court *sua sponte* orders Hylete also to file a redlined version of its new amended answer with its prior answer.

Accordingly, Hybrid's motion to strike is granted in part and denied in part. By **December 6, 2019,** Hylete is ordered to re-file its Amended Answer and affirmative defenses; and by **December 13, 2019,** Hybrid should file a responsive pleading or otherwise respond to this filing.

## C.    Motions to quash

Both Hybrid and CrossFit maintain that communications between Robert Orlando, Hybrid's sole proprietor, and CrossFit's in-house counsel, specifically Marshall Brenner, Sarah

Munn, Dale Saran, Erica Rozetti, and Steve Weiss, Orlando Decl. ¶ 5, are privileged and protected from disclosure by either the attorney-client privilege and common interest rule or work product doctrine.

The Court agrees.

### a.      Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "The privilege's underlying purpose has long been 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

"[A]s a general matter the attorney-client privilege applies only to communications between lawyers and their clients . . . ." *Id.* The Second Circuit has, however, recognized certain limited exceptions to that rule. *See id.* (collecting cases); *see also United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (extending privilege to certain communications between a client and accountant); *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989) (discussing joint defense/common interest privilege).

Hybrid contends that Mr. Orlando, "as the sole owner of Hybrid, sought to obtain legal advice from CrossFit attorneys regarding Hylete's infringement of Hybrid's trademark rights," Hybrid Mem. at 20, and argues that "communications and documents on the Privilege Log comprise communications and documents prepared and exchanged between or among Orlando and persons he understood to be his attorneys," *id.* at 13.

Hylete maintains that Hybrid has failed to demonstrate the existence of an attorney-client relationship between Hybrid and CrossFit's in-house counsel, and that if the privilege exists, it only attaches to Mr. Orlando, and not Hybrid.

The Court disagrees.

"The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential." *United States v. Dennis*, 843 F.2d 652, 657 (2d. Cir. 1988) (citing *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958); Wigmore, Evidence § 2304 (McNaughton rev. 1961)); *see also In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965) ("We recognize that an attorney-client relationship arises when legal advice of any kind is sought from a professional legal adviser in his capacity as such.") (citing Wigmore, Evidence § 2292 (McNaughton rev. 1961)). "The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." *Schwimmer*, 892 F.2d at 244 (collecting cases). "The relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which the protection is claimed, all must be established in order for the privilege to attach." *Id.* at 243.

This Court previously held that "Hybrid and CrossFit's burden is not, as the Second Circuit has long recognized, 'discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed,'" Quash Order at 16 (citing *Bonanno*, 344 F.2d at 833). Counsel's assertions and a privilege log are not sufficient on their own to establish an attorney-client relationship or attorney-client privilege. Quash Order at 17; *see United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("The privilege log should: 'identify each

document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between . . . individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.'") (quoting *Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993)).

To supplement their previous submissions, which this Court found inadequate to establish an attorney-client relationship between Hybrid and CrossFit, Hybrid and CrossFit now provide a declaration by Mr. Orlando as well as a representation agreement.

Mr. Orlando describes the business relationship between himself, allegedly representing Hybrid, and CrossFit, Orlando Decl. ¶¶ 14-19, and sets out the history of his communications with CrossFit's counsel. Mr. Orlando claims that he discussed Hylete's alleged infringement of Hybrid's trademarks as early as May 20, 2013, following a CrossFit regional event, and thereafter as well. *Id.* ¶¶ 21-29. Mr. Orlando contends that privilege log entries 1-6 reflect communications between him and Mr. Weiss in which he sought legal advice concerning Hylete's infringement, *id.* ¶ 25; that privilege log entries 7-11 reflect communications with various CrossFit attorneys that Mr. Orlando understood to be legal advice regarding Hybrid's trademarks and Hylete's infringement, *id.* ¶ 27; that supplemental privilege log entries 1-10 reflect confidential communications regarding Hylete, its infringement, and the investigation thereof, *id.*; and that privilege log entry 12 reflects his communication with Mr. Saran, Ms.

Rozetti, and Mr. Weiss "to seek legal advice regarding confusion between Hylete and Hybrid," *id.* ¶ 29.

Additionally, Mr. Orlando explains the relationship and identity of other parties included in certain communications. *See e.g.*, *id.* ¶ 42 ("I understand that Justin Bergh was necessarily included on these communications [in Privilege Log entry numbers 8, 10, and 11, dated June 23, 2013] at least due to his position at CrossFit [as General manager of the CrossFit Games] and CrossFit's decision to terminate Hylete's exhibitor agreement and ban Hylete from selling goods at the CrossFit Games.").

Admittedly, Mr. Orlando does not consistently refer to the communications with CrossFit's counsel as being between Hybrid and CrossFit counsel, and not Mr. Orlando in his personal capacity and CrossFit counsel. *See S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 365–67 (N.D.N.Y. 2010) ("Because Ryan and Prime Rate [LLC] are so intertwined and inter-connected, the law firm argues that, even if Ryan and Prime Rate were legally independent of each other, it would remain virtually impossible to separate the documents and delineate each party's sovereign privilege. The Court finds that Bosman & Associates' understanding of the facts in this case and attorney-client privilege doctrine itself are inexact . . . . There are two distinct attorney-client privileges at play here: Ryan has a privilege as to his personal files and related communications and Prime Rate has a privilege as to its files, documents, and communications. Speaking directly to Prime Rate, an LLC, the attorney-client privilege belongs to the corporation or similar organization.") (citing *Orbit One Commc'ns Inc. v. Numerex Corp.*, 255 F.R.D. 98, 104 (S.D.N.Y. 2008)).

But Mr. Orlando is the sole member of Hybrid, and the discussions at issue were all regarding Hybrid's trademarks. As a result, Mr. Orlando's understanding that the

"communications and documents on the Privilege Log comprise confidential information, were exchanged confidentially, kept confidential, and intended to be kept confidential," and "were never to be shared with Hylete" is not unfounded. Orlando Decl. ¶ 38. Furthermore, the representation agreement, which is discussed more below, states that "Hybrid agrees that its attorneys . . . can take their instructions directly from CrossFit's in-house legal counsel" and that both "Hybrid and CrossFit understand that communications between them . . . are privileged." Ex. 5: Representation Agreement, ECF No. 217-7 (Feb. 24, 2014).

"Deciding whether the attorney-client privilege exists requires 'common sense . . . in light of reason and experience,' and should be determined 'on a case-by-case basis.'" *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir. 1995) (quoting *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992)).

Here, although Hylete contends that the attorney-client relationship, if it exists at all, only attaches to Mr. Orlando and not Hybrid, Mr. Orlando's communications with CrossFit's in-house counsel here were made on behalf of Hybrid. In light of the supplemented record, Hybrid and CrossFit have met their burden of establishing the existence of an attorney-client relationship between Hybrid, whose sole member is Mr. Orlando, and Marshall Brenner, Sarah Munn, Dale Saran, Erica Rozetti, and Steve Weiss, who all served as CrossFit's in-house counsel at some relevant time period.

Accordingly, because of the unique importance of the attorney-client privilege in our system of justice, the documents on the privilege log and the supplemental privilege are protected from disclosure.

### b.    Common Interest Rule

The joint defense privilege, more properly identified as the "common interest rule," has been described as "an extension of the

> attorney client privilege." It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected.

*Schwimmer*, 892 F.2d at 243 (citations omitted); *see United States v. Weissman*, 195 F.3d 96, 99–100 (2d Cir. 1999) (discussing *Schwimmer* and affirming district court's finding that no implied joint defense agreement existed); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("[T]he weight of authority is that the common interest doctrine does extend at least to situations 'where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.' That is, the doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise.") (quoting *Schwimmer*, 892 F.2d at 243).

"Although originally developed in the context of cooperation between codefendants in criminal cases, this extension of the doctrine is fully applicable to parties in civil cases as well." *Bank Brussels*, 160 F.R.D. at 447 (citing *In re Bairnco Sec. Litig.*, 148 F.R.D. 91, 102 (S.D.N.Y. 1993); *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 503 (E.D.N.Y. 1986)); *see Jansson v. Stamford Health*, 312 F. Supp. 3d 289, 301 (D. Conn. 2018) ("While *Schwimmer* and *Weissman* are Second Circuit criminal cases, they are routinely cited in civil cases by this and other district courts in the circuit as authority with respect to the existence *vel non* of the joint defense privilege or common interest rule.") (collecting cases).

"As in all claims of privilege arising out of the attorney-client relationship, a claim resting on the common interest rule requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Schwimmer*, 892 F.2d at 244 (collecting cases).

Hybrid and CrossFit contend that the common interest privilege shields the documents in question from disclosure.

Hylete argues that Hybrid and CrossFit have not met their burden of showing a "common legal interest" because a purported business interest is insufficient and the record itself demonstrates CrossFit's lack of a legal interest.[4] Hylete Opp. at 4-7. Furthermore, Hylete emphasizes that CrossFit's "general interest against trademark infringement is not a cognizable common legal interest that warrants withholding discovery materials." *Id.* at 7.

The Court disagrees.

As with their claims of privilege based on a direct attorney-client relationship between Hybrid and CrossFit's in-house counsel, the burden is on Hybrid and CrossFit to establish the existence of an ongoing common enterprise, the existence of communications made in the course of that enterprise, and that those communications were made to further the enterprise. *See Schwimmer*, 892 F.2d at 244 ("Schwimmer has carried the burden of establishing that the information he furnished to Glickman, the accountant hired by Renda's attorney to serve the joint interests of Renda and himself, was protected by the attorney-client privilege. Schwimmer was directed by his attorney, Fink, to speak freely with Glickman, who had been hired by Silverman, Renda's attorney, on behalf of both clients. The attorneys had agreed to cooperate in all matters of mutual concern relating to the investigation by the government then in progress, and Fink represented to Schwimmer that any conversations with Glickman would be privileged."); *Weissman*, 195 F.3d at 99 ("The burden is on Weissman to demonstrate the

---

[4] Hylete also urges the Court not to consider the representation agreement because of Hybrid's failure to produce it earlier. Hylete Opp. at 2. But Hybrid was not required to produce the agreement until the Court's earlier Quash Order. Accordingly, the Court will consider the representation agreement here. In the alternative, Hylete urges the Court to order the agreement be disclosed in its unredacted form, Hylete Opp. at 3. But because the Court has found the existence of the attorney-client privilege, the Court declines to order disclosure of the unredacted representation agreement.

existence of a JDA [joint defense agreement] that would have precluded admission in evidence of Weissman's June 16th revelations of wrongdoing.").

Hybrid and CrossFit's burden, accordingly, "is to demonstrate the existence of a joint defense agreement" between Hybrid and CrossFit "which would justify application of the common interest rule, thereby protecting from discovery the email communications in question." *Jansson*, 312 F. Supp. 3d at 304.

Hybrid and CrossFit detail the extent of their relationship with each other due to Mr. Orlando's role as a CrossFit ambassador. Hybrid Mem. at 2-7. Hybrid's stone molds allegedly helped grow both Hybrid's and CrossFit's brands. *Id.* at 6. In addition, Mr. Orlando is featured in numerous CrossFit training videos, and often wears and uses Hybrid branded apparel and stone molds in these CrossFit videos. *Id.* at 4-7; *see also* Orlando Decl. ¶ 19 ("Through my videos, seminars, and trainings I have played a significant role in CrossFit's development and the adoption of CrossFit, including Strongman, in the fitness industry.").

Furthermore, Hybrid and CrossFit point to a written agreement dated February 24, 2014, which purportedly sets forth a representation agreement between Hybrid and CrossFit that memorializes their common interest. Orlando Decl. ¶ 30; Ex. 5: Representation Agreement, ECF No. 217-7 (Feb. 24, 2014). The representation agreement states that "Hybrid owns all right title and interest in the trademarks" at issue, and that "CrossFit believes the Hylete infringement of Hybrid's Trademarks damages CrossFit." Representation Agreement at 1. Mr. Orlando states that "CrossFit does not have, and has never had, an interest in Hybrid's trademarks or the use of Hybrid's trademarks," nor does CrossFit have an ownership interest in Hybrid. Orlando Decl. ¶ 30. Additionally, "CrossFit is not, and has never been, an interested party in any legal proceedings between Hybrid and Hylete." *Id.* ¶ 31.

Hylete contends that the plain words of the representation agreement are fatal to Hybrid and CrossFit's assertion of the common interest rule, because Hylete argues the common interest rule relates only to legal interests, and CrossFit has disclaimed all legal interest in the outcome of this trademark infringement case, because CrossFit "does not have, and has never had, an interest in Hybrid's trademarks or the use of Hybrid's trademarks." Orlando Decl. ¶ 30; *see also* Representation Agreement at 1-2 (stating that "Hybrid owns all right title and interest in the trademarks" and "CrossFit agrees that all use of the Trademarks by any party, including but no limited to CrossFit itself, inures to the benefit of Hybrid").

But the Second Circuit has recognized that "[a] financial interest of a party, no matter how large, does not preclude a court from finding a legal interest shared with another party where the legal aspects materially affect the financial interests." *Schaeffler v. U.S.*, 806 F.3d 34, 422 (2d Cir. 2015). In this case, Hybrid and CrossFit have established their common interest in the outcome of this trademark infringement suit by showing that CrossFit derives value from Hybrid and its marks. Even though the legal interest and ownership of the marks inures to Hybrid, CrossFit will necessarily be affected by the outcome of this litigation.

In light of the evidence demonstrating the existence of a joint defense agreement and the evidence of Hybrid and CrossFit's established business relationship and common interest, Hybrid and CrossFit have met their burden of demonstrating the application of the common interest rule to the e-mail communications.

### c. Work Product

"The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries."

*Adlman*, 134 F.3d at 1196 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). "Analysis of one's case 'in anticipation of litigation' is a classic example of work product, and receives heightened protection under Fed. R. Civ. P. 26(b)(3)." *Id.* at 1196–97 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)).

"To invoke this privilege, a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *Constr. Prods. Research,* 73 F.3d at 473.

Here, as noted in the Court's prior Quash Order, while the privilege log asserts work product privilege as a basis for withholding all sixty-one documents, only four of the document descriptions explicitly refer to work product. *See* Privilege Log, Doc. Nos. 13, 26, 34, and 44. Additionally, none of the sixteen documents in the supplemental privilege log explicitly refer to work product in the description. *See* Suppl. Privilege Log. But Hybrid claims that all the logged communications "identified as having work product contain analyses of litigation positions, draft briefs and litigation documents, and legal theories and strategy." Hybrid Mem. at 21-22. Accordingly, only those four documents that explicitly refer to work product would appear, on their face, to contain privileged work product.

Hybrid contends that the documents all include case updates, analyses, and provisions of work-product, such as drafts of briefs, concerning this lawsuit. Hybrid Mem. at 20-22; *see* Orlando Decl. ¶ 33; *see also id.* ¶¶ 34-35 (describing the contents of privilege log entries 16-19, 21, 25, 26, 37, 43-45 and supplemental privilege log entries 14-15 as containing privileged material). To the extent that Hybrid or CrossFit can demonstrate that the documents were, in fact, prepared "principally or exclusively to assist in anticipated or ongoing litigation," *Constr. Prods. Research,* 73 F.3d at 473, their production will not be required.

Hybrid, through Mr. Orlando, claims that all the documents "were prepared and exchanged principally in anticipation of litigation or for trial by myself or my attorneys." Orlando Decl. ¶ 40. The first communication was logged on May 20, 2013, which coincides with the date Mr. Orlando first communicated with a CrossFit attorney, Steve Weiss, about Hylete's alleged infringement, and is five months before the Trademark Trial and Appeal Board opposition. *Id.* The Court is satisfied that the documents in the privilege log were prepared in anticipation of Hybrid's litigation against Hylete, as the parties have been actively disputing the trademarks at issue since late 2013.

Accordingly, the Court finds that Hybrid's documents are protected from disclosure by the attorney-client privilege as well as, where noted, the common interest rule and work-product doctrine.

## C. CONCLUSION

For the reasons explained above, the motion to strike is **GRANTED IN PART AND DENIED IN PART**.

By **December 6, 2019,** Hylete is ordered to re-file its Amended Answer and affirmative defenses and by **December 13, 2019,** Hybrid should file a responsive pleading or otherwise respond to this filing.

The Court also has adopted a new pre-trial schedule and resolved several outstanding discovery disputes.

The motions to quash are **GRANTED.**

Additionally, the Court adopts the following pre-trial schedule, and will separately issue an amended scheduling order. The Court will not be granting any extensions of time on these dates:

- Fact discovery, including all depositions of fact witnesses, and the preliminary damages analysis shall be completed by **January 24, 2020.**

- Disclosure of expert witnesses shall be due by **February 7, 2020.**

- Disclosure of rebuttal witnesses shall be due by **March 13, 2020**.

- Expert discovery, and all discovery, shall close by **April 24, 2020**.

- The post-discovery telephonic status conference will be **10:00 AM April 30, 2020**.

- Dispositive motions shall be due on **May 22, 2020.** Any responses shall be due on **June 19, 2020,** and any replies to any responses shall be due by **July 10, 2020.**

- The Court will hold oral argument on any dispositive motions at **11:00 AM July 28, 2020.**

- The joint trial memorandum is due **September 4, 2020**.

- The final pre-trial conference will be **10:00 AM October 1, 2020**.

- The parties will be trial ready on **October 5, 2020.**

Additionally, to ensure the expeditious resolution of any discovery disputes that may arise until the close of discovery on **April 24, 2020**, the Court will suspend its normal practices and will no longer entertain motions for discovery conferences.

To the extent a discovery issue warrants relief under the Federal Rules of Civil Procedure, the parties may file the appropriate motion, i.e., a motion to compel or a motion for a protective order, without a discovery conference. Any response to any motion filed for discovery relief shall be filed within seven (7) days, and any reply is due within three (3) days.

The Court will issue a ruling and order based on the parties' filings only. To the extent that any monetary sanction is warranted based on the lack of justification for a party's position, the Court will order the awarding of any and all monetary sanctions deemed to be appropriate.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of November, 2019.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge